UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

SAMAD BROTHERS, INC.,                                            :

                           Plaintiff,          :          Case No. 09 Civ. 5843
                                              (JFK / KNF)

        -- against --                                   :

BOKARA RUG CO. INC., JAN SOLEIMANI, and           :
GABRIEL VAKNIN,

                                             :

                   Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 19, 2010


Dated: November 1, 2010

KAUFMAN & KAHN, LLP
Mark S. Kaufman
  (Email: Kaufman@kaufmankahn.com)
  Attorneys for Plaintiff
747 Third Avenue, 32nd Floor
New York, NY  10017
Tel.: (212) 293-5556

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Factual and Procedural Background ........................................................................... 5

Argument: ................................................................................................................... 6

  Samad Was Diligent In Seeking to Amend, Having Made Its Motion After Samad's Prior Motion to Amend Was Granted and After Samad Inspected Bokara's Warehouses .............. 6

  1.   Samad Properly Declined to Seek Amendment in Response to Michael George's Testimony, Pending Determination of the Prior Motion to Amend ....................................... 7

  2.   Despite Samad's Efforts, It Could Not Have Amended to Include the POWER or TWILIGHT Designs Prior to Inspecting Bokara's Warehouses. ........................................... 9

The Applicable Law .................................................................................................... 11

  A.  The Court Should Modify Its Schedule and Grant the Motion to Amend Because Samad Was Diligent in Seeking to Amend ...................................................................... 11

  B.  Defendants Will Not Be Prejudiced by the Proposed Amendments ............................. 14

  CONCLUSION .......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Aktiebolag v. Andrx Pharmaceuticals, Inc.</u>, 695 F.Supp.2d 21, 29 (S.D.N.Y. 2010)................................ 14

<u>Ayers v. SGS Control Services, Inc.</u>, 2007 WL 646326, *14 (S.D.N.Y. 2007) ......................................... 15

<u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir.1993)................................................................. 15

<u>Bridgeport Music, Inc. v. Universal Music Group</u>, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) ...................... 15

<u>Cromer Finance Ltd. v. Berger</u>, 2002 WL 826847, at *12 (S.D.N.Y. 2002)............................................. 15

<u>DeLuca v. Lord</u>, 858 F. Supp. 1330, 1345 (S.D.N.Y.1994) ....................................................................... 11

<u>Everfresh Beverages Inc. v. Charterhouse Group Int'l, Inc.</u>, 238 B.R. 558, 584 (Bankr. S.D.N.Y. 1999). 17

<u>Holmes v. Grubman</u>, 568 F.3d 329, 334-35 (2d Cir. 2009)....................................................................... 14

<u>Hood v. Hartford Life & Accident Insur. Co.</u>, 567 F. Supp.2d 1221, 1224 (E.D. Cal. 2008) ................... 12

<u>In re Enron Corp.Sec. Derivative & ERISA Litig.</u>, 610 F. Supp. 2d 600, 653 (S.D. Tex 2009) ............... 14

<u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 244 (2d Cir. 2007) ................................................. 16

<u>NycoMed v. Glenmark Generics Ltd.</u>, 2010 WL 1257803, * 10 (E.D.N.Y. 2010) ............................. 12, 13

<u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2nd Cir. 2000; J. Sotomayer) ........................ 12, 13

<u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) ................................................................ 13

**Statutes**

28 U.S.C. §636 ............................................................................................................................................. 1

**Rules**

Fed. R. Civ. P. Rule 16 ................................................................................................................................ 3

Fed.R. Civ. P. Rule 16, Advisory Committee Notes, 1983 Amendment .................................................... 11

Rule 72(a) of the Federal Rules of Civil Procedure .............................................................................. 1, 11

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 19, 2010</u>

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C. §636, plaintiff submits this Objection to modify the Memorandum and Order October 19, 2010 of Magistrate Judge Fox (Docket No. 54) that denied the motion of plaintiff Samad Brothers, Inc. ("Samad") to amend the pleadings and file a fourth amended complaint. Samad seeks (a) to incorporate facts which it learned from a non-party deposition while its prior motion to amend was pending *sub judice* for four months, and (b) to add claims regarding two additional infringing carpet designs within days after Samad discovered them during a court-directed inspection of defendants' warehouses.[1] Because Samad was diligent and did not unduly delay in seeking such amendments, and because there is no bad faith or undue prejudice to the defendants, the motion should be granted.

