UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

SAMAD BROTHERS, INC.,                          :      Case No. 09 Civ. 5843
                                                       (JFK / KNF)
                   Plaintiff,                  :

        -- against --                          :      **DECLARATION OF
                                                      MARK S. KAUFMAN
                                               :      IN SUPPORT OF
                                                      PLAINTIFF'S OBJECTION
BOKARA RUG CO. INC., JAN SOLEIMANI, and        :      TO ORDER OF
GABRIEL VAKNIN,                                       MAGISTRATE JUDGE
                                               :      <u>DATED OCTOBER 19, 2010</u>

                   Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

        Mark S. Kaufman, an attorney duly admitted to practice before this Court, under

penalties of perjury, declares as follows:

        1.      I am counsel to plaintiff Samad Brothers, Inc. ("Samad") in the above-referenced

action, and submit this Declaration in support of Plaintiff's Objection to modify the

Memorandum and Order of Magistrate Judge Fox dated October 19, 2010 (Docket No. 54) (the

"M&O")  pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C. §636,

        2.      In the M&O, the Magistrate Judge denied Samad's motion to amend the pleadings

and file a fourth amended complaint.  Samad seeks (a) to incorporate facts which it learned from

a non-party deposition while its prior motion to amend was pending *sub judice* for four months,

and (b) to add claims regarding two additional infringing carpet designs within days after Samad

discovered them during a court-directed inspection of defendants' warehouses.[1]

        3.      Because Samad was diligent and did not unduly delay in seeking such

amendments, and because there is no bad faith or undue prejudice to the defendants, the motion

---

[1] Samad is not objecting to the M&O and Order to the extent it denied amendment (a) to allow
for additional claims regarding defendants' infringement of the CASTILLE and DOMINICA rug
designs, and (b) to include as exhibits photographs from the inspection of defendants'
warehouses.

should be granted.

## **Preliminary Statement**

4.      This is a case of defendants' importing, advertising and selling rugs that infringe upon Samad's copyrights in certain rug designs.

5.      Samad filed a motion to amend and to file a Third Amended Complaint (the "TAC"), to expand the pleadings in order to include claims that defendants had willfully infringed upon 26 Samad designs.

6.      During the four-month period pending the Court's determination of that motion, from March 3, 2010 to June 30, 2010, Defendants declined to provide any documents regarding the designs set forth in the then-proposed TAC.

7.      However, during that time, Samad engaged in limited discovery and took the deposition of Michael George, who defendants had identified in their initial disclosures.

8.      Before his deposition on May 4, 2010, Samad had understood that Mr. George had rights in the LUXOR design (at issue in the Second Amended Complaint), but that Samad had been granted the right to enforce the copyright therein.  After the deposition, it was clear that Mr. George had no such rights, having failed to make any contribution to creating the design.[2]

---

[2] Neither defendants in their opposition papers nor the Magistrate Judge in his M&O disputed that Mr. George's testimony demonstrated that he made no copyrightable contributions to the designs at issue, including the LUXOR.  For example, Mr. George testified as follows:

> A.  I mean, let me be very clear.  You've asked me -- because this question keeps coming back.  Do I sit down and put pen to paper or go on a computer keyboard, computer screen and draw out a design?  No, I have never done it.

Docket No. 33, Kaufman Ex. 2 at 55:9-13.

> Q:  So would the process include your providing a concept and the designers making renderings?

9.      Thus, Samad had obtained all rights therein through assignments from the

designs' real author, (S.N. Kapoor Exports), rather than through any purported agreement with

Mr. George.

10.     Promptly after the Court determined Samad's motion to file the TAC, Samad

moved to amend the pleadings to change the allegations that limited Samad's rights in its

LUXOR design.[3]

11.     Thereafter, by Memorandum and Order dated June 30, 2010 (Docket No. 30),

---

A.  Yes.
Q.  Was there any step between your providing the concept and their starting to
work on the rendering?
A.  I am not so sure I understand what you're referring to.
Q.  I'm trying to get a step-by-step process of how the design is developed.
A.  Mark, I can't do that.

Id., at 125:6-17.

Q:  Were you there [at S.N. Kapoor's facilities in India] at the completion of the
design without colors?
A.  No.
Q.  Okay.  Did you work with a particular designer on this LUXOR carpet?
A.  I don't work with the designers.  If I am there, I have, then, the facility to
come downstairs and see them every day.  But this is not something that someone
like me generally -- this is Vikram's responsibility.

Id., 132:22-133:7.   See Docket No. 36 at 5-8.  Vikram Kapoor, on behalf of S.N. Kapoor
Exports, assigned to Samad all rights in the designs, including the LUXOR.

