UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

SAMAD BROTHERS, INC.,                              :

              Plaintiff,                      :   Case No. 09 Civ. 5843
                                                       (JFK / KNF)

  -- against --                                    :

BOKARA RUG CO. INC., JAN SOLEIMANI, and            :
GABRIEL VAKNIN,
                                                       :

              Defendants.
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


# REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF PLAINTIFF'S OBJECTION
## TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 18, 2010


                                    Dated: November 22, 2010

                                    KAUFMAN & KAHN, LLP
                                    Mark S. Kaufman
                                      (Email: Kaufman@kaufmankahn.com)
                                      Attorneys for Plaintiff
                                747 Third Avenue, 32nd Floor
                                New York, NY  10017
                                Tel.: (212) 293-5556

# REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 19, 2010

## PRELIMINARY STATEMENT

As set forth in its moving brief, plaintiff Samad Brothers, Inc. ("Samad") has demonstrated the "good cause" necessary to warrant amendment of the pleadings under Rule 16(b)(4). Samad respectfully submits that the Magistrate Judge's decision to the contrary was clearly erroneous. See F.R. Civ. P. Rule 72(a), and 28 U.S.C. § 636.[1]

## ARGUMENT

### A. Samad Could Not Have Sought to Amend Any Earlier, or Prior to Discovery

In their opposition papers, defendants make great sport of counting plaintiff's prior amendments, but fail to address that plaintiff only could have learned during discovery the facts that prompted Samad to file the proposed Fourth Amended Complaint.[2] It would have been impossible to allege the facts set forth in the proposed Fourth Amended Complaint "7 months ago", as defendants allege -- that is, by December 31, 2009 -- because Michael George's deposition was not taken until May 4, 2010, and defendants reluctantly gave access to their warehouses starting July 12, 2010.[3]

Defendants allege that Samad waited five months to send discovery demands, but

---

[1] Facts supporting this Memorandum are set forth in the accompanying Declarations of Mark S. Kaufman ("Kaufman 11/22/10"), and of Malcolm Samad dated November 22, 2010 ("Malcolm").

[2] Defendants vaguely suggest that Samad improperly provided additional facts and documents not presented to the Magistrate Judge (Def. Opp. Br. at 3, n.1), but in this motion to modify, Samad merely clarified that Samad only learned of the new rugs upon inspecting defendant Bokara's warehouses. Such clarification is hardly the new evidence or arguments at issue in the cases defendants cite. Cf. Black v. Herbert, 02 CV 6252, 2009 WL 1097971, * 2 (S.D.N.Y., April 23, 2009) (inmate proffered entirely new theory of ineffective counsel); Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434, 438 (S.D.N.Y. 2005) (defendants submitted 7 supplemental declarations and an exhibit not provided to magistrate judge).

[3] Defendants complain about Samad's alleged delay in seeking to add claims regarding their infringement of the CASTILLE and DOMINICA designs, but Samad expressly excluded such claims from this motion to modify.

ignore the fact that they did not join issue until October 1, 2010.  See Kaufman 11/22/10, ¶¶ 5-7.  As for Samad's seeking to amend allegations regarding Michael George, defendants (and the Magistrate Judge) ignore the argument that Samad reasonably awaited the Magistrate Judge's ruling as to one motion to amend before making another motion.  Samad's motion to amend was fully briefed by March 3, 2010; Mr. George was deposed two months later, on May 4, 2010, while the motion was pending; the motion was decided two months later, on June 30, 2010.   Thus, Samad waited rather than engaging in redundant motion practice.

By asserting that Samad should have brought its motion to amend regarding Michael George before the prior motion was determined, defendants seek to penalize Samad for attempting to move forward with such deposition during the same period when defendants had refused to provide discovery regarding the 15 designs to be added to the Third Amended Complaint.  See Kaufman 11/22/10, ¶ 8, Ex. A.  Indeed, because they refused to engage in discovery while the prior motion was pending *sub judice*, defendants should be estopped from asserting that Samad failed to engage in additional motion practice during the same period.

