UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SAMAD BROTHERS, INC., | Case No. 09 Civ. 5843 (JFK / KNF) |
| Plaintiff, | |
| -- against -- | **REPLY DECLARATION OF MALCOLM SAMAD IN FURTHER SUPPORT OF PLAINTIFF'S OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 19, 2010** |
| BOKARA RUG CO. INC., JAN SOLEIMANI, and GABRIEL VAKNIN, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MALCOLM SAMAD, under penalties of perjury of the United States of America, based on his own personal knowledge, declares the following to be true except, as to the matters based upon information and belief, that he believes the following to be true:

1.  I am Vice President to Samad Brothers, Inc. ("Samad"), plaintiff in the above-referenced action.

2.  In their opposition brief, defendants absurdly suggest that Samad could have foreseen at the time the discovery schedule was set the possibility of having to move for leave to amend following a warehouse inspection.  However, based on the discovery defendants had provided before the inspection, Samad could not have foreseen that it would find, in addition to the so-called AVALON rugs, rugs bearing *more* infringing designs in Bokara's warehouses.

3.  Rugs bearing the TWILIGHT and POWER designs are not on Bokara's web site.

4.  I understand from the deposition of David Lew on November 19, 2010, that Bokara does not maintain a printed catalog of rugs it sells.

5.  I was among the Samad representatives who visited the warehouses on July 12,

13 and 14, 2010.

6.      As an initial matter, I understand that defendants' attorneys had told Samad's counsel, and the Magistrate Judge, that Bokara had only one warehouse containing AVALON rugs.

7.      However, during the July 12 or 13, 2010 inspection, defendants' representative David Lew (assistant to defendant Jan Soleimani) first admitted to me that defendants store other AVALON rugs in a second warehouse, a few miles away, which we visited on July 14, 2010.

8.      Our inspections were far from complete, as the rugs are stored in piles that are up to 15 feet high; there was not enough room between aisles to drop from the piles and view each rug; the process of inspection was therefore very slow; we only were there for some 4 hours on each of three evenings; and the warehouses apparently contain many thousands of rugs.

9.      I understand from counsel that, pursuant to discussions with the Court, the inspections were intended to locate and photograph rugs for which defendants claimed not to have any photos, and to determine which of the rugs sold under the undifferentiated AVALON "collection" were rugs that infringed upon Samad's designs.

10.     However, at the inspections, mixed in among the purportedly thousands of rugs that defendants' representatives said might include AVALON rugs, we found rugs bearing the POWER and TWILIGHT designs.

11.     Thus, nothing that defendants said or provided in prior discovery prepared Samad to find additional infringing designs, let alone three rugs bearing the TWILIGHT design and three rugs bearing the POWER design we actually found there.

12.     Defendants allege that among the documents they sent by letter dated June 11, 2010 and by overnight courier, defendants produced an invoice from S.N. Kapoor Exports

("SNKE") indicating that defendants had purchased one rug called "LCB-79", and that such invoice provided Samad with notice that it would find infringing TWILIGHT rugs in the warehouses.

13. Such invoice is not enough to show Samad's lack of diligence, because Bokara did not purchase from SNKE the TWILIGHT rugs which Samad found.

14. During the warehouse inspections, we found three rugs bearing the TWILIGHT designs. The labels attached to the three rugs indicate that defendants did not import such rugs from SNKE. Rather, information on the tags of these rugs and purchase invoices produced by defendants in discovery indicate that defendants imported these infringing rugs from two other exporters, Mahendra R. Saraf & Co. and Jaipur International.

15. Thus, the SNKE purchase invoice annexed as an exhibit to defendants' opposition papers, purportedly indicating importation of a rug bearing the TWILIIGHT design, was not the purchase invoice for the TWILIGHT rugs discovered at the warehouse inspections, and did not provide Samad with notice that it would uncover additional incriminating evidence, of importation from multiple sources, during such inspections.

16. Despite defendants' slurs against SNKE, which created and assigned to Samad the TWILIGHT design, defendants bought these two rugs from two other manufacturers who indisputably did not have any copyrights therein.

17. Defendants freely make factual statements that they do not attempt to support with any evidence. Most egregiously, they allege that "S.N. Kapoor Exports apparently has a

financial stake in the outcome of this action if plaintiff is successful." Def. Opp. Br. at 12. There is absolutely no truth to such an outrageous and inflammatory allegation, and defendants do not purport to submit any evidence that supports such allegation.

## CONCLUSION

Based on the foregoing, and on the reasons set forth in the accompanying Memorandum of Law, plaintiff Samad Brothers, Inc. respectfully requests that the Court modify the Memorandum and Order dated October 19, 2010 of the Magistrate Judge herein, and grant Samad's motion to amend and to file the proposed Fourth Amended Complaint, as modified.

Dated:   East Rutherford, New Jersey
         November 22, 2010

_____
MALCOLM SAMAD