UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

SAMAD BROTHERS, INC.,                                              :

               Plaintiff,                           :      Case No. 09 Civ. 5843
                                              (JFK / KNF)

       -- against --                                   :

BOKARA RUG CO. INC., JAN SOLEIMANI, and            :
GABRIEL VAKNIN,
                                                :

               Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


## CORRECTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION <u>FOR SANCTIONS AND CONTEMPT</u>


Dated: February 20, 2011

KAUFMAN & KAHN, LLP

Mark S. Kaufman
  (Email: Kaufman@kaufmankahn.com)
  Attorneys for Plaintiff
747 Third Avenue, 32nd Floor
New York, NY  10017
Tel.: (212) 293-5556

## <u>Table of Contents</u>

PRELIMINARY STATEMENT ................................................................................................. 1

I.    STATEMENT OF FACTS ....................................................................................... 2

II.   DEFENDANTS ARE IN CONTEMPT OF THE COURT'S ORDERS ........................................... 8

   A.   The Orders Are Clear and Unambiguous ................................................................ 9

   B.   Defendants' Proof of Non-Compliance is Clear and Convincing .................................... 10

      1.   Defendants' Acts Violated the Court's Order of January 24 ...................................... 10

      2.   Defendants' Acts Violated the Court's Order of February 10 ..................................... 11

   C.   Defendants Have Not Diligently Attempted to Comply in a Reasonable Manner ......................... 12

III.  THIS COURT SHOULD IMPOSE SANCTIONS AFFORDING APPROPRIATE RELIEF FOR THE DAMAGE CAUSED BY DEFENDANTS' CONTEMPT ............................................................... 13

   A.   The Court Should Deem That the Copyright Registration Photographs Include Designs That Are Substantially Similar to the 25 Samad Designs At Issue ........................................ 14

   B.   Alternatively, Defendants Should Be Sanctioned in the Amount of $2,000 per Day of Violation of the January 24th Ruling ............................................................... 15

   C.   The Sanction Should Include Samad's Attorneys' Fees and Costs ................................. 16

CONCLUSION ............................................................................................... 17

## Table of Authorities

### Cases

A. V. by Versace, Inc. v. Gianni Versace, S.p.A.,, 87 F. Supp. 2d 281, 289 (S.D.N.Y. 2000), ................ 13

Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 594, 599 (W.D.N.Y. 1996) .............................. 13

Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd., 869 F.2d 34, 39 (2d Cir. 1989); .............................. 17

Gutman v. Klein, No. 03 CV 1570(BMC)(RML) 2008 WL 4682208, *11 (E.D.N.Y. 2008). ................... 13

In re Baldwin-United Corp., 770 F.2d 328, 339 (2d Cir. 1985) .................................................................... 9

In re MarketXT Holdings Corp., 336 B.R. 39, 52 (S.D.N.Y. 2006) ..................................................... 12, 16

In re MarketXT, 336 B.R. 39, 54. (S.D.N.Y. Bankr. 2006) ....................................................................... 13

King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) .................................................................. 8

Maggio v. Zeitz, 333 U.S. 56, 69, 68 S. Ct. 401, 408 (1948) ...................................................................... 8

Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1477 (1990). ...................................................................................................... 16

N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d 854, 857 (2d Cir. 1984) ........................................ 8, 17

New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989), cert. denied, 495 U.S. 947, 110 S. Ct. 2206 (1990). ............................................................................................... 13, 16

Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir. 2003), ................................................................. 8

Sigety v. Abrams, 632 F.2d 969, 974 (2d Cir. 1980) ................................................................................ 12

Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1536 (11th Cir. 1986). ....................................................................................................................................................... 17

United States v. United Mine Workers of Am., 330 U.S. 258, 303-04, 67 S. Ct. 677, 91 L. Ed. 884 (1947). ....................................................................................................................................................... 13

Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) ......................................... 13

Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). ................................................................................ 17

### Rules

Fed. R. Civ. P. 37(b)(2)(A)(i), ........................................................................................................ 1, 15, 17

Local Rule 83.9, ............................................................................................................................................ 1

Rule 70(e) of the Federal Rules of Civil Procedure ..................................................................................... 1

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED OCTOBER 19, 2010

Pursuant to Rules 37(b) and 70(e) of the Federal Rules of Civil Procedure and Local Rule 83.9, plaintiff Samad Brothers, Inc. ("Samad") respectfully submits this Memorandum of Law in support of its Motion for Sanctions and Contempt against defendants Bokara Rug Company, Inc. ("Bokara"), Jan Soleimani and Gabriel Vaknin for defendants' failure to comply with this Court's orders dated January 24, 2011 and February 10, 2011.

