UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMAD BROTHERS, INC.,

                Plaintiff,

v.

BOKARA RUG CO. INC., JAN SOLEIMANI, and GABRIEL VAKNIN,

                Defendants.

09-cv-5843 (JFK)(KNF)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE DEPOSITION TESTIMONY AND ERRATA SHEET TO THE DEPOSITION OF VIKRAM KAPOOR

---

### ORAL ARGUMENT REQUESTED

Jura C. Zibas, Esq.
Scott M. Smedresman, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
Attorneys for Defendants
*Bokara Rug Co. Inc., Jan Soleimani
and Gabriel Vaknin*

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION..................................................................................1

II. PRELIMINARY STATEMENT..............................................................1

III. FACTUAL AND PROCEDURAL BACKGROUND..............................3

IV. ARGUMENT..........................................................................................7

    1. Samad's Litigation Misconduct Warrants
Preclusion of the Kapoor Testimony.............................................7

        A. Standard for Misconduct and Preclusion...............................8

        B. The Inappropriate Acts by Samad's Counsel Render the
Kapoor Deposition Tainted; The Court Should Preclude it,
as it was Obtained Through Misconduct and is More
Prejudicial than Probative.....................................................9

    2. The errata sheet to the Kapoor deposition
Should be Barred as it Violates Federal Rules
of Evidence 902(3)......................................................................13

V. CONCLUSION......................................................................................15

# TABLE OF AUTHORITIES

**Cases**                              **PAGE**

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991)……………………………………………………………………..8

*City of New York v. Coastal Oil N.Y., Inc.,*
    2000 U.S. Dist. LEXIS 746 (S.D.N.Y. 2000)……………………………………….9

*Corley v. Rosewood Care Ctr.,*
    142 F.3d 1041 (7th Cir. 1998)……………………………………………………...8

*Garvais v. Reliant Inventory Solutions Inc.,*
    2010 U.S. Dist. LEXIS 120413 (S.D. Ohio Nov. 15, 2010)……………… 8, 9, 10, 12

*John McShain, Inc. v Cessna Aircraft Co.,*
    563 F.2d 632 (3d. Cir. 1977)…………………………………………………...9, 13

*Okoumou v. Safe Horizon,*
    2004 U.S. Dist. LEXIS 19120 (S.D.N.Y. 2004)……………………………………9

*Old Chief v. United States,*
    519 U.S. 172 (1997)……………………………………………………………….. 9

*Ramsey v. Broy,*
    2010 U.S. Dist. LEXIS 27768 (S.D. Ill. Mar. 24, 2010)……………………... 8, 9, 10, 12

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980)…………………………….. 8

*Samad Bros. v. Bokara Rug Co.,*
    2010 U.S. Dist. LEXIS 132446 (S.D.N.Y. Dec. 13, 2010)…………………………... 1

*Ty Inc. v. Softbelly's, Inc.,*
    517 F.3d 494 (7th Cir. 2008)……………………………………………8, 9, 10, 12

*United States v. Adams,*
    375 F.3d 108 (1st Cir. 2004)……………………………………………………..9, 12

*United States v. Robinson,*
    544 F2d 611 (2d Cir. 1976)………………………………………………………... 9

*Pace Shipping Servs. Networks SA,*
    2003 U.S. Dist. LEXIS 5234 (E.D. La. 2003)……………………………………14

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,*
    509 F. Supp. 2d 334 (S.D.N.Y. 2007)……………………………………………14

iii4362182.4

| **Rules** | **PAGE** |
|---|---|
| Fed. R. Evid. 403………………..………………………………………………………….9 |
| Fed. R. Evid. 902…………………………………………………………………………13-14 |
| New York Rules of Professional Conduct, Rule 4.3…………………………………………10 |

iv4362182.4

# I. INTRODUCTION

Defendants Bokara Rug Co., Inc., Jan Soleimani and Gabriel Vaknin (collectively "Bokara" or "Defendants"), by their attorneys, submit this memorandum of law in support of their motion *in limine* to preclude Samad Brothers, Inc., ("Samad" or "Plaintiff") from relying on or using the deposition testimony of Vikram Kapoor ("Kapoor") and the errata sheet thereto. In the alternative, Bokara requests that the Court order that an additional deposition of Kapoor take place, and that if Kapoor does not appear for such deposition, order the preclusion of the transcript from the first deposition.

