UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMAD BROTHERS, INC.,

               Plaintiff,

v.

BOKARA RUG CO. INC., JAN SOLEIMANI, and GABRIEL VAKNIN,

               Defendant.

Case No.: 09-cv-5843 (JFK)(KNF)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO ORDER OF MAGISTRATE JUDGE DATED FEBRUARY 10, 2011, AND IN THE ALTERNATIVE, TO FILE OBJECTION OUT OF TIME

---

Jura C. Zibas, Esq.
Scott M. Smedresman, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
Attorneys for Defendants
*Bokara Rug Co. Inc., Jan Soleimani and Gabriel Vaknin*

i

## TABELE OF CONTENTS

PAGE

I. INTRODUCTION..................................................................................................1

II. AGRUMENT........................................................................................................1

    A.    Timeliness of Bokara's Objection.................................................................1

          1.    Bokara's Objection is Timely.................................................1

          2.    Even if Untimely, Bokara's Objection Should be Considered...........2

    B.    Merits of Bokara's Objection.......................................................................3

          1.    Bokara's Arguments and Facts Are Not "New"
                or Should be Considered in Equity ..........................................3

          2.    The Materials are Not Relevant and are Unduly
                Burdensome to Produce. Bokara's Document
                Organization System Which Existed Long Before
                this Litigation is Irrelevant to the Inquiry ................................5

          3.    Samad Should Obtain the Sought Materials from
                the Copyright Office or Pay Bokara's Production Costs..................8

III. CONCLUSION.................................................................................................10

## I. INTRODUCTION

This reply memorandum of law, together with the accompanying Second Declaration of Jura C. Zibas ("Zibas Decl. II"), dated March 16, 2011, is submitted in further support of Defendants' Objection to the Order of Magistrate Judge Fox, dated February 10, 2011, pursuant to the Rule 72(a) of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. § 636.

## II. ARGUMENT

### A. Timeliness of Bokara's Objection

As Bokara's Objection was filed within 14 days of Mag. Judge Fox's clarification, it is timely. Alternatively, the Court should consider it out of time in the interests of justice.

#### 1. Bokara' Objection is Timely

Pursuant to Rule 72 (a) of the FRCP, an Objection to a magistrate judge's order must be filed within 14 days. Fed. R. Civ. P. 72(a). This timeframe is stayed where a motion to alter, reconsider, or set aside the ruling is filed, and a fresh Objection period commences when the request is decided. *See Comeau v. Rupp*, 142 F.R.D. 683, 685 (D. Kan. 1992) ("A fair reading of the federal and local rules should allow the magistrate judge to fully consider, and if requested, reconsider his decisions before a party invokes district court review under Rule 72(a)"); *Epperly v. Lehmann Co.*, 161 F.R.D. 72, 74 (S.D. Ind. 1994) ("Rule 72(a)'s ... period for filing objections to a magistrate judge's order begins to run for all parties after the magistrate judge has ruled on any pending motions to reconsider, alter, or amend an order which are directed to his discretion and were filed within [the original time to file an Objection to the original] order"). Although Samad argues that this Court should not permit a renewal of the time to object through the filing of a request for clarification, this is exactly the result compelled by the FRCP.

The Request for Clarification was filed by Bokara on February 7, 2010, within 14 days of Mag. Judge Fox's January 24, 2010 oral directive. Thus, the time to file this Objection under

FRCP 72(a) was stayed. Indeed, such time period only commenced on February 10, 2011, when Mag. Judge Fox decided Bokara's clarification request. *See Comeau*, 142 F.R.D. at 685; *Epperly*, 161 F.R.D. at 74. As it is undisputed that Bokara filed this Objection within 14 days of Mag. Judge Fox's disposition of the request for clarification, the Objection to both the clarification and the original January 24th oral directive are timely.

### 2. Even if Untimely, Bokara's Objection Should be Considered

Bokara submits that its Objection was timely filed. However, should this Court conclude that the Objection was untimely, it should be considered in the interest of justice.