The facts herein are set forth in the accompanying Kaufman Declaration dated November 1, 2010 ("Kaufman").

### <u>Preliminary Statement</u>

This is a case of defendants' importing, advertising and selling rugs that infringe upon Samad's copyrights in certain rug designs. Samad filed a motion to amend and to file a Third Amended Complaint (the "TAC"), to expand the pleadings in order to include claims that defendants had willfully infringed upon 26 Samad designs. During the four-month period pending the Court's determination of that motion, from March 3, 2010 to June 30, 2010,

---

[1] Samad is not objecting to the M&O and Order to the extent it denied amendment (a) to allow for additional claims regarding defendants' infringement of the CASTILLE and DOMINICA rug designs, and (b) to include as exhibits photographs from the inspection of defendants' warehouses.

Defendants declined to provide any documents regarding the designs set forth in the then-proposed TAC.

However, during that time, Samad engaged in limited discovery and took the deposition of Michael George, who defendants had identified in their initial disclosures. Before his deposition on May 4, 2010, Samad had understood that Mr. George had some rights in the LUXOR design (at issue in the Second Amended Complaint), but that Samad had been granted the right to enforce the copyright therein. After the deposition, it was clear that Mr. George had no such rights, having failed to make any contribution to creating the design.[2] Thus, Samad had

---

[2] Neither defendants in their opposition papers nor the Magistrate Judge in his M&O disputed that Mr. George's testimony demonstrated that he made no copyrightable contributions to the designs at issue, including the LUXOR. For example, Mr. George testified as follows:

> A. I mean, let me be very clear. You've asked me -- because this question keeps coming back. Do I sit down and put pen to paper or go on a computer keyboard, computer screen and draw out a design? No, I have never done it.

Docket No. 33, Kaufman Ex. 2 at 55:9-13.

> Q. So would the process include your providing a concept and the designers making renderings?
> A. Yes.
> Q. Was there any step between your providing the concept and their starting to work on the rendering?
> A. I am not so sure I understand what you're referring to.
> Q. I'm trying to get a step-by-step process of how the design is developed.
> A. Mark, I can't do that.

Id., at 125:6-17.

> Q. Were you there [at S.N. Kapoor's facilities in India] at the completion of the design without colors?
> A. No.
> Q. Okay. Did you work with a particular designer on this LUXOR carpet?
> A. I don't work with the designers. If I am there, I have, then, the facility to come downstairs and see them every day. But this is not something that someone like me generally -- this is Vikram's responsibility.

Id., 132:22-133:7.   See Docket No. 36 at 5-8. Vikram Kapoor, on behalf of S.N. Kapoor Exports, assigned to Samad all rights in the designs, including the LUXOR.

obtained all rights therein through assignments from the designs' real author, (S.N. Kapoor Exports), rather than through any purported agreement with Mr. George.

Promptly after the Court determined Samad's motion to file the TAC, Samad moved to amend the pleadings to change the allegations that limited Samad's rights in its LUXOR design.[3]

Thereafter, by M&O dated June 30, 2010 (Docket No. 30), Magistrate Judge Fox correctly granted in part Samad's motion, allowing the pleadings to include claims regarding 25 (rather than 26) rug designs. By Order dated October 6, 2009, the Court had scheduled December 31, 2009 as the last date by which the parties could amend the pleadings. See Docket No. 15. Pursuant to Fed. R. Civ. P. Rule 16, Magistrate Judge Fox determined that Samad had acted with adequate diligence in seeking to include 15 rugs identified during the two months of discovery that followed the December 31 deadline, and that defendants would not be prejudiced by such amendment.

On June 30, 2010, Magistrate Judge Fox also held a conference call with the parties, and as set forth in the Court's Order dated July 1, 2010, directed defendants to grant Samad access to their warehouses to "inspect and photograph relevant rug designs." See Docket No. 31.

---

[3] In the TAC, Samad had previously alleged the following:

> 14. At all pertinent times, Samad had the right to register the copyright, in the name of Michael George, the design entitled "LUXOR" and contained in Samad's "River Nile" Collection, and to enforce the copyrights therein. . . .