[3] In the TAC, Samad had previously alleged the following:
    14. At all pertinent times, Samad had the right to register the copyright, in the name
        of Michael George, the design entitled "LUXOR" and contained in Samad's
        "River Nile" Collection, and to enforce the copyrights therein. . . .
    67. Except for the Luxor design, Samad is the sole proprietor of all right, title and
        interest in and to the copyrights in each of the Samad Designs.
    68. Except for the Luxor design, under 17 U.S.C. § 106, Samad has the exclusive
        right to reproduce, distribute, display and prepare derivative works from the
        Samad Designs.
    69. Samad has the right to enforce the copyrights in the Luxor design.
The PFAC would delete such limitations on Samad's rights in the LUXOR design.  Compare
Docket No. 33, ¶¶ 14, 27-29 with Docket No. 35, Ex. 3 ¶¶ 13, 93-95.

Magistrate Judge Fox correctly granted in part Samad's motion, allowing the pleadings to include claims regarding 25 (rather than 26) rug designs.

12.    By Order dated October 6, 2009, the Court had scheduled December 31, 2009 as the last date by which the parties could amend the pleadings.  See Docket No. 15.  Pursuant to Rule 16, Magistrate Judge Fox determined that Samad had acted with adequate diligence in seeking to include 15 rugs identified during the two months of discovery that followed the December 31 deadline, and that defendants would not be prejudiced by such amendment.

13.    On June 30, 2010, Magistrate Judge Fox also held a conference call with the parties, and as set forth in the Court's Order dated July 1, 2010, directed defendants to grant Samad access to their warehouses to "inspect and photograph relevant rug designs."  See Docket No. 31.  Magistrate Judge Fox held another conference call on July 2, 2010, clarifying that such inspections should commence by July 14, 2010.  See Minute Entry dated 7/2/2010.

14.    Despite almost daily requests from Samad's counsel, defendants did not grant such access until the evenings of July 12, 13 and 14, 2010.  Under supervision of defendants' staff and counsel, Samad representatives inspected and photographed the rugs in the area of the warehouses that defendants' staff indicated might contain relevant rugs.

15.    The inspections were hardly conclusive, as conditions rendered it impossible to engage in a comprehensive inventory of infringing rugs.  Bokara's rugs were in stacks of up to 15 feet high and did not appear to be stored in any organized fashion.

16.    During these inspections, Samad discovered, for the first time, rugs bearing designs substantially similar to Samad's POWER and TWILIGHT designs.

17.    Despite its prior efforts, Samad could not have discovered such designs before the warehouse inspections.

4

18.     Samad had sought discovery of all purchase and sales invoices bearing the Samad designs at issue in the TAC.

19.     Excerpts, with check-marks indicating pertinent definitions and requests, from Samad's First Set of Document Requests, dated November 20, 2009; Samad's Second Set of Document Requests, dated December 14, 2009; and Samad's Third Set of Document Requests, dated February 11, 2010, are annexed and made Exhibits A, B and C hereto, respectively.

20.     Despite such document requests, defendants generally provided documents redacted to reflect only the designs already at issue.

21.     Apparently, defendants only provided information regarding some of the designs added to the TAC by inadvertently providing unredacted purchase invoices.

22.      None of the defendants' rugs bearing Samad's POWER or TWILIGHT designs are visible on defendant Bokara's website.

23.     Thus, despite Samad's diligent efforts, it could not have known of these infringing designs prior to its brief inspection of defendants' warehouses.

24.     Within less than a week of the warehouse inspections, Samad filed its motion to amend and to file a proposed Fourth Amended Complaint (the "PFAC").

25.     Despite such circumstances, the Magistrate Judge denied the second motion to amend, writing that Samad had not exercised the diligence required by Rule 16.  Samad respectfully submits that the Magistrate Judge erred in denying its motion.

**Factual and Procedural Background**

26.     Samad commenced this action by filing the Complaint on June 25, 2009, alleging that defendant Bokara Rug Co., Inc. ("Bokara") had infringed the copyright in nine of Samad's rug designs.  See Docket No. 1.  The Complaint was amended as of right and served on August

6, 2009, to add allegations of Bokara's infringement of a tenth design.  See Docket Nos. 4, 5.

Pursuant to a Stipulated Consent and Order dated September 8, 2009, on September 9, 2009,

Samad served the Second Amended Complaint, which added the individual defendants.

Defendants served and filed their answer on October 1, 2009.  See Docket Nos. 6, 9, 10, 13.