As for Samad's request to add the POWER and TWILIGHT designs,[4] it is hard to imagine how the movant could have acting more promptly.  Within a week of Samad's gaining access to defendant Bokara's warehouses and seeing for the first time the rugs bearing these additional designs, Samad brought its motion.

> 1. **Defendants' Producing an Invoice Bearing "LCB-79" Did Not Provide Earlier Notice of Defendants' Infringing Samad's TWILIGHT Design**

Defendants allege that among the documents they sent by letter dated June 11,

---

[4] Samad refers to its designs in all capital letters to indicate that the design names are trademarks.

2

2010 and by overnight courier, defendants produced an invoice from S.N. Kapoor Exports ("SNKE")[5] indicating that defendants had purchased one rug called "LCB-79". Assuming *arguendo* that LCB-79 is SNKE's designation for TWILIGHT – which defendants do not demonstrate with any evidence whatsoever – that is not enough to show Samad's lack of diligence, for two reasons:  Samad could not have confirmed that such invoices related to such designs any faster than it did through its warehouse visits; and Bokara did not purchase from SNKE the rugs which Samad found.[6]

Defendants produced on June 12, 2010 -- 30 days before the warehouse inspection on July 12, 2010-- the invoice provided with defendants' opposition papers. Even if Samad, on the very day it received such purchase invoice delivered by letter mailed on June 11, 2010, had served document requests for all documents concerning the "LCB-79", responses to such document requests would not be due for 30 days – that is, by July 13, 2010.  Thus, even if Samad immediately had recognized the rug design on one invoice that defendants produced among thousands of documents, Samad could not have confirmed defendants' infringing upon the TWILIGHT design any sooner than Samad discovered such rug in Bokara's warehouses.  Moreover, Samad could not have served its motion to amend any more diligently than a few days after such inspections.

---

[5] Defendants, perhaps out of desperation rather than malice, freely make factual statements that they do not attempt to support with any evidence. Most egregiously, they allege that "S.N. Kapoor Exports apparently has a financial stake in the outcome of this action if plaintiff is successful." Def. Opp. Br. at 12.  As far as Samad is aware, there is absolutely no truth to such an outrageous and inflammatory allegation, and defendants do not purport to submit any evidence that supports such allegation. See Malcolm Decl. ¶ 17.

[6] The labels attached to the three warehouse rugs bearing the TWILIGHT designs indicate that defendants imported these infringing rugs from two other exporters – not SNKE.  Thus, the SNKE purchase invoice purportedly indicating importation of a rug bearing the TWILIGHT design was not the purchase invoice for these TWILIGHT rugs. See Malcolm Decl. ¶¶ 14-15 and Ex. A thereto.  Despite defendants' slurs against SNKE, which created and assigned to Samad the TWILIGHT design, defendants bought these two rugs from two other manufacturers who indisputably did not have any copyrights therein.

3

Thus, defendants fail in their unsubstantiated attempt to show that Samad could have amended the pleadings regarding the TWILIGHT design sooner than the date Samad first discovered an actual rug bearing such design.

Notably, defendants have no similar argument to suggest that Samad received any so-called "prior notice" that defendants had imported rugs bearing the POWER design.

### 2. Samad Could Not Have Foreseen Finding the TWILIGHT or POWER Rugs in Bokara's Warehouses

Defendants absurdly suggest that Samad could have "foreseen at the time the discovery schedule was set the possibility of having to move for leave to amend following a warehouse inspection…." However, Samad could not have foreseen the contents of Bokara's warehouses. Indeed, defendants misrepresented that the AVALON rugs were in only one warehouse.[7]

The inspections were intended to locate and photograph rugs for which defendants claimed not to have any photos, and to determine which of the rugs sold under the undifferentiated AVALON "collection" were rugs that infringed upon Samad's designs. See Kaufman 11/22/10 Ex. B at 5:19-21, 12:12-14.[8] At the inspections, mixed in among the rugs that defendants' representatives said might include AVALON rugs, Samad found rugs bearing the POWER and TWILIGHT designs. See Malcolm at ¶ 10.