### PRELIMINARY STATEMENT

Samad seeks an order awarding sanctions and citing defendants in contempt for violating the Court's orders, as ruled during a telephone conference held on January 24, 2011 and again in an endorsed memorandum dated February 10, 2011, to produce photographs that defendant Bokara filed with more than 300 of its copyright registrations.  Defendants have refused to produce the photographs.

Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), defendants should be sanctioned with, among other things, the Court "directing that the matters embraced in the order[s] be taken as established for the purposes of the action, as [Samad] claims."  Specifically, Samad respectfully requests that the Court direct that the photographs from all of defendants' copyright registrations be deemed to include designs that are substantially similar to the 25 designs which plaintiff Samad alleges that defendants have infringed.  Alternatively, Samad seeks production of such photographs "expeditiously" and sanctions in the amount of $2,000 for each day from January 28, 2011 (the day that the Court  initially directed that the photographs be produced) until such production is complete.  Samad also seeks its costs and attorneys' fees occasioned by this application to enforce the January 24th and February 10th orders.

Defendants have written that they intend to appeal the February 10th order, and that the January 24th ruling was not an "order" (at least for purposes of starting the time to appeal) unless and until defendants were "served" a copy of the transcript from the conference. Samad respectfully suggests that such reasoning is frivolous and lacks the requisite deference to the Magistrate Judge's rulings. See Kaufman Ex. A and B.

## I.   STATEMENT OF FACTS

The relevant facts are set forth below and in the accompanying Declaration of Mark S. Kaufman, dated February 19, 2011 ("Kaufman") and exhibits thereto.

Samad commenced this action on June 22, 2009 for copyright infringement. With the filing of the Third Amended Complaint, Samad alleges that defendants have infringed at least 25 of the rug designs that Samad owns. Throughout discovery, Samad sought photographs of defendants' rugs in order to confirm substantial similarity with Samad's rug designs. Online records from the Copyright Office indicate that Bokara has 304 copyright registrations. See Kaufman ¶ 12 and Ex. C. However, as demonstrated during defendants' depositions, defendants failed to look for or review photographs or "deposit copies" filed with their copyright registrations. Such failure was highlighted when defendants produced, in response to Samad's specific requests for registrations and after certifying complete document production, a deposit copy indicating that Bokara had registered a design substantially similar to Samad's. See Kaufman ¶ 15, and Ex. A at 4:20-5:10.

Production of photographs of defendants' purportedly copyrighted rug designs could be essential to Samad's case. Samad does not have photos of all of the rugs that Bokara infringed. Rather, Samad alleged infringement of rug designs that have the same design names that Samad imported. Searches of Bokara's warehouses confirmed that Samad's deductive reasoning was

accurate:  defendants hold in inventory rugs bearing at least ten of the designs which Samad

initially had identified through Bokara's purchase documents.  Samad still lacks photos of

approximately 5 of the infringing designs.  Defendants' production of copyright registration

photographs could uncover designs that Samad cannot locate, that defendants have asserted that

they cannot find, but that are substantially similar to Samad's designs.  Thus, the failure to

produce the copyright deposit copies is prejudicial to plaintiff.  See Kaufman ¶¶ 13-14.

>   During a telephone conference on January 24, 2011, Judge Fox ruled, among other

things, as follows:

> Turning to the discovery matters that the plaintiff claims are really evidences
> of deficiencies in the responses made to the plaintiff discovery demands it
> does not appear to me that there was a search, certainly not an adequate
> search, for photographs generally.  And specifically, photographs that are
> part of the registrations for rug designs.  And I think that the defendants have
> to do such a search and produce whatever photographs they have generally,
> and specifically, the photographs that are attached to the registrations.