# II. PRELIMINARY STATEMENT

This case involves allegations by Samad that rugs imported from India and sold by Bokara infringed upon 25 of Samad's copyrighted designs. Most of these claims arise out of Bokara's purchase of rugs from Vikram Kapoor and his "affiliates," non-party rug manufacturers and dealers in Jaipur, India. Samad claims to own the copyrights in these designs. It claims that Kapoor's sale of these rugs to Bokara was unauthorized, and thus claims that Bokara has committed copyright infringement through dealing in rugs bearing these designs.

Samad, however, does not claim to have authored the designs appearing on these rugs. Instead, Samad's claim to title in these copyrights stems from its claim that Kapoor and his companies assigned all the rights in 23 of these designs to Samad via ancient "oral understandings" between Kapoor and Samad. As is clear from these facts, and as Your Honor has previously determined, Kapoor is a "significant witness," insofar as he is has important information relative to Samad's claims to title in the copyrights alleged to have been infringed. *See Samad Bros. v. Bokara Rug Co.*, 2010 U.S. Dist. LEXIS 132446, *10 (S.D.N.Y. Dec. 13, 2010).

Despite Samad's effective assertion that Kapoor has directly infringed upon rights owned by Samad through sales to Bokara, and Kapoor's admission of liability for willful infringement, Kapoor has not been brought into this action by Samad. Instead, Kapoor has apparently worked closely with Samad and its counsel for months, "help[ing] prosecute this case against Bokara." Declaration of Jura C. Zibas ("Zibas Decl."), ¶6, Ex. 5 at SAM3621, and many others.

Throughout this time, Mark Kaufman ("Kaufman"), counsel to Samad, and Kapoor appear to have maintained an inappropriately close relationship. Kaufman, who does not represent Kapoor, has prepared responses to Bokara's document subpoenas served on Kapoor. He has guided Kapoor in determining what documents to produce. Kaufman even prepared Kapoor for his deposition, which took place on November 23, 2010, by providing him with the deposition transcripts of prior deponents, identifying topics for him to focus on in preparing for his deposition, and even instructing him how to answer if posed with specific questions. In addition, Samad's counsel appears to have assisted Kapoor in presenting misleading discovery.

As can be seen from this relationship, Samad's counsel has exerted extensive and potentially improper influence over Kapoor, guiding this central non-party through this litigation for the benefit of Samad. This conduct borders on the provision of legal services to a non-client, which is not permitted under New York's Rules of Professional Conduct. Further, this is particularly troubling given that, if Mr. Kapoor's testimony is to be believed, he willfully violated Samad's copyrights and purposefully breached agreements he had with Samad, making Kapoor and Samad directly adverse. This non-waivable conflict, combined with the appearance of Kaufman's provision of quasi-legal services to Kapoor, creates the appearance of impropriety, and borders on the provision of value by Samad to Kapoor in exchange for testimony that will "help [prosecute] this case against Bokara." *Id.*

2

The scope of this relationship was not fully disclosed to Bokara until after Mr. Kapoor's testimony, when Your Honor ruled that communications between Kaufman and this non-party witness were not privileged or protected. As a result, Bokara did not have the opportunity to fully probe this topic during Kapoor's deposition.

The sum of this conduct indicates that Kapoor's testimony is inexorably tainted. Based on this litigation misconduct and its unfair prejudicial effect, the Kapoor testimony should be stricken. Alternatively, this Court should Order Kapoor to return to the United States for an additional deposition by a date certain, and hold that his prior testimony should be precluded if he does not so appear.

In addition, the errata sheet submitted after Kapoor's deposition was improperly notarized and does not meet the self authentication requirements of Federal Rules of Evidence. Thus, its use should be barred.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

This action relates to allegations by Samad that Bokara has infringed upon 25 rug designs allegedly owned by Samad. Third Amended Complaint, DE 33. Kapoor is the part owner of S.N. Kapoor Exports ("S.N. Kapoor"), a company that manufactures and exports rugs to wholesalers and retailers in various countries. Zibas Decl., Ex. 1, Deposition of Vikram Kapoor ("VK Dep."), 19:3, 24:8, 29:20. Kapoor claims to have created 23 of the 25 designs at issue in this case. *Id.* at Ex. 1, VK Dep. 24:3-8. According to Samad, S.N. Kapoor assigned to Samad the rights in 23 of the designs at issue. *See* DE 33, ¶17. Samad asserts that certain embodiments of these designs were sold to Bokara by, among others, rug manufacturers located in Jaipur called P.P. International and Baswal International. *Id.* at ¶¶22, 53.