Samad does not argue that this Court lacks the power to hear an untimely Objection – indeed, this Court has such a power. *See Thomas v. Arn*, 474 U.S. 140, 155 (U.S. 1985) (untimely Objection to magistrate judge's report may be considered "in the interests of justice"); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (discretion to set aside untimely Objection to report, in the interest of justice, examines "whether the magistrate judge committed plain error in ruling against the defaulting party").

Instead, Samad argues that this Court should not excuse lateness because Bokara is represented by counsel. As recounted in its Opposition to Samad's co-pending Motion for Contempt and Sanctions arising out of alleged non-compliance with Mag. Judge Fox's January 24th and February 10th rulings (Docket Entry ("DE") 109), Bokara had a good faith belief that it was in compliance with Mag. Judge Fox's directives, and sought clarification when it was clear that a difference of opinion existed. Bokara's alternative course of action would have been to file an Objection before being sure what Mag. Judge Fox had actually ordered and before being sure that Bokara had a ripe Objection. Such would not be an efficient use of the Court's time.

Moreover, as discussed herein, Mag. Judge Fox's rulings were contrary to law insofar as they require Bokara, at great cost, to produce material not within its possession that is irrelevant

to this proceeding. Even Samad concedes in its Opposition to this Objection that portions of its request – those relating to rugs made in China – "are not likely to be relevant to the case at hand." DE 120, p. 14. Thus, upholding these rulings would not be in the interest of justice, as at least a portion of Mag. Judge Fox's ruling is clearly erroneous. *See Spence*, 219 F.3d at 174 (reviewing whether plain error exists in determining whether to hear an untimely Objection).

Ultimately, as Bokara's filing was timely, and even if it was not, it should be heard in the interest of justice, this Court should hear the merits of the current Objection.

### B.     Merits of Bokara's Objection

Bokara objects to Mag. Judge Fox's ruling requiring it to produce the deposit copies associated with all 304 of Bokara's copyright registrations, as Bokara does not keep many of such materials in the ordinary course of its business and would have to obtain them from the U.S. Copyright Office in order to provide full responses. Further, these materials are irrelevant insofar as they cannot provide helpful information to Samad. Moreover, Bokara submits that if the court requires these materials to be produced, Samad should bear the financial burden or production.

#### 1.     Bokara's Arguments and Facts Are Not "New" or Should be Considered in Equity

Under FRCP 72(a), a District Court reviews the ruling of a magistrate judge on a non-dispositive issue under a "clearly erroneous" standard. Fed. R. Civ. P. 72(a); *see also Samad Bros. v. Bokara Rug Co.*, 2010 U.S. Dist. LEXIS 132446, *4 (S.D.N.Y. Dec. 13, 2010). "Pretrial discovery questions are generally considered nondispositive." *Popular Imports v. Wong's Int'l*, 166 F.R.D. 276, 277 (E.D.N.Y. 1996).

Samad argues that this Court may not consider arguments in Bokara's Objection that were not presented to Mag. Judge Fox. DE 120, p. 15. Samad's citations in support of this position, however, all relate to Objections to formal Reports and Recommendations issued by magistrate judges on dispositive issues. *See Jones-Soderman v. Mazawey*, 2010 U.S. Dist.

LEXIS 1144, *3-4 (S.D.N.Y. Jan. 6, 2010); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). These are formally briefed proceedings which generally result in clear written opinions. Under such circumstances, it is reasonable to restrict new arguments, as allowing them would "undermine the authority of the Magistrate Judge." *Gonzalez v. Garvin*, 2002 U.S. Dist. LEXIS 7069, *5 (S.D.N.Y. Apr. 19, 2002). However, even under this burdensome standard, courts envision scenarios where new arguments may be raised. *C.f. Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("a district court **generally** should not entertain new grounds for relief or additional legal arguments not presented to the magistrate") (*emphasis added*).