> 67. Except for the Luxor design, Samad is the sole proprietor of all right, title and interest in and to the copyrights in each of the Samad Designs.

> 68. Except for the Luxor design, under 17 U.S.C. § 106, Samad has the exclusive right to reproduce, distribute, display and prepare derivative works from the Samad Designs.

> 69. Samad has the right to enforce the copyrights in the Luxor design.

The PFAC would delete such limitations on Samad's rights in the LUXOR design. Compare Docket No. 33, ¶¶ 14, 27-29 with Docket No. 35, Ex. 3 ¶¶ 13, 93-95.

3

Magistrate Judge Fox held another conference call on July 2, 2010, clarifying that such inspections should commence by July 14, 2010.  See Minute Entry dated 7/2/2010.  Despite almost daily requests from Samad's counsel, defendants did not grant such access until the evenings of July 12, 13 and 14, 2010.  Under supervision of defendants' staff and counsel, Samad representatives inspected and photographed the rugs in the area of the warehouses that defendants' staff indicated might contain relevant rugs.[4]

During these inspections, Samad discovered, for the first time, rugs bearing designs substantially similar to Samad's POWER and TWILIGHT designs.  Despite its prior efforts, Samad could not have discovered such designs before the warehouse inspections.  Samad had sought discovery of all purchase and sales invoices bearing the Samad designs at issue in the TAC.  However, once defendants provided unredacted information regarding some of the designs that Samad later added to the TAC, defendants thereafter only produced documents redacted of all information except information relating to the rugs already at issue in the pleadings (and sometimes redacted of all information regarding any rugs at all).  See Kaufman ¶¶ 63, 65, and Ex. A-C.  (Apparently, defendants only provided information regarding some of the designs added to the TAC by inadvertently providing unredacted purchase invoices.)  None of the defendants' rugs bearing Samad's POWER or TWILIGHT designs are visible on defendant Bokara's website.  Thus, despite Samad's diligent efforts, it could not have known of these infringing designs prior to its brief inspection of defendants' warehouses.

Within less than a week of the warehouse inspections, Samad filed its motion to amend and to file a proposed Fourth Amended Complaint (the "PFAC").

---

[4] The inspections were hardly conclusive, as conditions rendered it impossible to engage in a comprehensive inventory of infringing rugs.  Bokara's rugs were in stacks of up to 15 feet high and did not appear to be stored in any organized fashion.

Despite such circumstances, the Magistrate Judge denied the second motion to amend, writing that Samad had not exercised the diligence required by Rule 16.  Samad respectfully submits that the Magistrate Judge erred in denying its motion.

## Factual and Procedural Background

Samad commenced this action by filing the Complaint on June 25, 2009, alleging that defendant Bokara Rug Co., Inc. ("Bokara") had infringed the copyright in nine of Samad's rug designs.  See Docket No. 1.  The Complaint was amended as of right and served on August 6, 2009, to add allegations of Bokara's infringement of a tenth design.  See Docket Nos. 4, 5. Pursuant to a Stipulated Consent and Order dated September 8, 2009, on September 9, 2009, Samad served the Second Amended Complaint, which added the individual defendants. Defendants served and filed their answer on October 1, 2009.  See Docket Nos. 6, 9, 10, 13.

The Court issued a Scheduling Order dated October 6, 2009 which provided, *inter alia*, for any amendment of the pleadings to take place by December 31, 2009.  See Docket No. 15. By notice of motion dated February 9, 2010, Samad moved to serve and file a third amended complaint.  Bokara filed opposition papers dated February 24, 2010, and Samad filed reply papers on March 3, 2010.  See Docket Nos. 19-24.  By M&O dated June 30, 2010, the Magistrate Judge granted Samad's motion in part, and denied it in part.  See Docket No. 30.

Pursuant to Order dated July 1, 2010 (see Docket No. 31), Samad inspected Bokara's two warehouses during the evenings of July 12 through 14. On July 19, 2010, Samad filed and served the TAC, alleging infringement of twenty-five different rug designs.  See Docket No. 33.  On July 19, 2010, Samad also filed its motion to amend and to file the proposed Fourth Amended Complaint (the "PFAC").  See Docket Nos. 34-36; the PFAC is annexed as Exhibit 3 to Docket No. 35.  Defendants opposed the motion on July 29, 2010, and Samad replied in further support

of the motion on August 2, 2010.  <u>See</u> Docket Nos. 38-39.