27.    The Court issued a Scheduling Order dated October 6, 2009 which provided, *inter*

*alia*, for any amendment of the pleadings to occur by December 31, 2009.  See Docket No. 15.

28.    By notice of motion dated February 9, 2010, Samad moved to serve and file a

third amended complaint.  Bokara filed opposition papers dated February 24, 2010, and Samad

filed reply papers on March 3, 2010.  See Docket Nos. 19-24.  In the M&O dated June 30, 2010,

the Magistrate Judge granted Samad's motion in part and denied it in part.  See Docket No. 30.

29.    Pursuant to Order dated July 1, 2010 (see Docket No. 31), Samad inspected

Bokara's two warehouses during the evenings of July 12 through 14.

30.    On July 19, 2010, Samad filed and served the TAC, alleging infringement of

twenty-five different rug designs.  See Docket No. 33.

31.    On July 19, 2010, Samad also filed its motion to amend and to file the proposed

Fourth Amended Complaint (the "PFAC").  See Docket Nos. 34-36; the PFAC is annexed as

Exhibit 3 to Docket No. 35.  Defendants opposed the motion on July 29, 2010, and Samad

replied in further support of the motion on August 2, 2010.  See Docket Nos. 38-39.

## <u>Argument:</u>

## <u>Samad Was Diligent In Seeking to Amend, Having Made Its Motion After Samad's Prior Motion to Amend Was Granted and After Samad Inspected Bokara's Warehouses</u>

32.    Samad was diligent in bringing its motion to amend and file the PFAC, because it

filed the same within a week of inspecting Bokara's warehouses and within two-and-a-half

weeks of the Magistrate Judge's deciding the first motion to amend.

33.     Significant events had occurred after the Court issued its Scheduling Order dated October 6, 2009, and therein directed the parties to amend on or before December 31, 2009:  (a) the parties completed their briefing, by March 3, 2010, of the motion to amend and file the TAC; (b) Samad deposed Michael George, who indisputably demonstrated that he has no ownership interest in the copyrights of rugs he had claimed to create – indeed, defendants did not dispute in their opposition papers that Mr. George wholly lacks rights in any such designs; (c) by M&O dated June 30, 2010, the Court granted in part and denied in part Samad's motion to file the Third Amended Complaint; and (e) by Order dated July 1, 2010 (and confirmed by telephone conference on July 2, 2010), the Court directed that defendants grant Samad access to Bokara's warehouses.

34.     In view of such events, Samad was diligent in bringing its motion to amend and to file the PFAC.

35.     Defendants did not allow the inspections to commence until July 12.  Within one week of inspecting Bokara's warehouses on the evenings of July 12-14, 2010,  Samad filed the motion on July 19, 2010.

36.     Despite Samad's efforts in discovery, Samad would not have known of defendants' infringing the POWER and TWILIGHT designs prior to such inspections, and

37.     Further, Samad filed its motion within 2 ½ weeks after the Court issued the M&O allowing Samad to bring new claims for infringement of 15 rug designs (in addition to the 10 designs set forth in the prior, Second Amended Complaint).

**1.  Samad Properly Declined to Seek Amendment in Response to Michael
     <u>George's Testimony, Pending Determination of the Prior Motion to Amend</u>**

38.     The Memorandum and Order dated October 19, 2010 (the "M&O") suggests that Samad did not exercise sufficient diligence because Samad did not file its motion to amend while waiting for the Magistrate Judge to decide the previously-filed motion to amend.

39.     In the M&O, the Magistrate Judge does not acknowledge that Samad, in fact, diligently and actively tried to move the case forward during the 4-month period when the Magistrate Judge was determining the motion to amend.

40.     After commencing the motion to amend by notice dated February 9, 2010, Samad served its Third Set of Document Requests dated February 11, 2010; responded to defendants' Second Set of Document Requests on March 26, 2010; served its Second Set of Interrogatories dated April 9, 2010;  sent subpoenas for documents dated April 9, 2010 to defendants' non-party witness, Saraswati Global; deposed Michael George on May 4, 2010;  served a demand for expert information dated May 12, 2010; and submitted a privilege log on June 21, 2010.

41.     In contrast, pending determination of the motion to amend, defendants refused to provide responses to discovery requests that Samad served on March 26 and April 9 because such requests related to designs to be added to the then-proposed Third Amended Complaint.

42.     On May 14, 2010, defendants' prior counsel wrote in an email that they unilaterally would defer providing any responses to the outstanding discovery requests, regarding the additional designs set forth in the then-proposed amendment, until a week after the Court decided the then-pending motion to amend.   By letter dated August 9, 2010 to Magistrate Judge Fox, defendants' counsel reiterated that "discovery was necessarily held in abeyance, on consent, while plaintiff's motion to amend was pending."   See Docket No. 39, ¶¶ Exhibits A, B.