---

[7] Defendants' counsel represented that there was only one warehouse containing the AVALON rugs. See Kaufman 11/22/10 ¶ 23-24. Only after Samad's representatives had been inspecting a small portion of a warehouse on July 12 and 13, 2010 did defendants reveal that they stored other AVALON rugs in a second facility, which they inspected for a few hours on July 14, 2010. See Malcolm ¶ 7.

[8] Notably, importation documents which defendant Bokara produced indicated that each rug had a specific design name and seal number when Bokara purchased the rug, but upon sale, consignment or putting the rug into inventory, the previously individualized rugs were subsumed into the AVALON category, based on the quality and price point of the rug. Defendants have alleged that once a rug was so categorized, defendants purportedly cannot determine whether, when, or to whom any of the individual rugs were actually sold.

4

Based on what defendants had told Samad, Samad could not have foreseen that it would find, in addition to so-called AVALON rugs, rugs bearing *more* infringing designs in Bokara's warehouses.  Thus, nothing that defendants had said or provided in discovery prepared Samad to find additional infringing designs, let alone three rugs bearing the TWILIGHT design and three rugs bearing the POWER design it actually found.

In a footnote, defendants allege – as an afterthought, not worthy of appearing in the body of their brief -- that amending the complaint would be futile:  "Simply identifying a rug located at a warehouse is insufficient to allege infringement, because the time and manner of the alleged infringement is not specified."  However, identifying rugs bearing each of these two additional designs indicates that defendants infringed Samad's exclusive right to import works that are the subject of Samad's copyright registrations.  See 17 U.S.C. § 602(a) (unauthorized importation infringes upon the copyright owner's exclusive right to distribute).  Thus, identification of infringing imported goods is sufficient to proceed with such claims and discovery regarding such goods.  See, e.g., Capitol Records, Inc. v. Wings Digital Corp., 218 F.Supp.2d 280, 283 (E.D.N.Y. 2002) (plaintiffs need only give facts necessary to put defendants on notice of copyright infringement; "they are not required to state with particularity specific infringing acts or the times of such acts."). [9]

### 3. Samad Reasonably Awaited the Magistrate Judge's Decision Before Moving to Amend Again.

---

[9] Cf. Kelly v. L.L. Cool J., 145 F.RD. 32, 36 (S.D.N.Y. 1992) (recognizing that Rule 8 is satisfied by allegations identifying infringing acts and distinguishing them from "[b]road, sweeping allegations of infringement [which] do not comply with Rule 8"), aff'd, 23 F.3d 398 (2d Cir.1994), cert. denied, 513 U.S. 950, 115 S. Ct. 365 (1994).  In contrast, in Brought to Life Music, Inc. v. MCA Records, Inc., No. 02 Civ. 1164, 2003 WL 296561, * 1 (S.D.N.Y Feb. 11,2003) (Def. Br. Opp. at 13, n.7), plaintiff expressly failed to allege infringing conduct.

Conspicuously absent, from both the Magistrate Judge's decision and from defendant's opposition brief, is any acknowledgement that Samad was hampered in its opportunity to file its motion because, for more than four months, the prior motion to amend was pending *sub judice*. Samad acted reasonably, rather than burdening the court with redundant motions. Neither the decision that is the subject of this motion nor defendants' opposition address, let alone refute, the decision in NycoMed v. Glenmark Generics Ltd., March 26, 2010, 2010 WL 1257803, * 10 (E.D.N.Y. 2010), in which the court acknowledged that it was reasonable for the movant to wait for a ruling on a pending motion before bringing its motion to amend. Samad's conduct was consistent with the movant's in NycoMed. "Notwithstanding [Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2nd Cir. 2000)], the Second Circuit has not abrogated the principle that delay alone, in the absence of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend." Id. at *11.  See also Bridgeport Music, Inc. v. Universal Music Group, 248 F.R.D. 408, 413-14 (S.D.N.Y. 2008) (plaintiff had good cause to wait 3 years to confirm certain information in discovery before moving, three months after scheduled deadline to amend, for joinder of an additional defendant).