Kaufman Ex. A at 4:5-19.  The Court also ruled that defendants would produce by Friday,

January 28, 2011, all documents that were the subject of the ruling (including the photographs)

except for certain documents that apparently required consultation with a computer technician in

order to be produced legibly:

> THE COURT:   Well, you will know, I would imagine, by Wednesday
> [January 26th] whether on Friday [January 28th] you'll be providing all the
> materials that have been discussed today.
> So it seems to me that you should be in a position on Wednesday to
> advise Judge Keenan that we had this conference, that there's material
> outstanding, it should be available Friday, and he can use that information to
> give you guidance on a motion practice.

Kaufman Ex. A at 62:19-63:2.

> THE COURT:   So by Friday upcoming [January 28th], that which can
> be delivered to the plaintiff should be delivered.  If the consultant is going to
> take beyond Friday, you should know that I am hopeful by Wednesday, and
> be able to report back to Judge Keenan, and he can talk to you about it in

> determining whether he wants to put it in place a schedule now or whether he
> wants to wait or give you some other direction.

Kaufman Ex., 65:3-10.

By letter to defendants dated January 24, 2011, Samad summarized what counsel
understood the Court had determined, including the requirement to produce the photographs
from copyright registrations. See Kaufman Ex. D. Defendants did not address, let alone refute,
anything in Samad's January 24th letter.

At a status conference held on January 26, 2011, defendants represented to Judge Keenan
that they were consulting with Microsoft regarding the computer-generated documents, and
would produce some documents by Friday, February 4, 2011. Samad's counsel understood that
they would produce all other documents as directed by Judge Fox, including the copyright
photos, by January 28, 2011. Kaufman ¶ 19. By letter dated January 28, 2011, Samad wrote that
in view of Judge Fox's January 24th ruling, defendants' production should include certain
documents that Samad had previously requested. Kaufman ¶ 21. Notably, by email dated
January 28, 2011, defendants responded as follows:

> I will follow the transcript and will only respond to the items in the transcript….
> The transcript speaks for itself and Judge Fox can interpret his recollection based
> on the transcript.

Kaufman Ex. E. Thus, it is clear that by no later than the date of such email (and probably by
January 26, 2011, when Samad received the transcript), defendants had received a copy of the
transcript. Kaufman ¶¶ 20-23.

On January 28th, as directed by the Court on January 24th, defendants produced a 43-page
invoice without redactions except for the customer's identity.[1] However, each page was labeled

---

[1] Defendants initially produced the invoice with all rugs except two redacted. On January 24th,
the Court held that Samad had demonstrated that defendants had redacted at least one other

ATTORNEYS' EYES ONLY, despite the Court's expressly ruling, on January 24th, that such documents should be labeled only CONFIDENTIAL.  See Kaufman Ex. A at 27:6-29:4, and Ex. F.  Only after defendants' production of documents with the more restrictive label, and Samad's rejection thereof on the ground that such conduct was in contempt of the Court's ruling, did defendants agree to re-produce the documents and label them merely CONFIDENTIAL, as the Court had directed.  See Kaufman Ex. G.

Defendants did not produce any other documents on January 28.  Rather, Defendants refrained from producing the legible computerized documents or any other documents until February 4.  See Kaufman Ex. F at 2 ("when we appeared before Judge Keenan, I anticipated providing discovery by this Friday [February 4].  As Microsoft had to get involved in creating a download…")

Defendants re-confirmed that they had received a copy of the transcript from the January 24th conference, because on February 4, 2011, they produced some of the documents required by the January 24th ruling, such as sales detail reports, identification of previously produced documents, and gross inventory reports.   However, despite the Court's ruling, and defendants' possession of the transcript, the February 4th production did not include the copyright photographs. See Kaufman ¶¶ 29-30.

By letter dated February 4, 2011, Samad warned defendants that they could be held in contempt of the January 24th ruling for failing to include the copyright photographs among the February 4th production. See Kaufman Ex. H.  By emails dated February 4 (at 5:59 p.m. and again at 7:47 p.m.), defendants without explanation responded that they were not in contempt.  By emails dated February 5, 2011, Samad asked whether defendants had produced or intended to

relevant rug, and had also redacted information showing whether the invoice was for a sale or consignment.

produce the copyright photographs.  <u>See</u> Kaufman Ex. I.  In those emails, Samad also asked (despite defendants' indicating on January 28th that they would only produce what was required by the transcript, and despite their producing on February 4th documents from other categories addressed in the January 24th ruling) whether defendants had received a copy of the transcript. <u>Id.</u> Defendants did not respond.  By email dated February 7, 2011, Samad sent defendants a copy of the January 24th transcript.  <u>See</u> Kaufman Ex. J.