3

34362182.4

*-Discovery Attempts by Bokara*

On April 5, 2010, through acceptance by counsel to Samad, counsel to Bokara served Kapoor with a subpoena to produce documents. *Id.* at ¶4, Ex. 3. This subpoena sought a variety of documents related to the action, including Kapoor's documents relating to authorship of the works as well as any assignment of rights in the works, among other relevant requests. *Id.*. On or around April 19, 2010, Kapoor responded by providing a document through Samad's counsel, objecting to the balance of Bokara's demands in a lengthy legal objection that noted it was "Prepared by Counsel: Kaufman & Kahn LLP." *Id.* at ¶5, Ex. 4.

*-Coordination between Kapoor and Counsel to Samad*

As is seen through documents produced after Your Honor ruled that the attorney work product doctrine does not apply to communications between Samad's counsel and Kapoor, Samad's counsel assisted Kapoor far more than merely preparing objections.

Mr. Kapoor is a non-party witness in this case who claimed to be unrepresented by counsel through the time of his deposition. *Id.* at Ex. 1, VK Dep., 16:16, 138:25; 198:3. Nevertheless, Kapoor has been closely working with Samad and its counsel. Evidence indicates that Samad's counsel screened subpoenas requesting documents from Kapoor, and coached Kapoor in detail on how to respond at his deposition in a manner that would benefit Samad.

On April 5, 2010, Kaufman corresponded with Kapoor, alerting him to an allegation by Bokara that Kapoor was associated with P.P. International. *Id.* at Ex. 5, SAM2919. In this communication, Kaufman solicited from Kapoor documents that might contradict this position, and suggested ways for Kapoor to attempt to rebut this claim. *Id.*

On April 9, 2010, Kaufman provided Kapoor with a subpoena for documents issued by Bokara. *Id.* at SAM3043-54. Although he advised Kapoor that he did not represent him,

4

44362182.4

Kaufman prepared substantive objections and responses to the subpoena on behalf of Kapoor, and assisted Kapoor in determining what documents to produce. *Id.* at SAM3055-80. This assistance continued, and on May 13, 2010, Kaufman instructed Kapoor as to which documents to collect, and suggested that Kapoor need not provide all responsive documents, but could instead produce samples. *Id.* at SAM3153-56.

On May 28, 2011, in furthering its efforts to guide Kapoor in responding to Bokara's subpoena, Kaufman indicated that Samad would provide Kapoor records relating to imports of the designs at issue, so that Kapoor could review them for accuracy. *Id.* at SAM3175-76. In this communication, Kaufman further analyzed Bokara's document, particularly those relating to all of Kapoor's documents regarding P.P. International and Baswal International. Instead of characterizing it as it was, which was a request for all such documents (Zibas Decl., Ex. 3, ¶33), Kaufman opined that "[w]hat Bokara really wants" are documents showing Kapoor's controlling relationship with these companies, stating that "their argument will be that PP and Baswal had your blessing to send rugs bearing the Designs to Bokara…" *Id.* at Ex. 5, SAM3175-76. In directing Kapoor to look for a narrow range of documents, Kaufman, stated "we need to be ready to address that argument." *Id.* In this same correspondence, Kaufman discussed with Kapoor one of Bokara's theories for the purpose of Kapoor preparing his deposition testimony. *Id.*

On June 9, 2010, counsel to Samad provided Kapoor Samad's records of claimed assignments between Kapoor and Samad, in order for Kapoor to produce them to Bokara. *Id.* at Ex. 5, SAM 3118, SAM3229-3233. In response to a request by Samad for Kapoor to produce these materials from his records, Kapoor stated "please send them to me and I will send them back," to which Samad's counsel obliged by sending the documents to Kapoor. *Id.* at SAM3229. Subsequently, on June 11, 2010, Kapoor purported to "hereby [send] you the assignments" by

5

simply returning to Samad's counsel Samad's own documents, purportedly as Kapoor's production. *Id.* at SAM3267, SAM3118.