Samad argues that four arguments raised by Bokara are "new" and should not be considered. DE 120, p. 15-16. These include the arguments that (1) the cost of obtaining materials from the copyright office would be less burdensome than Samad suggests, (2) the rug designs at issue are irrelevant to this case, (3) some images of rug designs made in India are available only in the form of negatives, and (4) the photographs in Bokara's possession are not organized in a way that permits them to be matched with specific copyright registrations. Samad further claims the argument that the cost of production should be shifted to Samad is "new."

All of these supposedly "new" arguments and facts were provided to Mag. Judge Fox prior to this Objection, or should be considered in light of the *ad hoc* means by which this issue came before the Court, depriving Bokara of an opportunity to be fully heard.

The request for Bokara's copyright registration deposit copies was first made in Samad's Fourth Set of Discovery Requests, which Bokara denied as being irrelevant to the case and unduly burdensome. In a letter submitted to Mag. Judge Fox on November 4, 2010, Bokara argued that it need not produce these deposit copies as they were available from the Copyright Office, they were burdensome to produce, and they were irrelevant. Zibas Decl. II, Ex. 1, p. 2. On December 6, 2010, in advance of the court conference that would take place on January 24,

2010, Bokara submitted an argument to Mag. Judge Fox stating, *inter alia*, that documents being requested by Samad could not be produced as they are not in Bokara's possession due to being lost over the years during. *Id.* at Ex. 2, p. 2. This same letter further noted that much of what Samad sought was irrelevant. *Id.* After the January 24th conference, where Mag. Judge Fox had apparently directed Bokara to produce deposit materials associated with all 304 of its copyright registrations, Bokara filed a Request for Clarification, arguing that this material need not be produced because, *inter alia*, the rugs from China and Pakistan are particularly not relevant to this case, production of these materials would be costly, and that if Samad wants the materials, it should bear the financial burden associated with obtaining them. Declaration of Jura C. Zibas dated February 23, 2011, ("Zibas Decl. I"), DE 107, Ex. 7. Although perhaps not as detailed as their current treatment, all of the alleged "new" arguments and positions were raised in one form or another before Mag. Judge Fox. Moreover, these arguments were not documented to the Court in exhaustive detail due to the informal nature of the oral rulings, as opposed to the formalized circumstances cited by Samad's caselaw as denying the opportunity to present new arguments. Further, if Bokara had understood the full scope of Mag. Judge Fox's directives, it would have more fully briefed these issues as it does on this Objection.

Thus, Bokara has already presented all its arguments to Mag. Judge Fox in one form or another. Merely because the arguments were not fully briefed due to the oral nature of the rulings and hearings does not mean that Bokara should now be prejudiced from fully explaining the situation to the District Court on this Objection.

### 2. The Materials are Not Relevant and are Unduly Burdensome to Produce. Bokara's Document Organization System Which Existed Long Before this Litigation is Irrelevant to the Inquiry

The materials requested by Samad's are unlikely to lead to relevant evidence, and production would be burdensome to Bokara. Although Bokara disputes their relevance, it is

willing to produce ordinary black & white copies of the 157 photographs in its possession in the manner they are kept. Producing color copies or copies from negatives, however, is costly and unnecessary given their irrelevance to this case. Further, even more burdensome would be to require production of photographs associated with particular copyright registrations, as the only way for Bokara to do so would be to purchase them from the Copyright Office at great expense.

*-Production of Images of Designs Made in China*

Samad has conceded that elements of Mag. Judge Fox's order – those requiring the production of the materials associated with the 105 designs made in China – are overly broad. DE 120, p. 14. Thus, this element of the underlying order should clearly be overturned.