<u>**Argument:**</u>

**Samad Was Diligent In Seeking to Amend, Having Made Its Motion After Samad's Prior
Motion to Amend Was Granted and After Samad Inspected Bokara's Warehouses**

Samad was diligent in bringing its motion to amend and file the PFAC, because it filed
the same within a week of inspecting Bokara's warehouses and within two-and-a-half weeks of
the Magistrate Judge's deciding the first motion to amend.

Significant events had occurred after the Court issued its Scheduling Order dated October
6, 2009, and therein directed the parties to amend on or before December 31, 2009:  (a) the
parties completed their briefing, by March 3, 2010, of the motion to amend and file the TAC; (b)
Samad deposed Michael George, who indisputably demonstrated that he has no ownership
interest in the copyrights of rugs he had claimed to create – indeed, defendants did not dispute in
their opposition papers that Mr. George wholly lacks rights in any such designs; (c) by M&O
dated June 30, 2010, the Court granted in part and denied in part Samad's motion to file the
Third Amended Complaint; and (e) by Order dated July 1, 2010 (and confirmed by telephone
conference on July 2, 2010), the Court directed that defendants grant Samad access to Bokara's
warehouses.

In view of such events, Samad was diligent in bringing its motion to amend and to file the
PFAC.  Defendants did not allow the inspections to commence until July 12.  Within one week
of inspecting Bokara's warehouses on the evenings of July 12-14, 2010,  Samad filed the motion
on July 19, 2010.  Further, Samad filed its motion within 2 ½ weeks after the Court issued its
M&O allowing Samad to bring new claims for infringement of 15 rug designs (in addition to the
10 designs set forth in the prior, Second Amended Complaint).  <u>See</u>  Kaufman, ¶¶ ___.

6

1. **Samad Properly Declined to Seek Amendment in Response to Michael George's Testimony, Pending Determination of the Prior Motion to Amend**

The M&O dated October 19, 2010 (the "M&O") suggests that Samad did not exercise sufficient diligence because Samad did not file its motion to amend while waiting for the Magistrate Judge to decide the previously-filed motion to amend.

In the M&O, the Magistrate Judge does not acknowledge that Samad, in fact, diligently and actively tried to move the case forward during the 4-month period when the Magistrate Judge was determining the motion to amend. After commencing the motion to amend by notice dated February 9, 2010, Samad served its Third Set of Document Requests dated February 11, 2010; responded to defendants' Second Set of Document Requests on March 26, 2010; served its Second Set of Interrogatories dated April 9, 2010; sent subpoenas for documents dated April 9, 2010 to defendants' non-party witness, Saraswati Global; deposed Michael George on May 4, 2010; served a demand for expert information dated May 12, 2010; and submitted a privilege log on June 21, 2010. In contrast, pending determination of the motion to amend, defendants refused to provide responses to discovery requests that Samad served on March 26 and April 9 because such requests related to designs to be added to the then-proposed TAC.[5] Despite such delays and the relative "lull" in the proceedings, Samad was diligent in its efforts and did all that it could to proceed with this lawsuit.

In the M&O, the Magistrate Judge incorrectly held that Samad should have brought its motion to file the PFAC while the motion to file the TAC was pending. Under the Magistrate

---

[5] On May 14, 2010, defendants' prior counsel wrote in an email that they unilaterally would defer providing any responses to the outstanding discovery requests, regarding the additional designs set forth in the then-proposed amendment, until a week after the Court decided the then-pending motion to amend. By letter dated August 9, 2010 to Magistrate Judge Fox, defendants' counsel reiterated that "discovery was necessarily held in abeyance, on consent, while plaintiff's motion to amend was pending." See Docket No. 39, ¶¶ Exhibits A, B.

Judge's reasoning, Samad should have interrupted the Court's M&O-making process multiple times, re-commenced motion practice immediately upon Samad's learning through discovery about each of defendants' additional infringing conduct, and submitted proposed 4th, 5th and 6th Amended Complaints. First, under the Magistrate Judge's reasoning (assuming *arguendo* that Samad in this objection still sought to amend and include claims regarding the CASTILLE and DOMINICA designs), upon receiving in March 2010 the invoices indicating defendants' purchase of designs bearing the identical design numbers as those Samad uses for those designs, Samad should have filed a proposed 4th Amended Complaint. Next, immediately after Michael George's deposition, the Magistrate Judge would have required that Samad make a motion to file a proposed 5th Amended Complaint. Then, even if the Magistrate Judge had directed inspection of defendants' warehouses but had not yet decided any of the pending motions to amend, Samad would have been compelled to move, immediately after the inspections, for leave to file a 6th Amended Complaint.