43.     Despite such delays and the relative "lull" in the proceedings, Samad was

diligent in its efforts and did all that it could to proceed with this lawsuit.

44.     In the M&O, the Magistrate Judge incorrectly held that Samad should have brought its motion to file the PFAC while the motion to file the TAC was pending.

45.     Under the Magistrate Judge's reasoning, Samad should have interrupted the Court's M&O-making process multiple times, re-commenced motion practice immediately upon Samad's learning through discovery about each of defendants' additional infringing conduct, and submitted proposed 4th, 5th and 6th Amended Complaints.

46.     First, under the Magistrate Judge's reasoning (assuming *arguendo* that Samad in this objection still sought to amend and include claims regarding the CASTILLE and DOMINICA designs), upon receiving in March 2010 the invoices indicating defendants' purchase of designs bearing the identical design numbers as those Samad uses for those designs, Samad should have filed a proposed 4th Amended Complaint.

47.     Next, immediately after Michael George's deposition, the Magistrate Judge would have required that Samad make a motion to file a proposed 5th Amended Complaint.

48.     Then, even if the Magistrate Judge had directed inspection of defendants' warehouses but had not yet decided any of the pending motions to amend, Samad would have been compelled to move, immediately after the inspections, for leave to file a 6th Amended Complaint.

49.     Samad suggests that it was entirely reasonable and diligent to wait until the Court determined the motion to file the TAC before filing a motion to amend and file the PFAC. Otherwise, Samad would be engaging in redundant motion practice.

50.     The M&O posits that if Samad had moved earlier, the Magistrate Judge and the

parties would have preserved substantial time and resources.  See M&O at 7.

51.     However, Samad submits that requiring multiple motions and proposed amendments before a pending motion to amend is determined would have led to a greater investment of judicial resources, as well as imposing on defendants the incidental costs of motion practice, and the repeated delay of briefing schedules.

52.     The Magistrate Judge also suggests that Samad should have corresponded with the Court and defendants to give notice of Samad's intent, at several different times, to further amend the proposed amended pleadings.   The Magistrate Judge noted that pending determination of the motion to file the third amended complaint, Samad wrote letters to the Magistrate Judge.

53.     By fax dated March 19, 2010 and letter dated March 25, 2010, plaintiff requested that the Magistrate Judge sign proposed stipulations and orders.  By letter to the Magistrate Judge dated March 31, 2010, defendants sent the parties' joint request to adjourn a settlement conference.  By letter to the Magistrate Judge dated May 13, 2010, Samad noted that discovery was at somewhat stalled pending a determination of the motion to amend. By letter dated June 9, 2010, Samad requested, *inter alia*, that the Court direct that defendants grant Samad access to defendants' warehouses to inspect for infringing rugs.  By letter dated June 11, 2010, Samad requested leave to provide additional documents in support of its request to inspect the warehouses.  The Magistrate Judge granted leave and, by letter dated June 14, 2010, Samad submitted such documents.

54.     Admittedly, Samad declined to bother the Court with additional correspondence, pending the 4-month determination of the then-extant motion, but diligently pursued discovery as effectively as possible during that time.

55.     Samad respectfully submits that its counsel's letters to the Magistrate Judge, which indicate Samad's diligence in trying to move the case forward, should not be deemed to be indicators that Samad was not diligent enough.  The lack of an additional letter, providing informal notice of a possible intent to amend, does not warrant denial of the motion to amend.

56.     Pending determination of the motion to amend, and prior to seeking amendment of the TAC allegations regarding Michael George and the LUXOR design, Samad was prudent to await the result of the discovery disputes, defendants' further discovery production, and access to defendants' warehouses in order to determine whether the pleadings would require additional amendments.

### 2.  Despite Samad's Efforts, It Could Not Have Amended to Include the POWER or TWILIGHT Designs Prior to Inspecting Bokara's Warehouses.

57.     Samad respectfully submits that the Magistrate Judge wrongly held that Samad's allegations of discovering two more infringing rug designs in defendants' warehouses did not sufficiently demonstrate Samad's diligence.

58.     In its moving papers, Samad wrote that it had discovered two additional rug designs when it was finally permitted to inspect defendant Bokara's warehouses: Samad "did not know, and could not have known that defendants had infringed upon its POWER and TWILIGHT designs until after the motion to amend was decided and the warehouses inspected."  See Docket No. 39 at 9.  The M&O holds that such allegations did not sufficiently demonstrate efforts in which Samad had engaged to find the two designs.