**B.   Unlike the Cases Cited by Defendants, Which Involve Facts Substantially Different From the Instant Case, Samad Acted Diligently**

Rather than addressing the facts of the case at hand, defendants rely on cases that are wholly inapposite to argue against the Court's finding that Samad acted diligently and has good cause to amend the complaint. For example, in Lowry v. Eastman Kodak Co., 14 Fed. Appx. 27, 30 (2d Cir. 2001) (Def. Opp. Br. at 2), the employee plaintiff was not diligent because his proposed amended would add a new legal theory to the action; he did not seek to amend the complaint until after discovery had closed; and he did not bring his

motion until the employer's motion for summary judgment was pending.  In contrast, Samad is not proposing to change the legal theory of the case; discovery is ongoing;[10] and no dispositive motion is pending.

In Rent-a-Center Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 103 (S.D.N.Y. 2003) (Def. Opp. Br. at 2-3, 5-6), defendants brought their motion to amend after an extended discovery deadline had passed.  Additionally, defendants in that case inappropriately argued that they did not have to demonstrate any "good cause" because the court had abolished the deadline for amendments when it extended the discovery deadline.  Cf. Parker, 204 F.3d at 340 (denying motion to amend after defendant had moved for summary judgment).

In Oppenheimer & Co. v. Metal Mgmt., No. 08 Civ. 3697, 2009 WL 2432729 (S.D.N.Y. July 31, 2009) (Def. Opp. Br. at 2), defendant moved to amend its answer and add entirely new counterclaims.  The court noted that defendant had notice of the allegedly new issue that it sought to add as a counterclaim "since the outset of this suit". Id. at *3.  The movant failed to demonstrate that it had garnered any new facts during discovery to warrant its delay in bringing the motion to amend.  Id. at *4.  In contrast, Samad's motion is based entirely on information gathered during discovery, and does not add any new theory or law to the copyright infringement claims already at issue in this case.  It merely seeks to clarify (as to Michael George) and to add claims under the same provisions of the Copyright Act (as to the POWER and TWILIGHT designs).

In Syracuse Univ. v. Otis Elevator Co., No. 09-CV-0172, 2010 WL 2680230 (N.D.N.Y July 1,2010) (Def. Opp. Br. at 3), the movant had failed to act diligently

---

[10] Throughout these motions, discovery has been ongoing:  (a) at the time Samad made its motion to amend as of July 19, 2010 (Docket No. 34); (b) at the time it made this motion on November 1, 2010 to modify; and (c) at the time of this reply brief.

because no depositions had taken place. Further, defendants' request to extend the scheduled deadline to amend the pleadings "disclose[d] no unforeseen circumstances that were not contemplated, or could not have been foreseen, by the parties at the time the schedule in this case was issued." Id. at *3. In contrast, Samad's motion is based on information that was unavailable before the December 31, 2009 scheduled date to amend; Samad has moved forward and held depositions (including those of Michael George and three others); Samad reasonably waited two months after George's deposition, until the Magistrate Judge determined the prior motion to amend; and Samad brought its motion immediately after the prior motion was granted and the warehouse inspections took place.

The delay in seeking to amend in Nairobi Holdings Limited v. Brown Brothers Harriman & Co., 2006 WL 617977, *7-8 (S.D.N.Y. 2006) (Def. Opp. Br. at 3) was far greater than any delay alleged by defendants in this case: 5 years after the filing of another action that contained identical allegations, 3 ½ years after depositions ended, and 7 months after receiving document production. Cf. Lory v. General Elec. Co., 179 F.R.D. 86, 88 (N.D.N.Y. 1998) (Def. Opp. Br. at 3) (plaintiff delayed in providing its expert report based on unfounded settlement hopes, and discovery delays concerned matters unrelated to proposed expert report). Thus, defendants' cases are inapposite.