By letter dated February 7, 2011, defendants wrote to Judge Fox requesting purported "clarification" about whether the Court intended to require defendants to produce all of the copyright registration photographs, or only those "relevant" (in the defendants' estimation) to the designs at issue in this lawsuit.  Samad responded by letter dated February 7, 2011.  By endorsed memorandum dated February 10, 2011, Judge Fox responded as follows:

> As directed on 1/24/2011, the defendants must produce to the plaintiff, expeditiously, the 300 photographs that are part of the defendants' rug design copyright registrations. The defendants shall also produce to the plaintiff, expeditiously, any other photographs in their possession, custody and control related to the rug designs pertinent to this action.

Kaufman Ex. B.  By emails dated February 11, 2011, Samad reminded defendants that the Court had directed them to produce the copyright photographs "expeditiously."  <u>See</u> Kaufman Ex. K. Defendants responded by letter dated February 11, 2011, stating that they were "presently considering filing an appeal of the February 10, 201 endorsed letter."  <u>See</u> Kaufman Ex. L.

By email and letter dated February 17, 2011, defendants purported to respond to the discovery deficiencies set forth in Samad's letter dated February 9, 2011, and wrote that "the documents will be sent in the next day or so."  Samad responded by email dated February 17, 2011, requesting whether the referenced "documents" would include the copyright photographs. <u>See</u> Kaufman Ex. M.

Samad also sent defendants a letter dated February 17, 2011, reminding defendants of their obligations under both the January 24th ruling and February 10th endorsed memorandum. See Kaufman Ex. N.  Samad acknowledged that defendants reportedly intended to "appeal" the February 10th order, but also noted that the defendants' time under FRCP Rule 72(a) to file any objection to production of the copyright photographs expired after 14 days from the January 24th telephone conference – that is, on February 7, 2011.  Thus, Samad explained, any "appeal" thereafter would be frivolous and subject to sanctions under Rule 11.   Samad continued that defendants were not at liberty to use their letter dated February 7, 2011 to Judge Fox unilaterally to extend the time to object by purporting to seek "clarification", and then treat the Judge's response as a new order that somehow renewed defendants' time to object.

Defendants responded to Samad's request by letter dated February 17, 2011, and indicated that the January 24th ruling was not an "Order":

> The January 24, 2011 conference did not contain any orders read into the record and no written order was served on Defendants. As such, no order issued from which Defendants could object. Please refer to the court docket which indicates no order was issued from the January 24, 2011 discovery conference. Defendants received a final order from Judge Fox in our endorsed letter.
>
> Although you state in your letter that the February 10, 2011 order merely "reiterated the January 24th directive" no clear directive was given on January 24th, and moreover, a directive from a magistrate judge is not appealable.

Kaufman Ex. O.   Defendants continued that a magistrate judge's directive is not "appealable." As best understood, any bona fide order would have no effect unless and until defendants were "served" such ruling.  Further, defendants wrote that "there are not over 300 photographs", and invited Samad to obtain the "publicly available" deposit copies.[2]

---

[2]  None of the deposit copies are available on line.  Kaufman ¶ 45. In any event, in connection with directing that Samad produce copies of all of Samad's copyright registrations, this Court has already rejected the notion that whether documents might be "publicly available" does not

As set forth above, and as certified in the accompanying declaration, Samad has in good faith conferred or attempted to confer with defendants in an effort to obtain the requested relief without court action.  Kaufman ¶ 48.

## II.   DEFENDANTS ARE IN CONTEMPT OF THE COURT'S ORDERS

"A district court has the inherent power to hold a party in civil contempt upon clear and convincing proof of noncompliance with a court order." N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d 854, 857 (2d Cir. 1984). The focus must be on conduct, and not on the order itself, for "a contempt proceeding does not open to reconsideration the legal or factual basis" of the violated order. See Maggio v. Zeitz, 333 U.S. 56, 69, 68 S. Ct. 401, 408 (1948).