On October 17, 2010, in preparing Kapoor for his deposition, Kaufman urged Kapoor via e-mail to "review all of the rugs at issue in this case that [S.N. Kapoor] designed (especially those that Saraswati claims to have designed), and be ready to discuss in YOUR deposition what changes you suggested for each of the rugs purportedly designed at Saraswati's facilities." *Id.* at SAM3550. Testimony on this issue would relate to the position that Kapoor authored these works, which are claimed to have been assigned to Samad, as opposed to the contradictory testimony provided by non-party Saraswati Exports, which claims to have designed the rugs.

-*Bokara's Second Document Subpoena*

On or about October 27, 2010, via service on Samad's counsel, Bokara served a second subpoena on Kapoor, asking him to produce additional documents. Zibas Decl., ¶7, Ex. 6. On November 11, 2010, Samad moved to quash this subpoena, based on the argument that it sought materials protected by the work-product doctrine, and was otherwise unduly burdensome to Kapoor. DE 60-63. Bokara opposed this motion, arguing that Samad's counsel had no standing to object to the subpoena on Kapoor's behalf. DE 66-67. Ultimately, Mag. Judge Fox ruled that Samad's arguments were without merit and that it lacked standing to quash the subpoena. DE 77. To this day, however, Kapoor has failed to provide documents, in violation of Mag. Judge Fox's Order. Zibas Decl., ¶8.

-*Continued Coordination between Kapoor and Counsel to Samad*

On November 12, 2010, ten days prior to Kapoor's deposition, Kaufman sent him the transcripts from the depositions of Samad's principal, Malcolm Samad, and of Mahesh Choudhary, a principal of Saraswati Exports. *Id.* at Ex. 5, SAM3621 Kaufman instructed Kapoor

6

64362182.4

to "review them in their entirety." *Id.* He also stated "it is much more important that you are well informed about the questions they asked Malcolm because they will ask YOU similar questions." *Id.* Such questions, of course, would relate to the suspect "oral assignments" of the copyrights at issue in this case, among other issues. On November 23, 2010, Kaufman again corresponded with Kapoor and informed him of questions that Kaufman planned to ask Kapoor at the deposition. *Id.* at Ex. 5, SAM3636. Kapoor met with Kaufman for four hours on November 22, 2010 to prepare for his deposition, and reviewed documents that were produced, including invoices, letters and emails, and further discussed the case with Kaufman. *Id.* at Ex. 1, VK Dep. 16:22, 17:5, 17:8-16.

*-Conduct at the Kapoor Deposition*

When the time came for Kapoor's deposition, he was evasive and unprepared to answer a host of questions relating to materials he should have produced. Indeed, Kapoor repeatedly made statements to the effect that "he would have to check his records" to provide an answer. There are in excess of 50 instances where Kapoor was unprepared to provide testimony, and referred to needing to check his records. *Id.*, generally. The result was an incomplete deposition, significantly hampered by Kapoor's lack of preparation and prior production of requested materials. Additionally, as the correspondence between Kapoor and Kaufman had not been provided, Bokara was not able to ask full questions on this topic. Zibas Decl., ¶6.

### IV. ARGUMENT

**1. Samad's Litigation Misconduct Warrants Preclusion of the Kapoor Testimony.**

The extensive sustained contact between Samad's counsel and Kapoor – a central witness to this case – was improper, and threatens the integrity of this proceeding. Counsel's extensive coaching was either an invitation to fabricate testimony, or was done with a reckless disregard

7

74362182.4

for the veracity of the witness's testimony. Additionally, the quasi-legal services being provided by Kaufman to Kapoor – an individual that was not counsel's client and against whom Samad had a potential cause of action for willful copyright infringement – may have created a circumstance where Kapoor felt beholden to Samad and its attorneys, such that suggestions by counsel may have been interpreted as instructions. This conclusion is supported by Kapoor and Samad's apparent attempts to wrongfully conform discovery production. As a result, of this apparent misconduct, the Kapoor deposition is inexorably tainted. As the unfair prejudice it would cause outweighs its probative value, it should be precluded pursuant to Rule 403 of the Federal Rules of Evidence ("FRE") and this Court's inherent power.