*-Production of Images of Designs Made in India and Pakistan from Bokara's Records*

As to the remaining works – those originating in India and Pakistan – their relevance is marginal, if existing at all. As noted, Samad claims to seek these materials from Bokara's records in order to match design names appearing in Bokara's sales document production to actual designs. By doing so, Samad would seek to prove that documents bearing design numbers relate to the sale by Bokara of actual designs Samad believes infringes its rights. This task, however, is impossible to accomplish through Bokara's production of these images from its records, as Bokara does not store these images with any indication as to the design name under which they are registered. Declaration of David Lew ("Lew Decl."), DE 111, ¶5. Bokara's production of images would not permit the matching that Samad is attempting. Thus, the Order requiring Bokara to produce these images from its records is improper, as it would not provide any relevant evidence to this case and would simply burden Bokara with unnecessary cost. *See Sahu v. Union Carbide Corp.*, 262 F.R.D. 308 (S.D.N.Y. 2009) (discovery denied where difficult and costly, and likely of low value).

Bokara has not attempted to "hide" these images, as Samad intimates. While Bokara has certified that after a reasonable search and subject to its objections it has produced all documents responsive to Samad's discovery requests, these images are simply not responsive to Samad's requests. Samad's continuing attempts to slander Bokara by claiming that it has intentionally withheld responsive documents is improper. Further, Samad's repeated allegation that Bokara has a "poor track record" in producing documents misquotes Mag. Judge Fox, who had stated that Bokara's "track record" of ***redacting*** "gives me pause" insofar as there were isolated instances of over-redacting, all of which have been resolved. Zibas Decl. II, Ex. 3, 26:18-27:4.

Samad does not attempt to rebut the burden that would be placed on Bokara in producing these materials in color or in a form that associates particular images with their corresponding copyright registration. Samad does not contradict the fact that even if Bokara provided its image records it would not assist Samad in performing the matching it is seeking. Instead, Samad argues that this burden is not relevant because it is allegedly of Bokara's own making insofar as Bokara did not have a pre-litigation policy of orderly retaining copyright registration materials.

This argument makes clear that Samad's true intention in seeking this discovery is to harass Bokara. Even when it is explained to Samad that Bokara does not have material in its possession that would assist in Samad's matching attempts, Samad persists in its attempts to obtain irrelevant material, likely to simply increase Bokara's costs.

Further, instead of arguing why this material is relevant, Samad argues that Bokara's flawed recordkeeping practice prejudiced Samad insofar as it is unable to determine which image is associated with which copyright registration. Strangely, Samad argues that lax recordkeeping prior to this case is somehow "negligent" or "misconduct." Samad, however, does not claim that Bokara failed to retain these materials when ***this particular litigation*** was reasonably foreseeable. Instead, it argues that Bokara wasted its investment in copyright registrations by

failing to maintain them. DE 120, p. 22. Whether Samad considers Bokara's business practices which predate this litigation to be prudent is irrelevant. Despite what Samad might do, Bokara was under no obligation to maintain these materials.

In spite of their irrelevance, given the low cost, Bokara is willing to produce black & white copies of the photographs in its possession that relate to these registration. However, as Bokara's production of these materials as kept in the ordinary course of their business would not assist Samad in any way, and would be costly for Bokara to produce, Bokara submits that any order requiring it to produce color images or images printed from negatives be revised.

-*Production of Images of Designs Made in India and Pakistan from the Copyright Office*

In addition, to the extent that Mag. Judge Fox's Order is interpreted as requiring Bokara to obtain materials from the Copyright Office to produce to Samad, it is clearly erroneous. Such documents are equally available to the parties. *See Bey v. City of New York*, 2010 U.S. Dist. LEXIS 99645, *18 (S.D.N.Y. 2010) ("[i]t is well-established that discovery need not be required of documents of public record which are equally accessible to all parties"). Bokara should not be forced to fund Samad's litigation by producing these documents from the Copyright Office on Samad's behalf. *See S.E.C. v. Strauss*, 2009 U.S. Dist. LEXIS 101227, *37 (S.D.N.Y. 2009).