Samad suggests that it was entirely reasonable and diligent to wait until the Court determined the motion to file the TAC before filing a motion to amend and file the PFAC. Otherwise, Samad would be engaging in redundant motion practice.

The M&O posits that if Samad had moved earlier, the Magistrate Judge and the parties would have preserved substantial time and resources. See M&O at 7. However, Samad submits that requiring multiple motions and proposed amendments before a pending motion to amend is determined would have led to a greater investment of judicial resources, as well as imposing on defendants the incidental costs of motion practice, and the repeated delay of briefing schedules.

The Magistrate Judge also suggests that Samad should have corresponded with the court and defendants to give notice of Samad's intent, at several different times, to further amend the

proposed amended pleadings.   The Magistrate Judge noted that pending determination of the

motion to file the third amended complaint, Samad wrote letters to the Magistrate Judge.[6]

Admittedly, Samad declined to bother the Court with additional correspondence, pending the 4-

month determination of the then-extant motion, but diligently pursued discovery as effectively as

possible during that time.  Samad respectfully submits that its counsel's letters to the Magistrate

Judge indicate Samad's diligence in trying to move the case forward, should not be deemed to be

indicators that Samad was not diligent enough.  The lack of an additional letter, providing

informal notice of a possible intent to amend, does not warrant denial of the motion to amend.

      Pending determination of the motion to amend, and prior to seeking amendment of the

TAC allegations regarding Michael George and the LUXOR design, Samad was prudent to await

the result of the discovery disputes, defendants' further discovery production, and access to

defendants' warehouses in order to determine whether the pleadings would require additional

amendments.

## 2.   Despite Samad's Efforts, It Could Not Have Amended to Include the POWER or TWILIGHT Designs Prior to Inspecting Bokara's Warehouses.

      Samad respectfully submits that the Magistrate Judge wrongly held that Samad's

allegations of discovering two more infringing rug designs in defendants' warehouses did not

sufficiently demonstrate Samad's diligence.  In its moving papers, Samad wrote that it had

---

[6] By fax dated March 19, 2010 and letter dated March 25, 2010, plaintiff requested that the
Magistrate Judge sign proposed stipulations and orders.  By letter to the Magistrate Judge dated
March 31, 2010, defendants sent the parties' joint request to adjourn a settlement conference.  By
letter to the Magistrate Judge dated May 13, 2010, Samad noted that discovery was at somewhat
stalled pending a determination of the motion to amend. By letter dated June 9, 2010, Samad
requested, *inter alia*, that the Court direct that defendants grant Samad access to defendants'
warehouses to inspect for infringing rugs.  By letter dated June 11, 2010, Samad requested leave
to provide additional documents in support of its request to inspect the warehouses.  The
Magistrate Judge granted leave and, by letter dated June 14, 2010, Samad submitted such
documents.

discovered two additional rug designs when it was finally permitted to inspect defendant

Bokara's warehouses: Samad "did not know, and could not have known that defendants had

infringed upon its POWER and TWILIGHT designs until after the motion to amend was decided

and the warehouses inspected." See Docket No. 39 at 9.  The M&O holds that such allegations

did not sufficiently demonstrate efforts in which Samad had engaged to find the two designs.

     The Magistrate Judge appears to be requiring that Samad to "prove a negative."

     In connection with its earlier amendments, Samad had inspected defendant Bokara's

website.  However, none of the defendants' rugs bearing Samad's POWER or TWILIGHT

designs are visible on that website.

     Thus, prior to the warehouse inspections, Samad was not aware that defendants were

infringing on the POWER and TWILIGHT designs.  Clearly, it was not possible to request

specific information regarding designs of which Samad had no knowledge.  Indeed, if Samad had

sent discovery requests asking defendants to identify all of Samad's 300 or more copyrighted

designs which defendants had infringed, defendants doubtless would have objected to such

request on the grounds of over breadth (and would not have admitted that any of their rugs are

substantially similar to any of Samad's, anyway).