59.     The Magistrate Judge appears to be requiring that Samad to "prove a negative."

60.     In connection with its earlier amendments, Samad had inspected defendant Bokara's website.  However, none of the defendants' rugs bearing Samad's POWER or TWILIGHT designs are visible on that website.

61.     Thus, prior to the warehouse inspections, Samad was not aware that defendants were infringing on the POWER and TWILIGHT designs.

62.     Clearly, it was not possible to request specific information regarding designs of which Samad had no knowledge.  Indeed, if Samad had sent discovery requests asking defendants to identify all of Samad's 300 or more copyrighted designs which defendants had infringed, defendants doubtless would have objected to such request on the grounds of over breadth (and would not have admitted that any of their rugs are substantially similar to any of Samad's, anyway).

63.     Nevertheless, Samad was diligent in trying to find the previously unknown rugs. Samad's discovery requests sought all documents relating to the manufacture, purchase, importation and sale of rugs bearing the designs at issue in the Second Amended Complaint and TAC.  <u>See</u> Ex. A through C hereto.

64.     Perhaps, if defendants had produced unredacted documents that not only had designs at issue in the extant complaint, but also set forth rugs substantially similar to the POWER and TWILIGHT, Samad would have learned about these infringements earlier – provided that defendants used, on such unredacted documents, the same nomenclature for the POWER and TWILIGHT designs that Samad and its manufacturer use.

65.     However, once defendants provided unredacted information regarding some of the designs that Samad later added to the TAC, defendants thereafter only produced documents redacted of all information except information relating to the rugs already at issue in the pleadings (and sometimes redacted of all information regarding any rugs at all!).

66.     I understand from my client, whose principals are more familiar with their

12

manufacturers' design numbers than I am, that none of the documents that defendants produced referred to the designations that Samad's manufacturer uses for those two designs.

67.     Thus, despite Samad's diligent efforts, it could not have known of these infringing designs prior to its brief inspection of defendants' warehouses.

68.     For this reason, the Magistrate Judge erred in determining that Samad failed to exercise diligence in seeking leave to file the PFAC to include claims regarding the POWER and TWILIGHT designs.

## Summary of Argument

69.     In the case at hand, Samad waited four months for the Magistrate Judge to rule on the then-pending motion to amend.  It was appropriate to so wait.   Further, Samad understandably engaged in the additional discovery (the deposition of Michael George and inspecting the warehouses) and immediately after the inspections brought its motion to file the PFAC.

70.     Thus, Samad showed the good cause necessary for the Court to grant the motion to amend.

71.     Samad was diligent in bringing its motion. Samad brought the motion to amend less than a week after obtaining photographs of infringing rugs from Bokara's warehouse and two-and-a-half weeks after the Magistrate Judge decided the first motion to amend.  Samad reasonably waited until it obtained documents confirming Defendant's additional conduct before moving to add the new copyright infringement claims.

72.     Additionally, Defendants would not be unduly prejudiced by the proposed amendments. Indeed, discovery is still ongoing (presently scheduled to end on November 30, 2010) and, at the time the Samad made the motion to amend and file the PFAC, only the

13

deposition of Michael George had been taken.  Notably, Mr. George's purported contractual rights in Samad's designs did not include any claims to the POWER or TWILIGHT designs. Even if such amendments require additional discovery, discovery is not completed and could be re-opened for limited discovery regarding any additional designs.

73.     Thus, given Samad's diligence in filing the motion to amend and file the PFAC, and the lack of bad faith or prejudice, the Magistrate Judge should have granted the motion to amend.

## CONCLUSION

74.     Based on the foregoing, plaintiff Samad Brothers, Inc. respectfully requests that the Court modify the Memorandum and Order dated October 19, 2010 of the Magistrate Judge herein, and grant Samad's motion to amend and to file the proposed Fourth Amended Complaint, as modified.[4]

Dated:     New York, New York
           November 1, 2010

                              KAUFMAN & KAHN, LLP

                              Mark S. Kaufman
                                 (Email: Kaufman@kaufmankahn.com)
                                 Attorneys for Plaintiff Samad Brothers, Inc.
                              747 Third Avenue, 32nd Floor
                              New York, NY  10017
                              Tel.: (212) 293-5556

---

[4] As previously noted, Samad would delete references in the proposed Fourth Amended Complaint to infringement of the CASTILLE and DOMINICA designs, and would not add as exhibits photographs of the rugs discovered in the warehouses.

14