**C.     Defendants Would Not Be Unduly Prejudiced by the Proposed Amendment**

Defendants argue that the lack of prejudice to the non-movant is not a factor in denying a motion to amend. The case on which defendants rely for such proposition is immaterial. In Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749, 2009 WL 3467756 (S.D.N.Y. Oct. 27, 2009) (Def. Opp. Br. at 4), the court expressly held that plaintiffs' proposed amendments did not involve any newly-discovered evidence; that

8

plaintiffs could have asserted their new claims at the outset of this case; and plaintiffs waited more one year after the magistrate judge's deadline for adding claims before seeking leave to file amended pleadings. Id. at *3. Under those circumstances – very different from the circumstances of Samad's case – the court held that consideration of prospective prejudice to defendants was not warranted. Id. at *6.[11]

Defendants do not address, let alone refute the reasoning of Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993) (where non-movant is "prejudiced solely because of the time, effort and money" to be expended in litigating this matter, such allegations do not arise to "substantial prejudice"; applying Rule 16(b)).

Defendants half-heartedly argue that they would, in fact, be prejudiced by the proposed amendments because they have already taken the deposition of Samad's 30(b)(6) witness, Malcolm Samad. Presumably, they mean would be "unduly" prejudiced. See Everfresh Beverages Inc. v. Charterhouse Group Int'l, Inc., 238 B.R. 558, 584 (Bankr. S.D.N.Y. 1999) (every proposed amendment "is, by definition, prejudicial to that party's opponents."). However, defendants' counsel already asked Mr. Samad about Michael George, and regarding 14 of the 25 rug designs at issue in the Third Amended Complaint. Defendants' counsel expressly conceded during the deposition that "there were ones [rug designs] we didn't get to…". See Kaufman 11/22/10, ¶¶ 33-35, Ex. C at 282:18-283:3. Given that defendants did not even attempt to ask Mr. Samad about all 25 designs in the Third Amended Complaint, the purportedly

---

[11] Cf. Heusser v. Hale, No. 07-CV-1660, 2009 WL 4250062, *1-2 (D. Conn. Nov. 12, 2009) (plaintiff filed to amend only 5 days before the discovery deadline, and only recently discovered information because it waited two years to take depositions). In contrast, Samad's motion to amend was filed 4 ½ months before the November 30, 2010 discovery deadline, and even this motion to modify was filed a full month before the present discovery deadline.

9

lost opportunity to ask about two more designs as set forth in the proposed Fourth Amended Complaint can hardly amount to undue prejudice. Moreover, defendants took Mr. Samad's deposition after Samad made its motion to amend, and after Samad made this motion to modify. Thus, if defendants were purportedly unduly prejudiced because they took such deposition, they did so knowingly.

Cases cited regarding the purportedly "cavalier" attitude of "serial amenders" are inapposite, as well.[12] Samad has merely sought to clarify and add claims that conform with the evidence uncovered during discovery.

## CONCLUSION

Based on the foregoing, plaintiff Samad Brothers, Inc. respectfully requests that the Court modify the Memorandum and Order dated October 19, 2010 of the Magistrate Judge herein, and grant Samad's motion to amend and to file the proposed Fourth Amended Complaint, as modified.

Dated: New York, New York
       November 22, 2010            KAUFMAN & KAHN, LLP

                                    _____
                                    Mark S. Kaufman
                                       (Email: Kaufman@kaufmankahn.com)
                                    Attorneys for Plaintiff Samad Brothers, Inc.
                                    747 Third Avenue, 32nd Floor
                                    New York, NY  10017
                                    Tel.: (212) 293-5556

---

[12] In Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350, 2008 WL 4104015 * 3 (S.D.N.Y. Aug. 28, 2008; M.J. Fox, presiding) (Def. Opp. Br. at 11) the court denied plaintiff's motion filed after discovery had ended to extend the discovery deadline; that case did not address amendment of the pleadings. However, in the same case, the court later **granted** a motion to amend. See Eng-Hatcher v. Sprint Nextel Corp., 2008 WL 4104015 * 2 (S.D.N.Y. Oct. 31, 2008) ("active litigation in this action was, at the parties' request, suspended for a period"; defendants had learned of information during pre-trial discovery; and defendants brought their motion to amend the answer and assert counterclaims within 4 weeks after active litigation resumed). "In any event, delay alone is typically not a sufficient basis upon which to deny a request to amend pleadings." Id.

10