This court has inherent power to enforce the January 24th and February 10th orders through its contempt power. See Holland v. Dep't of Corrections, 246 F.3d 267, 270 (3d Cir. 2001), citing Spallone v. United States, 493 U.S. 265, 276, 110 S. Ct. 625, 632 (1990) (courts have inherent power to enforce compliance with their consent decrees).

By thwarting the January 24th and February 10th orders, defendants are in civil contempt.  The movant establishes civil contempt upon proving as follows:  (1) the order which the contemnor violated was clear and unambiguous, (2) proof of non-compliance is clear and convincing and (3) the contemnor has not diligently attempted to comply in a reasonable manner. Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir. 2003), citing King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). All three conditions for a finding of contempt are satisfied here.

---

preclude their production under the Federal Rules.  Moreover, the cost of obtaining such documents, as noted in Samad's letter to Judge Fox dated February 7, 2011, is prohibitive, as each photograph (even without a fee for "expedited" service) would cost approximately $120.00 to be retrieved from the Copyright Office – that is, more than $36,000.  In contrast, defendants already have copies of the photographs that they filed with their own copyright registrations.  See Kaufman ¶ 47.

A. **The Orders Are Clear and Unambiguous**

During the January 24th court conference, Judge Fox directed defendants to produce all of their copyright registration photographs.  Through the February 10th endorsed memorandum, the Court reiterated that defendants should produce such documents, but now "expeditiously." Such orders are specific and definite and clearly delineate the required conduct. See, e.g., In re Baldwin-United Corp., 770 F.2d 328, 339 (2d Cir. 1985).  As such, with respect to its violated provisions, the ruling leaves "no uncertainty in the minds of those to whom it is addressed." See King, 65 F.3d 1051, 1058 (2d Cir. 1995).

The January 24th ruling required defendants to "produce whatever photographs they have generally, and specifically, the photographs that are attached to the registrations." Kaufman Ex. A at 3:14-15, 4:5-14.   Judge Fox did not, as defendants suggested in their letter dated February 7, 2011 to the Court, demand production of photographs from copyright registrations which had already been produced:

> Let me turn to one of the registrations that was disclosed, JB7, which was disclosed after there was a certification that the defendants had made a complete disclosure or production of materials to the plaintiff.

Kaufman Ex. A at 4:20-23.  Rather, the Court determined that defendants simply could not be trusted to produce documents based on their own determination of "relevance".   Indeed the production of the JB7 demonstrated defendants' tendency to look for documents only after Samad's specific demands to correct deficiencies and, disturbingly, after defendants had certified their complete document production.

The February 10th endorsed memorandum confirmed that the January 24th ruling was also clear.  The Court again directed production of all copyright registration photographs, "expeditiously." This second order is unambiguous.  Defendants could readily refer to the

dictionary and confirm that "expeditious" means "characterized by promptness; quick: an expeditious answer to an inquiry."[3]  Notably, the Court initially directed, without defendants' objection, that defendants produce all non-computer documents that were the subject of the January 24th conference by Friday, January 28th.  Thus, "expeditiously" meant within a few days, and probably less than the four days the Court initially gave for defendants' compliance with the January 24th ruling.

**B.  Defendants' Proof of Non-Compliance is Clear and Convincing**

Defendants' proof of non-compliance is clear and convincing. Despite numerous written warnings that their conduct is in flagrant disregard of Judge Fox's clear directive, defendants expressly refused to produce the copyright registration photographs.

**1.  Defendants' Acts Violated the Court's Order of January 24**

Despite the order of Judge Fox issued during the telephone conference on January 24, defendants have inexplicably refused to produce any photographs, including the copyright registration photographs, for more than 14 days after the conference.  Finally, by letter dated February 7, 2010 – ironically, the last day by which defendants could have objected to Judge Fox's order pursuant to FRCP Rule 72(a) – defendants requested "clarification" from Judge Fox as to whether he really meant to order them to produce any photographs other than those that defendants believed were relevant to the rugs at issue in this case.