### A.  *Standard for Misconduct and Preclusion*

It is well established that "certain implied powers must necessarily result to the Courts of Justice from the nature of their institution." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Among these powers is the right to manage the integrity of the judicial process, and Courts are vested with the right to fashion appropriate remedies to maintain this integrity. *Id.* at 44. Remedies available to Courts for litigation misconduct range from outright dismissal to an assessment of attorney's fees. *See Id.* at 44; *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1058 (7th Cir. 1998); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980).

Improper contact with non party witnesses is among the improprieties that a court may consider as an abuse of judicial process and/or litigation misconduct. *See Garvais v. Reliant Inventory Solutions Inc.*, 2010 U.S. Dist. LEXIS 120413 (S.D. Ohio Nov. 15, 2010); *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir. 2008); *Ramsey v. Broy*, 2010 U.S. Dist. LEXIS 27768 (S.D. Ill. Mar. 24, 2010). While it is not always improper for an attorney to contact a non-

party, it is misconduct to "attempt to interfere with, intimidate, or tamper with a potential witness." *Garvais,* 2010 U.S. Dist. LEXIS 120413 at *10 *citing Ty,* 517 F.3d at 498. Improperly influencing a witness is fraud on the court and on the opposing party, which undermines the integrity of the judicial process, and is correctable by the courts. *Id; Ramsey, 2010 U.S. Dist. LEXIS 27768* at *14. Witness coaching is a form of this misconduct. *See Okoumou v. Safe Horizon,* 2004 U.S. Dist. LEXIS 19120, *5-6 (S.D.N.Y. 2004); *City of New York v. Coastal Oil N.Y., Inc.,* 2000 U.S. Dist. LEXIS 746, *6 (S.D.N.Y. 2000).

In addition, under FRE 403, courts are vested with the power to preclude evidence that, although admissible, is more prejudicial than probative. *See* Fed. R. Evid. 403. Designed to protect the fairness of the judicial process, Rule 403 may be used to preclude evidence that, although relevant, would cause more harm than good. *See United States v. Robinson*, 544 F2d 611 (2d Cir. 1976); *Old Chief v. United States*, 519 U.S. 172 (1997); *United States v. Adams*, 375 F.3d 108 (1st Cir. 2004) (evidence must be excluded where its relevance is substantially outweighed by its prejudicial effect). This balancing may include the consideration of public policy. *See John McShain, Inc. v Cessna Aircraft Co.*, 563 F.2d 632 (3d. Cir. 1977).

### B. The Inappropriate Acts by Samad's Counsel Render the Kapoor Deposition Tainted; The Court Should Preclude it, as it was Obtained Through Misconduct and is More Prejudicial than Probative

Throughout correspondence with Kapoor, Samad's counsel repeatedly stated that he was "not [Kapoor's] attorney." Nevertheless, counsel provided extensive legal-like services to Kapoor. This conduct formed an inappropriate relationship with this key non-party witness, such that it may have resulted in undue influence being exerted. As such, the testimony is tainted, and should be barred under FRE 403 and this court's inherent power. This is particularly the case as

Bokara did not learn of the scope of this improper association until after Kapoor's deposition, thus depriving Bokara of the opportunity to fully examine Kapoor on this issue.

Rule 4.3 of the New York Rules of Professional Conduct ("NYRPC") states that an attorney should not provide legal advice to an unrepresented individual, particularly where the individual is adverse to the attorney's client. *See* NYRPC, Rule 4.3. The Rules restrict this conduct recognizing that there is a great risk that the attorney will exert undue influence over the unrepresented individual and thereby compromise the individual's interests. *See id.* at Comment 2. As noted, where contact with a non-party witness is inappropriate, it may be considered litigation misconduct subject to remedy by the Court. *See Garvais,* 2010 U.S. Dist. LEXIS 120413; *Ty,* 517 F.3d 494; *Ramsey,* 2010 U.S. Dist. LEXIS 27768.