### 3.  Samad Should Obtain the Sought Materials from the Copyright Office or Pay Bokara's Production Costs

Samad does not dispute that it can obtain all of the sought materials from the U.S. Copyright Office. Instead, it argues that it would be less burdensome for Bokara to produce them. However, Samad's assessment of the costs associated with obtaining these materials from the Copyright Office is suspect given past misrepresentations. Moreover, should Samad really believe that it would be less costly for Bokara to produce these photos, and should Samad persist in seeking such irrelevant and unhelpful materials, it should pay the cost of production.

Bokara did not claim that buying the deposit materials from the Copyright Office would only cost $600.[1] In fact, if misrepresentations have occurred, they have been by Samad, which claimed that procuring these materials from the Copyright Office would cost over $36,000. DE 104, p. 7-8 n.2. At other times, Samad has represented that the cost would be $760 per copy, which if applied to all 304 copies would cost $231,040. *See* Zibas Decl. II, Ex. 4, 8:2-3. Samad now claims that the cost is $12,288. DE 120, p. 17. Samad's moving target cannot be trusted.

As noted, Bokara is willing and able to produce the images in its possession in black and white through the method available to it in its ordinary course of business. Should Samad desire images in color or prints from negatives Bokara, Samad should be required to pay for them.

Under FRCP 26(c), a court may condition "discovery on the requesting party's payment of the costs" where the sought requests places an "undue burden or expense." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 358 (1978). An order may be granted "for good cause shown." Fed. R. Civ. P. 26(c); *Quinby v. WestLB AG*, 245 F.R.D. 94, 101 (S.D.N.Y. 2006). Contrary to Samad's citation, the standard outlined in *Zubulake v. UBS Warburg* only applies to e-discovery. *See Tierno v. Rite Aid Corp.*, 2008 U.S. Dist. LEXIS 58748, *13-14 (N.D. Cal. July 31, 2008) (the "framework developed in *Zubulake* clearly applies solely to electronic discovery").

The cost associated with making color copies of the 157 images is approximately $1,489. Lew Decl., ¶4. Further, the cost associated with creating currently non-existing photographs from Bokara's negatives would be $30 – $40 an image, adding additional cost. *Id.* These costs are significant, and strongly weigh against production of such marginally relevant materials. Given their marginal if any relevance to this case, and the burdensome and expensive nature of their production, good cause exists for Samad to bear these burdens if it truly wants these materials.

---

[1] Instead Bokara truthfully noted that the cost would be "in addition to a variable search and retrieval fee charged by the Copyright Office."

Samad argues that the documents are only burdensome to produce because Bokara does not have an organized filing system. Samad thus claims that Bokara created its own burden such that it cannot show "good cause" for the burden to be shifted. This argument, however, implies that Bokara had a duty to maintain these files. Samad's citation for this proposition, however, involves a duty arising where litigation was foreseeable. *See Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006). Here, there is no claim that Bokara failed to maintain documents when ***this particular litigation*** was foreseeable, the true standard for raising a duty to maintain materials. *See Danna v. New York Tel. Co.*, 752 F. Supp. 594, 616 n.9 (S.D.N.Y. 1990). Samad's claim of generalized foreseeability is inappropriate.

As the cost of production is excessive in relation to the value of the materials, good cause exists to shift the financial burden to Samad for this production.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Bokara respectfully submits that the February 10, 2011 Order of Mag. Judge Fox was erroneous, and that this Court should rule that Bokara is not required to produce the sought images. In the alternative, Bokara submits that Samad should bear the cost of producing these materials should they be ordered to be produced.

Dated:   New York, New York
         March 16, 2011

                                    Yours, etc.

                                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                                    By: _____
                                        Jura C. Zibas
                                        Scott M. Smedresman
                                        Attorneys for Defendants
                                        BOKARA RUG CO. INC.,
                                        JAN SOLEIMANI, and GABRIEL VAKNIN
                                        150 E. 42nd Street
                                        New York, NY 10604