     Nevertheless, Samad was diligent in trying to find the previously unknown rugs.

Samad's discovery requests sought all documents relating to the manufacture, purchase,

importation and sale of rugs bearing the designs at issue in the Second Amended Complaint and

TAC.  See Kaufman, Ex. A-C.  Perhaps, if defendants had produced unredacted documents that

not only had designs at issue in the extant complaint, but also set forth rugs substantially similar

to the POWER and TWILIGHT, Samad would have learned about these infringements earlier –

provided that defendants used, on such unredacted documents, the same nomenclature for the

POWER and TWILIGHT designs that Samad and its manufacturer use.  However, once defendants provided unredacted information regarding some of the designs that Samad added to the TAC, they thereafter only produced documents redacted of all information except information relating to the rugs already at issue in the pleadings (and sometimes redacted of all information regarding any rugs at all!).  None of the documents that defendants produced referred to the designations that Samad's manufacturer uses for those two designs.

Thus, despite Samad's diligent efforts, it could not have known of these infringing designs prior to its brief inspection of defendants' warehouses.  For this reason, the Magistrate Judge erred in determining that Samad failed to exercise diligence in seeking leave to file the PFAC to include claims regarding the POWER and TWILIGHT designs.

## The Applicable Law

A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge with regard to such matters. See Fed.R.Civ.P. 72(a); see also DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y.1994).

### A.    The Court Should Modify Its Schedule and Grant the Motion to Amend Because Samad Was Diligent in Seeking to Amend

In connection with amending the pleadings after the passage of a scheduled date for such amendment, a "court may modify the schedule on a showing of good cause if [the schedule] cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. Rule 16, Advisory Committee Notes, 1983 Amendment (discussing subsection (b)). "Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment was proper." Hood v. Hartford

Life & Accident Insur. Co., 567 F. Supp.2d 1221, 1224 (E.D. Cal. 2008) (granting motion to amend; cited in M&O at 5).

Thus, where a party only learns of the existence of a claim in its favor during the course of discovery, despite diligent preparation, the court retains discretion to allow amendment even if the motion to amend follows a date set forth in the court's scheduling order. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2nd Cir. 2000; J. Sotomayor) (cited in M&O at 5; denying motion to amend after defendant had moved for summary judgment)

The circumstances in Parker actually support a finding that a plaintiff has "good cause" to seek amendment after a scheduled date when the proposed amendment is based on facts learned during discovery. The Second Circuit based its M&O on cases finding no good cause where "dismissal of the first complaint should have alerted plaintiffs to inadequacies in the second complaint; the party failed to discover necessary information; and the party received notice long in advance of the deadline that the complaint did not name all necessary parties." 204 F.3d at 340 (citations omitted). Similarly, "When he commenced this action . . . Parker had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact." 204 F.3d at 341. In contrast, Samad had good cause to seek amendment after December 31, 2009, because Samad learned of all of the facts it seeks to change or add to the PFAC after that deadline.

The M&O does not address NycoMed v. Glenmark Generics Ltd., 2010 WL 1257803, * 10 (E.D.N.Y. 2010) (cited in Samad's moving brief and reply brief; see Docket No. 36 at 10, and No. 39 at 3-4). In NycoMed, the defendant awaited the court's ruling on a motion to compel discovery, and then a month after such M&O sought leave to amend its counterclaims to incorporate information that it acquired after the expiration of the deadline for amending the

pleadings.  Under the "good cause" standard of Rule 16(b), the court granted the motion to

amend.  The district court noted the following:

> That [the movant] preferred to have additional discovery before drafting its amended
> pleading is entirely understandable, and a three-month delay does not qualify as
> "extremely belated," especially when contrasted with far longer delays that have been
> tolerated by courts in granting motions to amend.