Although defendants wrote to Samad to claim that they the Magistrate Judge's rulings are not "orders" unless and until defendants were "served" with a transcript of such

---

[3] http://dictionary.reference.com/browse/expeditiously.  See, e.g., Bianco v. Bianco, 36 A.D.3d 490 (1st Dept. 2007) (it is well settled law that "words and phrases used in an agreement must be given their plain meaning, and it is common practice for courts to refer to the dictionary in determining plain meaning.")

proceedings, we are not aware of any basis in law for such a cavalier approach.  Moreover, defendants were clearly aware of Judge Fox's directives because they possessed a copy the transcript of the status conference by no later than January 28, 2011.  <u>See</u> Kaufman Ex. __ ("I will follow the transcript and will only respond to the items in the transcript…. The transcript speaks for itself.")  Their possession of the transcript is also shown by their production of some documents in partial compliance with other directives set forth in such transcript.  <u>See</u> Kaufman Ex. H.  [February 4, 2011 letter].  Even if defendants had not received the transcript, they attended the status conference and they are bound by the judge's rulings from the bench.  Thus, their non-compliance with the January 24th ruling is inexcusable.

### 2.  <u>Defendants' Acts Violated the Court's Order of February 10</u>

The February 10 endorsed memorandum required compliance with the January 24th ruling "expeditiously." Now, eight days later (as of the date of this motion), defendants have failed to produce the photographs.  They not only have avoided responding to the February 10th directive – which they at least admit is an "order" -- but have stated that they will not do so, based solely upon their self-serving, novel and erroneous interpretation of the Federal Rules. Notably, despite defendants' reported intent to "appeal" the February 10th order, they have not done so.

One can expect that defendants will now file an objection to the February 10th order "expeditiously".  However, as set forth in Samad's February 17th letter, they have been warned that any such appeal would be frivolous and subject to Rule 11 sanctions.

**C.   Defendants Have Not Diligently Attempted to Comply in a Reasonable Manner**

Defendants' failure to produce the copyright photographs is the ***second violation*** of the Court's January 24th ruling.  As required during the telephone conference, defendants had re-produced a 43-page sales invoice, now mostly without redactions.  However, defendants had labeled the less redacted document "ATTORNEYS' EYES ONLY", despite the Court's express ruling that such invoice be labeled "CONFIDENTIAL."  <u>See</u> Kaufman Ex. A at 27:6-29:4.  Once Samad discovered defendants' first violation of the January 24th ruling, Samad immediately brought this issue to their attention by email dated February 2, 2011.  Kaufman Ex. F.  Only thereafter, on February 2, 2011, did defendants agree to re-designate such documents in compliance with the Court's order.  Kaufman Ex. G.

Notably, defendants on that occasion did not argue that the January 24th transcript was not in their possession.  Further, unlike their present refusal produce to the copyright registration photographs, defendants did not at that time argue that the portion of the ruling that addressed the designation of such documents was somehow not an "order," or that their compliance therewith was merely optional.  Nowhere in correspondence regarding other matters that the Court directed during the January 24th conference did defendants allege, as they allege in their letter to Samad dated February 17, 2011, that the rulings at such conference did not constitute an "order" by dint of issuing such ruling in writing and stamping it "So Ordered."

Because Samad has demonstrated proof of defendants' noncompliance by clear and convincing evidence, the burden shifts to defendants to explain that noncompliance.  <u>In re MarketXT Holdings Corp</u>., 336 B.R. 39, 52 (S.D.N.Y. 2006) citing <u>Sigety v. Abrams,</u> 632 F.2d 969, 974 (2d Cir. 1980)<u>.</u> It is not necessary for Samad to prove that defendants intentionally

violated the January 24th and February 10th orders. In re MarketXT, 336 B.R. 39, 54. (S.D.N.Y. Bankr. 2006).

## III.   THIS COURT SHOULD IMPOSE SANCTIONS AFFORDING APPROPRIATE RELIEF FOR THE DAMAGE CAUSED BY DEFENDANTS' CONTEMPT

District courts have broad discretion to fashion a contempt sanction to achieve full remedial relief. Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) citing United States v. United Mine Workers of Am., 330 U.S. 258, 303-04, 67 S. Ct. 677, 91 L. Ed. 884 (1947).  A civil contempt sanction is "imposed to compel obedience to a lawful court order or to provide compensation to a complaining party." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989), cert. denied, 495 U.S. 947, 110 S. Ct. 2206 (1990). The sanction may "serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance."  Id. See also A. V. by Versace, Inc. v. Gianni Versace, S.p.A.,, 87 F. Supp. 2d 281, 289 (S.D.N.Y. 2000), citing United Mine Workers.