Here, although he advised Kapoor that he did not represent him, it appears that Samad's counsel prepared potentially substantive objections to Bokara's document subpoenas on behalf of Kapoor and provided some direction as to what documents to produce and which to withhold. Zibas Decl., Ex. 5, SAM3043-80. In addition, Samad's counsel suggested that Kapoor need not provide all responsive documents, but could instead produce samples. *Id.* at SAM3153-56. Furthermore, Samad's counsel appears to have extensively prepared Kapoor for his deposition, providing him with questions in advance, explained topics Kapoor should be "ready to address," and even provided Kapoor with prior deponents' testimony prior to his deposition. *Id.* at SAM3636; SAM3175-76; SAM3621. In fact, Kapoor met with Samad's counsel for four hours the day before his deposition, reviewing documents and discussing the case. *Id.* at Ex. 1, VK Dep. 16:22, 17:5, 17:8-16.

This conduct appears to be the provision of legal-type services to Kapoor, a non-party witness that Kaufman did not represent. In fact, Kapoor and Kaufman's client – Samad – are

10

directly adverse, because if Kapoor is to be believed, he intentionally infringed Samad's copyrights and willfully breached contracts with Samad. *See id.* at VK Dep., 95:14-96:22. This may be the type of circumstance which raises a question under NYRPC 4.3, as it can create a risk of undue influence. In fact, given their direct adversity, Kapoor may have felt compelled to provide Samad with helpful testimony to stay in its good graces and avoid a copyright infringement claim being brought against him by Samad.

Nevertheless, Samad's counsel continued this conduct for many months, repeatedly providing Kapoor with assistance. In this context where Kapoor may have felt beholden to "assist" Samad and its counsel, as indicated in nearly every e-mail, statements identifying a need for Kapoor to "address that argument" and suggesting Kapoor be "ready to discuss" certain issues may be construed as an invitation to guide testimony to satisfy counsel's requests. The same is true of the provision of testimony of prior deponents, as this may have suggested to Kapoor that he should corroborate this testimony.

Further, records appear to show attempts by Kapoor and Samad's counsel to do just that – create the appearance of Kapoor corroborating Samad. Samad's counsel provided documents to Kapoor, which were then re-produced to Samad's counsel purporting to be Kapoor's own production. *See id.* at Ex. 5, SAM 3113, SAM3229-3233, SAM3267. In fact, this plan appears to have been so blatant between the parties, that at one point, in relation to copyright assignments between Kapoor and Samad, Kapoor asked Kaufman to "please send them to me and I will send them back," to which Kaufman responded by sending him the documents. *See id.* at SAM3229. Two days later, Kapoor re-sent the exact same received digital files to Kaufman, stating "I am hereby sending you the assignments." *Id.* at SAM3267, SAM3118. This conduct appears to be a calculated attempt to create the appearance that Kapoor's records match Samad's, thereby

11

buttressing Samad's case – exactly the type of conformance risk taken by Samad's counsel by providing Kapoor with prior deposition transcripts.

Given its questionable propriety, Bokara submits that this conduct may amount to an inappropriate attempt to influence the testimony of a non-party, to which the court is empowered to craft an appropriate remedy. *See Garvais,* 2010 U.S. Dist. LEXIS 120413; *Ty,* 517 F.3d at 498; *Ramsey,* 2010 U.S. Dist. LEXIS 27768. Furthermore, the discovery conduct of Kapoor and Samad's counsel only reinforces the perception that inappropriate conduct – possibly misconduct – has occurred, which pervades the Samad-Kapoor relationship.

This problem is compounded by the fact that Bokara was not provided with documents disclosing the scope of this relationship prior to Kapoor's deposition. Zibas Decl., ¶5. As a result, Bokara was not able to question Kapoor regarding the relationship's true character. In its current form, as a result of the withholding of this information, the deposition transcript does not make clear the extent to which Kapoor and Samad have cooperated throughout this action and even attempted to conform their evidence. In light of these circumstances, Bokara would be highly prejudiced by its introduction in any form.