NycoMed, 2010 WL 1257803, *10-11.  "Notwithstanding Parker, the Second Circuit has not

abrogated the principle that delay alone, in the absence of bad faith or prejudice, is usually not

sufficient reason for denying a motion to amend.  Parker, 204 F.3d at 339; Ruotolo v. City of

New York, 514 F.3d 184, 191 (2d Cir.2008); NycoMed, 2010 WL 1257803, *11

Similarly, in the case at hand, Samad waited four months for the Magistrate Judge to rule

on the then-pending motion to amend.  It was appropriate to so wait.   Further, Samad

understandably engaged in the additional discovery (the deposition of Michael George and

inspecting the warehouses) and immediately after the inspections brought its motion to file the

PFAC. Thus, Samad showed the good cause necessary for the Court to grant the motion to

amend.

Samad brought the motion to amend less than a week after obtaining photographs of

infringing rugs from Bokara's warehouse and two-and-a-half weeks after the Magistrate Judge

decided the first motion to amend.  Samad reasonably waited until it obtained documents

confirming Defendant's additional conduct before moving to add the new copyright infringement

claims.

Other cases cited in the M&O are inapposite.  In Ruotolo v. City of New York, 514 F.3d

184, 191 (2d Cir. 2008) (cited in M&O at 4), the Second Circuit affirmed the district court's

denial of Rule 15(a) relief, because plaintiff sought to amend the complaint post-judgment,

plaintiff had "previous opportunities to amend", and the defendants' would bear undue burden

and prejudice if forced to address such amendment after the district court had dismissed the complaint.  Id.  In contrast, Samad's seeks amendment pre-judgment (and before the close of discovery); Samad did not have the opportunity to amend before obtaining new facts through discovery and pending determination of its prior motion to amend; and defendants are not similarly prejudiced because they have not brought – let alone, been awarded -- a motion to dismiss.  See also Aktiebolag v. Andrx Pharmaceuticals, Inc., 695 F.Supp.2d 21, 29 (S.D.N.Y. 2010) (citing Ruotolo, but holding that 4-month delay pending completion of interlocutory appeal was not an undue delay; granting motion to supplement complaint).

Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (cited in M&O at 4) is similarly inapplicable.  In that case, plaintiff had failed to exercise sufficient diligence in setting forth claims arising from his earlier purchases of WorldCom stock.  Id. at 335.  In contrast, Samad has diligently sought to amend to add claims that it learned during discovery (Michael George's deposition) and obtained solely from the court-ordered warehouse inspection.

Moreover, any delay by Samad in bringing its motion, while waiting four months for the Magistrate Judge to determine the prior motion to amend, simply does not compare with the lengthy delays at issue in the cases cited in the M&O.  Compare In re Enron Corp. Sec. Derivative & ERISA Litig., 610 F. Supp. 2d 600, 653 (S.D. Tex 2009) (cited in M&O at 5; although plaintiff may have had "good cause" to seek relief from scheduling order because it had reasonably relied on then-current law, seven years to bring motion to amend was "undue" delay, and motions for summary judgment had been fully briefed ).

**B.      Defendants Would Not Be Unduly Prejudiced by the Proposed Amendments**

The Magistrate Judge should have factored into his Rule 16 analysis the undisputed lack of bad faith or prejudice. "Courts have permitted amendments where the time between a moving

party's discovery of the relevant facts and the filing of the motion to amend was much longer.  In sum, Bridgeport has demonstrated that it was sufficiently diligent in moving to amend to satisfy the good cause requirement of Rule 16."  Bridgeport Music, Inc. v. Universal Music Group, 248 F.R.D. 408, 413-14 (S.D.N.Y. 2008) (citations omitted; although plaintiff purportedly had information for three years before moving to amend, plaintiff had good cause to wait to confirm certain information in discovery before seeking, *inter alia*, joinder of an additional defendant three months after scheduled deadline to amend; defendants did not oppose addition of more compositions to complaint).

Even in the context of a Rule 16(b) analysis, the absence of prejudice to the non-movant weighs in favor of amendment.  Where the party opposing amendment argues that they are "prejudiced solely because of the time, effort and money" to be expended in litigating this matter, such allegations do not arise to "substantial prejudice".  Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993) (applying Rule 16(b)).  "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  Id.  See Ayers v. SGS Control Services, Inc., 2007 WL 646326, *14 (S.D.N.Y. 2007) (granting amendment because Defendants failed to show how they would be materially prejudiced thereby; citing Rule 15(a) and 16(b), and Parker, *supra*).