The moving party who establishes that the unavailable evidence is relevant to its claims or defenses can obtain an adverse inference instruction. Gutman v. Klein, No. 03 CV 1570(BMC)(RML) 2008 WL 4682208, *11 (E.D.N.Y. 2008).  "Repeated failure of a party ordered to produce documents will also support ordering as a sanction that a fact, the ascertainment of which may be dependent upon the requested discovery, be deemed established for purposes of trial."  Jones v. J.C. Penney's Dept. Stores, Inc., 228 F.R.D. 190, 196 (W.D.N.Y. 2005), citing Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 594, 599 (W.D.N.Y. 1996) (in copyright infringement case, imposing adverse inference that defendants had access to plaintiff's work based on repeated, willful misconduct in discovery).

The relief Samad seeks, together with the way in which Defendants should purge its

contempt, serves these purposes.

### A. The Court Should Deem That the Copyright Registration Photographs Include Designs That Are Substantially Similar to the 25 Samad Designs At Issue

Defendants' refusal to produce the copyright registration photographs indicates that they

are attempting to hide documents that are likely to be useful to Samad's prosecution of this case.

The Court has already found that defendants' search for documents is "suspect":

> THE COURT:   Ms. Zibas, my concern is, and I expressed this back in
> November, that the methodology used to search for and obtain data
> responsive to the plaintiff's discovery demands was suspect.  And it is not
> now even clear to me what methodology was employed by the defendants to
> respond fully to the plaintiff's discovery demands.

Kaufman Ex. A at 13:24-14:5.  Even when defendants have produced documents, their

redactions have been problematic:

> So the track record of the defendant's gives me pause because if the
> defendant's own witness can't make heads or tails out of a document
> provided by the defendants because more than the information that the
> defendants were allowed to excise was excised, and the plaintiff has
> uncovered at least one instance where relevant material was excised and
> should have been made available to the plaintiff, the track record is not good
> for relying on the defendants to analyze and excise material that the
> defendants believe is not relevant and therefore need not be disclosed.

Kaufman Ex. A at 26:18-27:4.

Defendants have resisted providing photographs throughout discovery, insisting that they

do not have any in their care custody or control.[4]  Samad identified their copyright registrations

---

[4]As set forth in Samad's letter to the Court dated February 7, 2011, defendants attempted to
demonstrate that they produced all photographs in their possession by referring to two sets of
photographs taken of rugs that *Samad* selected during warehouse inspections.  Defendants also
produced photographs of a handful of rugs located at the beginning of the case – after only "a
couple of hours" of David Lew's search -- and the eight designs depicted on Bokara's website.
Other than such documents, defendants have not produced (and did not look for) any rugs or any
photographs of rugs that are specified in the Third Amended Complaint.  All other photos are of

as a source of photographs, and the Court has agreed that all such photographs should be produced.  Such production was a way for defendants to improve their "track record", and they declined to do so. Defendants have not denied the existence of such photographs. Rather, they have simply refused to produce them.

As set forth above,  photographs filed with defendants' copyright registrations could be essential to Samad's case, as they could reveal designs that Samad cannot locate, that defendants have asserted that they cannot find, but that are substantially similar to Samad's designs.  Thus, the failure to produce the copyright deposit copies is prejudicial to plaintiff.

Thus, the requested relief, pursuant to Rule 37(b)(2)(a)(i), is appropriate.  Defendants' failure to produce the copyright registration photographs should be deemed a failure to produce photographs of designs that are substantially similar to the 25 designs of Samad as alleged in their Third Amended Complaint.  In this way, the photographs that an observer might assume that defendants are hiding could be deemed to have been found.

## B. **Alternatively, Defendants Should Be Sanctioned in the Amount of $2,000 per Day of Violation of the January 24th Ruling**

Samad submits that Defendants should produce the copyright registration photographs "expeditiously" and be sanctioned $2,000 for every day that defendants continue to violate the January 24th ruling.  Such sanctions should start accruing after January 28, 2011, the date that the Judge Fox had directed production of all documents other than those that required computer consultation, until the photographs' production is complete.  See Kaufman Ex. A at 65:3-10.