Although Bokara concedes that some testimony provided by Kapoor pertains to relevant topics at issue in this case, it submits that the above inappropriate conduct – possibly misconduct – so taints the testimony as to render it wholly unreliable. Given that Bokara did not have the full opportunity to probe Kapoor regarding his relationship with Samad and its counsel, or the content of documents that Kapoor *still* has not produced, Bokara submits that any probative value that the transcript may have is substantially outweighed by its prejudicial effect. *See Adams,* 375 F.3d 108. This will particularly be the case if it should come to pass that Kapoor is not available to testify at the time of trial, and the deposition transcript is all that remains of his

124362182.4

testimony.[1] Under such circumstances, Bokara would never get the opportunity to fully discredit this witness, who's credibility is nonexistent given the above circumstances. Given the centrality of this witness, such an opportunity is vital. Public policy surely counsels in favor of declining to admit testimony that is so questionable without granting Bokara the opportunity to probe these issues more fully. *See John McShain*, 563 F.2d 632.

Given the Court's power to craft a remedy for litigation misconduct, and in light of the prejudicial nature of this prepared testimony, Bokara submits that its use should be precluded by the Court. In the alternative, Bokara submits that this court should order Kapoor to appear in the United States for an additional deposition, and order that if Kapoor does not so appear within sixty (60) days of such Order, the transcript from his original deposition be precluded.

### 2. The errata sheet to the Kapoor deposition Should be Barred as it Violates Federal Rules of Evidence 902(3).

As the errata sheet to the Kapoor deposition was not properly notarized, and otherwise fails to self-authenticate, its use should be prohibited.

FRE 902 governs self-authentication of documentary evidence. Rule 902(3) states:

> "Foreign public documents. A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. **A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United**

---

[1] This concern is not idle speculation. Kapoor testified that his U.S. visa expires in May of 2011, before the likely trial in this case. VK Dep., 173:12-20. Thus, it is not speculative to think that Kapoor may conveniently be unable to renew this visa, and thus be 100 miles away from the court at the time of trial.

> **States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States**. Fed. R. Evid. 902(3) (*emphasis added*).

In essence, Rule 902(3) *requires* that any document executed and notarized in a foreign country be accompanied by a final certification from a U.S. official as to the genuineness of the signature and position of the notary public. Foreign public documents that are not accompanied by a final certification may not be recognized by a United States Court. *See Pace Shipping Servs. Networks SA*, 2003 U.S. Dist. LEXIS 5234 (E.D. La. 2003); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334 (S.D.N.Y. 2007).

Mr. Kapoor is a citizen and resident of Rajastan, India. Zibas Decl., Ex. 1, VK Dep., 5:10-11. The errata sheet to Mr. Kapoor's deposition was executed in India after Mr. Kapoor's November 23, 2010 deposition. Zibas Decl., Ex. 2. The sheet bears Mr. Kapoor's signature but does not bear the date that the errata sheet was signed and does not indicate the place of signing. *Id.* There are two different notary stamps on each page: a circular notary stamp identifies the notary public as "B.L. Jain" and the second notary stamp has an unidentifiable signature made on January 19, 2011. *Id.* There is no other form of notarization or attestation accompanying the errata sheet. *Id.*

The errata sheet fails to meet the requirements of FRE 902(3). This rule requires that the errata sheet be accompanied by a final certification by a U.S. official as to the genuineness of the document and position of the notary public. *Id.* No such final accompanies the document. Absent such certification, the document is inadmissible.

As this document violates Rule 902(3), the Court should preclude Samad from relying or using it for any purpose.

14

## V. CONCLUSION

For the foregoing reasons, the Court should issue an order precluding Samad from using the deposition testimony or errata sheet to the deposition testimony of Vikram Kapoor. In the alternative, Bokara submits that this Court should Order Mr. Kapoor to appear for a supplemental examination within sixty (60) days, and that if he does not so appear within that time, that the transcript from his original deposition be precluded. Further, Bokara requests this court to issue and other and further relief that it deems appropriate.

Dated:   March 4, 2011
         New York, New York

                                    Respectfully,

                                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                                    By: _____
                                        Jura Zibas
                                        Scott Smedresman
                                        Attorneys for Defendants
                                        *Bokara Rug Co. Inc., Jan Soleimani and Gabriel Vaknin*
                                        150 East 42nd Street
                                        New York, New York 10017
                                        (212) 490-3000
                                        File No. 12741.00001

154362182.4