Further, plaintiff is unaware of any case finding undue prejudice where, as in this case, discovery is not complete.  See, e.g., Cromer Finance Ltd. v. Berger, 2002 WL 826847, at *12 (S.D.N.Y. 2002).  "The type of prejudice that warrants denial of leave to amend is usually such that it puts [the opposing party] at an unfair disadvantage, such as the addition of a new claim on the eve of trial." Nycomed, 2010 WL 1257803, *12.

15

The Magistrate Judge correctly noted that "while diligence is 'the primary consideration' in determining whether the moving party satisfies the 'good cause' requirement of Rule 16(b), a district court 'also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.'" Kassner v. 2ⁿᵈ Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Nowhere in the M&O – or in defendants' opposition papers, for that matter – is it suggested that the proposed amendment would prejudice defendants.

However, the Magistrate Judge also quotes part of the Kassner M&O out of context: "The district court, as an exercise of its broad discretion concerning the pleadings, may consider whether to allow the already-submitted proposed amended complaint or allow submission of another one." Kassner, 496 F.3d at 244-45 (M&O at 7).  The Magistrate Judge implies that such holding means that approval of Samad's TAC, standing alone, is a reason to deny approval of Samad's PFAC.  In fact, that part of the Kassner M&O is limited to the facts of that case:  "In this regard, we note that counsel for plaintiffs, at the district court's hearing on the motion to dismiss and the cross-motion to amend the complaint, offered to submit a different amended complaint in the event the court considered the submitted proposed amended complaint inadequate.  The district court did not explicitly address counsel's offer." Kassner, 496 F.3d at 244 (citations to transcript omitted).  Thus, the Second Circuit in Kassner provided an additional reason for reversing the district court's denial of that motion to amend, rather than (as the M&O suggests) **requiring** the plaintiff to offer to submit a different amended complaint before the first motion to amend was decided.

The facts of MacDraw, Inc. v. CIT Grp. Equip. Financing, Inc., 157 F.3d 956, 962 (2ⁿᵈ Cir  1998) are also inapposite.  The Second Circuit found that then-District Court Judge Chin had

not abused his discretion by denying the motion for leave to amend, where plaintiff "filed the motion over five years after it filed the complaint and more than two years after the close of discovery; that the proposed negligent misrepresentation claim would require additional discovery, causing undue prejudice to the defendants; and that MacDraw's delay was unexplained." Id. Such circumstances are entirely different from the facts at hand.  Moreover, "Virtually every time a party amends its pleadings, it is, by definition, prejudicial to that party's opponents." Everfresh Beverages Inc. v. Charterhouse Group Int'l, Inc., 238 B.R. 558, 584 (Bankr. S.D.N.Y. 1999) (distinguishing MacDraw where amendment was not unduly delayed and would not cause undue prejudice; plaintiffs had sought to amend their pleadings at during the discovery process).

Defendants would not be unduly prejudiced by the proposed amendments. Indeed, discovery is still ongoing (presently scheduled to end on November 30, 2010) and, at the time the Samad made the motion to amend and file the PFAC, only the deposition of Michael George had been taken.  Notably, Mr. George's purported contractual rights in Samad's designs did not include any claims to the POWER or TWILIGHT designs.  Even if such amendments require additional discovery, discovery is not completed and could be re-opened for limited discovery regarding any additional designs.

Thus, given Samad's diligence in filing the motion to amend and file the PFAC, and the lack of bad faith or prejudice, the Magistrate Judge should have granted the motion to amend.

## CONCLUSION

Based on the foregoing, plaintiff Samad Brothers, Inc. respectfully requests that the Court modify

the Memorandum and Order dated October 19, 2010 of the Magistrate Judge herein, and grant Samad's

motion to amend and to file the proposed Fourth Amended Complaint, as modified.[7]

Dated:     New York, New York
           November 1, 2010                    KAUFMAN & KAHN, LLP

                                               _____
                                               Mark S. Kaufman
                                                 (Email: Kaufman@kaufmankahn.com)
                                                 Attorneys for Plaintiff Samad Brothers, Inc.
                                               747 Third Avenue, 32nd Floor
                                               New York, NY  10017
                                               Tel.: (212) 293-5556

---

[7] As previously noted, Samad would delete references in the proposed Fourth Amended
Complaint to infringement of the CASTILLE and DOMINICA designs, and would not add as
exhibits photographs of the rugs discovered in the warehouses.

18