Payment of the sanction to Samad is appropriate because "any award resulting from ... a [civil contempt] proceeding should be 'for the benefit of the complainant.'" Manhattan Indus.,

---

rugs that *Samad* located, after a total of only 9 to 12 hours of searching Bokara's warehouses.

Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989), *cert. denied,* 494 U.S. 1029, 110 S. Ct. 1477 (1990). The compensatory award to the complainant of sanction monies "is not always dependent on a demonstration of 'actual pecuniary loss.'" Id.

"When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." Terry, 886 F.2d at 1353; In re MarketXT, 336 B.R. 39, 58.

The figure of $2,000 per day of violation suggested by Samad is intended to have a coercive effect on defendants. Samad's principal goal, on this application and in this action, has been to protect its intellectual property from the immediate and irreparable harm caused to it by defendants' persistent and unauthorized importation, promotion, advertising and sale of rugs bearing Samad's copyrighted designs. Defendants' progressive failure to comply with discovery, including discovery orders, is now palpable.  The imposition of a rigorous financial sanction against Defendants is likely to succeed where the orders of January 24th and February 10th have not. By continuing their misconduct in the face of the Court's directives, defendants have demonstrated that they are likely to produce the photographs only where they will bear serious commercial consequences. The daily sanction's very size increases "the probable effectiveness of the sanction in bringing about compliance." Id.

    C. **The Sanction Should Include Samad's Attorneys' Fees and Costs**

A party that is successful in proving contempt is entitled to attorneys' fees and costs associated with investigating the violation as well as preparing for and conducting contempt proceedings, particularly where the nature of the contempt is willful. See Canterbury Belts Ltd.

v. Lane Walker Rudkin, Ltd., 869 F.2d 34, 39 (2d Cir. 1989); N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d 854, 857-58 (2d Cir. 1984).

Samad submits that defendants' failure to comply with the January 24th and February 10th orders is willful in that it is a result of its "callous indifference", of the kind observed in N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d at 858.  However, Samad submits that while courts often focus on willfulness in determining whether attorney's fees should be awarded, it is not necessarily a prerequisite to an award of fees and costs. Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). Courts have awarded attorneys' fees and costs where the contemnor has failed to take reasonable steps to ensure compliance. Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1536 (11th Cir. 1986). Any efforts on the part of defendants to comply with the January 24th and February 10th orders have clearly been inadequate, and, in Samad's submission, their  actions have, at the very least, demonstrated "no small indifference to the command of the court" of the kind observed in Sizzler Family Steak Houses. Id.

In accordance with established practice, therefore, Samad requests that Defendants be sanctioned in an amount equal to Samad's costs associated with defendants' violation of the Court's January 24th and February 10th orders, including preparing for and prosecuting this motion.

### CONCLUSION

Based on the foregoing, plaintiff Samad Brothers, Inc. respectfully requests that the Court grant Samad's Motion for Sanctions and Contempt and award the appropriate relief and sanctions as follows:

1.  Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), directing that it be taken as established that the photographs from defendants' copyright registrations include designs that are

substantially similar to the 25 designs which Samad alleges that defendants have infringed; or

2. In the alternative, requiring defendants to produce the copyright registration photographs "expeditiously" and, pursuant to Fed. R. Civ. P. Rule 37(b)(2)(A)(vii) Rule 70(e), holding defendants in contempt and granting sanctions in the amount of $2,000 for each day from January 28, 2011 until defendants produce such photographs;

3. Awarding Samad's costs and attorneys' fees occasioned by this application to enforce the January 24th and February 10th orders; and

4. Such other relief as the Court deems just and appropriate.

Dated:     New York, New York
           February 19, 2011                    Respectfully submitted,

                                                KAUFMAN & KAHN, LLP


                                                /Mark S. Kaufman/_____
                                                Mark S. Kaufman
                                                   (Email: Kaufman@kaufmankahn.com)
                                                Attorneys for Plaintiff Samad Brothers, Inc.
                                                747 Third Avenue, 32nd Floor
                                                New York, NY  10017
                                                Tel.: (212) 293-5556