UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| SAMAD BROTHERS, INC., | : | Case No. 09 Civ. 5843 (JFK / KNF) |
| Plaintiff, | : | |
| -- against -- | : | **DECLARATION OF MARK S. KAUFMAN IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE** |
| BOKARA RUG CO. INC., JAN SOLEIMANI, and GABRIEL VAKNIN, | : | |
| | : | |
| Defendants. | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Mark S. Kaufman, an attorney duly admitted to practice before this Court, under penalties of perjury, declares as follows:

1. I am counsel to plaintiff Samad Brothers, Inc. ("Samad") in the above-referenced action, and submit this declaration in opposition to defendants' motion to preclude the deposition testimony and errata sheet of Vikram Kapoor.

2. Mr. Kapoor's declaration was provided by Scott Korenbaum, the attorney whom Mr. Kapoor retained after Bokara sued Mr. Kapoor, on November 23, 2010.

**A. Mr. Kapoor Helped by Providing Documents and Attending His Deposition**

3. On Samad's behalf, I corresponded with Mr. Kapoor by email. In some emails, I thanked Mr. Kapoor, for two reasons, for his help in prosecuting Samad's claims. First, I had understood – consistent with the then-extant order of Magistrate Judge Fox order dated July 29, 2010 (Docket # 37), and prior to the order entered on December 14, 2010 of this Court (Docket # 84) – that each email was protected by the attorney work product doctrine. My acknowledging Mr. Kapoor's help was to indicate that the email was intended to be treated as work product.

4.      I also thanked Mr. Kapoor because he had no obligation to respond or provide any information whatsoever.  He voluntarily invested substantial time and effort to search for and produce documents, and at his own expense was willing to travel 8,000 miles each way to attend a deposition.  Mr. Kapoor had nothing at stake in this action, except to establish that he created the designs at issue, and that defendants' purchase of these rugs, many from sources wholly unrelated to him, infringed upon the copyright in designs he had created.

5.      The gratitude expressed in the emails does not show that I dictated Mr. Kapoor's discovery responses, or told him how to answer questions at his deposition.

**B.  I Encouraged Mr. Kapoor to Respond to the First Subpoena**

6.      I received from defendants a subpoena for documents dated April 5, 2010 addressed to Mr. Kapoor (the "First Subpoena"), and sent it to Mr. Kapoor.  Mr. Kapoor told me that the First Subpoena was confusing; that he had already provided many documents in connection with Samad's preparing to file the lawsuit; and that the documents requested were voluminous, often more than 10 years old and were confidential and proprietary.

7.      Mr. Kapoor had no legal obligation to respond to the subpoena, and from what I understood was unlikely to respond to it.  Thus, I assisted him in responding to the First Subpoena.

8.      Defendants did not reject the responses, objections, or documents produced by Mr. Kapoor, nor request this Court's or the magistrate judge's assistance during the discovery period to address Mr. Kapoor's objections and responses.  Instead, they accepted all the documents Mr. Kapoor produced, and they requested my assistance to obtain more documents from Mr. Kapoor.

9.      Mr. Kapoor told me that he would not or could not respond to certain questions.  I

drafted responses that reflected Mr. Kapoor's answers and objections to the First Subpoena.

10.     Defendants' prior counsel communicated with me after receiving Mr. Kapoor's responses, and sought more responsive documents. Accordingly, I urged Mr. Kapoor to locate and produce more documents. I believe that if not for my reminding and prodding Mr. Kapoor, he would not have produced any responsive documents.

11.     At the time, I assumed that a search of all the shipping documents of S.N. Kapoor Exports of Jaipur, India ("Kapoor Exports") for the past ten years or so would involve an overwhelming amount of material. To facilitate Mr. Kapoor's search, I offered to send Mr. Kapoor a list of the shipments of which Samad, at least, was aware: the shipments from Kapoor Exports to Samad.

12.     Although by email dated May 28, 2010, I asked for documents concerning Kapoor Exports' profits on the sales, Mr. Kapoor did not produce any such documents – thus demonstrating that he was by no means under my control or direction.

13.     At that time I also understood that it would be unduly burdensome for Mr. Kapoor to gather all documents regarding Baswal International and P.P. International. Thus, I tried to explain the requests seeking documents regarding those exporters in order to get Mr. Kapoor to respond to those requests.

14.     Defendants try to mischaracterize an email dated June 10, 2010 from me to Mr. Kapoor as an elaborate ruse by which I sent the assignments merely in order to get them "produced" by Mr. Kapoor. However, Samad had already produced to defendants, by letter dated February 2, 2010, *inter alia*, assignments for all the designs at issue in the Second Amended Complaint, bearing document nos. SAM 35-54, and by letter dated April 15, 2010, assignments for all the designs in the Third Amended Complaint, bearing document nos. SAM

3

1154-63.

15. Mr. Kapoor sent back to me the assignments by email dated June 11, 2010, apparently because he understood they were responsive to the First Subpoena. The same day, I wrote back and asked him to search for any email or other correspondence by which he first received or sent to Samad the written assignments. Upon information and belief, he did not locate any such correspondence.

16. Defendants' counsel expressly considered Mr. Kapoor's alleged failure to produce documents in response to the First Subpoena, but went forward with the deposition, anyway. Annexed and made **Exhibit A** hereto is a true copy of an email from defendants' counsel to me dated November 9, 2010, in which she wrote, "we have scheduled Vikram Kapoor's deposition and intend to proceed despite the fact that we have learned Mr. Kapoor has failed to provide responsive documents." Thus, defendants cannot assert that any purported failure by Mr. Kapoor to respond to the First Subpoena precludes use of his deposition transcript.

C. **Sending Deposition Transcripts Did Not Coach the Witness**

17. By email dated November 12, 2010, I sent Mr. Kapoor the transcripts of Mahesh Choudhury and Malcolm Samad's depositions, and suggested that Mr. Kapoor read them "in their entirety". The Choudhary transcript is 170 pages long, and Malcolm Samad's is 293, a total of almost 500 pages. The transcripts were not highlighted.

18. I did not suggest to Mr. Kapoor, whether in connection with the deposition transcripts or at any other time, any substantive answer that he should give to any questions he might be asked.

19. By the time Mr. Kapoor came to New York and met with me on November 22, 2011, defendants and Samad had each produced over 3,000 documents.

20. During that meeting, I discussed with Mr. Kapoor the process of the deposition and questions he might be asked, and emphasized that Mr. Kapoor must tell the truth.

21. I did not provide any legal advice or legal services of any kind to Mr. Kapoor during that meeting, or at any other time.

### D. **Defendants' Second Subpoena for Documents Is Irrelevant to This Motion**

22. Defendants sent me a subpoena for documents dated October 27, 2010 addressed to Mr. Kapoor and Kapoor Exports (the "Second Subpoena"). I forwarded the document to Mr. Kapoor by email dated October 28, 2010.

23. Defendants attempt to distract the Court by complaining that Mr. Kapoor has not yet provided responsive documents to the Second Subpoena. However, whether and when Mr. Kapoor responds to the Second Subpoena has nothing to do with precluding his testimony.

24. Samad made a motion to quash the subpoena which was still pending by November 23, 2010, when Mr. Kapoor's deposition took place. Defendants did not, whether by contacting Samad's counsel or Magistrate Judge Fox, request that Mr. Kapoor's deposition be adjourned pending determination of the motion to quash.

25. Defendants, by joint letter with Samad, did not until November 26, 2010 -- *after* Mr. Kapoor's deposition -- request an extension of discovery pending determination of the pending motions. Annexed and made **Exhibit B** hereto is a true copy of a letter dated November 26, 2010, from me, on behalf of all parties, to Magistrate Judge Fox.

26. Thus, defendants waived any argument they might have made that the deposition transcript should be precluded based on Mr. Kapoor's purported failure to produce documents responsive to the Second Subpoena.

### E. Samad Is Not An Adverse Party to Mr. Kapoor or Kapoor Exports

27.     Documents which defendants produced in discovery demonstrated that Kapoor Exports' last sale to defendant Bokara of rugs at issue in this case was in November 2004. Given the 3-year statute of limitations for copyright infringement, Samad could not sue Mr. Kapoor or Kapoor Exports after November 2007 for such sales. Upon learning of Kapoor Exports' sales to Bokara, Samad was already time-barred from suing Mr. Kapoor or Kapoor Exports.

28.     In contrast, Samad's claims against defendants are not time-barred. As set forth in the Third Amended Complaint and in document produced in discovery, during the statute of limitations defendants (a) purchased and imported rugs bearing the designs from other manufacturers (b) sold rugs bearing the designs to customers, and (c) advertised -- until 2010, a year after this lawsuit began -- rug designs on their web site.

29.     Moreover, Samad and Mr. Kapoor's interests have been aligned: defendants asserted that other designers purportedly created the designs at issue, rather than Kapoor Exports.

30.     Bokara's third-party witnesses, Michael George and representatives from Saraswati Exports of Jaipur, India, asserted at their depositions that they created the rug designs which Kapoor assigned to Samad and which Samad seeks to enforce in this lawsuit. However, Mr. George's deposition demonstrated that he failed to make any copyrightable contribution to any design, and was not even in India when Kapoor Exports completed their work.

31.     Similarly, each assertion that Saraswati created rug designs at issue in this case was undermined by testimony that, *inter alia*, Saraswati and Kapoor Exports entered into a Memorandum of Understanding under which Saraswati agreed to withdraw from the Indian Patent Office Saraswati's challenges to many of Kapoor's registered patent designs, including each of the designs at issue herein.

F. **Additional Authorities**

32. Annexed and made **Exhibit C** hereto are true excerpts from http://www.nysba.org/Content/NavigationMenu/ForAttorneys/ProfessionalStandardsforAttorneys/CorrelationtableofnewNYrules.pdf, a link provided by the New York State Bar Association.

33. Annexed and made **Exhibit D** hereto is a true and complete copy of NYSBA Ethics Comm. Opinion 728 (5/10/00).

34. Annexed and made **Exhibit E** hereto is a true and complete copy of NYSBA Ethics Comm. Opinion 843 (9/10/10).

G. **Even If Mr. Kapoor's Errata Sheet Were Not Deemed Admissible Because of His Confirming Declaration, It Should Be Deemed Properly Authenticated**

35. Notably, defendants did not notify counsel for Mr. Kapoor or for Samad until bringing this motion on March 4, 2010 – nearly six weeks after receiving the errata sheet and signed deposition transcript by email dated January 20, 2011-- that the errata sheet of Mr. Kapoor is allegedly improperly certified.

36. Even when defendants objected to the errata sheet, by email dated January 21, 2011 to Mr. Kapoor's counsel, they did not object on the ground that the errata sheet's purportedly was not properly certified. Annexed and made **Exhibit F** hereto is a true copy of an email dated January 21, 2011 from defendants' counsel to Mr. Korenbaum and me.

H. **Defendants Bring This Motion with Unclean Hands by Serving Mr. Kapoor With a Lawsuit, Immediately Before Samad Deposed Him**

37. Defendants bring this motion with unclean hands. Defendants, if anyone, should be held accountable for intimidating the witness, who had voluntarily travelled from India for solely for the deposition, but at the deposition received papers naming him as a defendant in a new lawsuit.

7

38. On November 23, 2010, shortly before defendants' counsel completed asking Mr. Kapoor questions, he was served with a summons and complaint in an action entitled <u>Bokara Rug Co., Inc., Jan Soleimani and Gabriel Vaknin v. Vikram Kapoor and S.N. Kapoor Exports</u>, (N.Y. Sup., N.Y. Co., Index No. 652079/10) (the "Bokara Action"). At that time, I glanced at the complaint and saw that it seeks indemnification and contribution for all damages that defendants in this case may be found to owe to Samad.

39. Defendants' counsel had complete control over when process would be delivered to the conference room in their offices where the deposition was taking place. They did not serve him at the beginning of the deposition, when they were about to ask questions; they did not serve him promptly after a lunch break, when they still had questions to ask; they did not wait until the end of cross-examination, when Mr. Kapoor's testimony would be uninterrupted by such an immense distraction. Instead, they served him at approximately 3:20 p.m., fifteen minutes before defendants' counsel finished her questioning.

40. Thus, the summons and complaint arrived just before I began questioning Mr. Kapoor.

41. Upon information and belief, defendants intended that their service of a summons and complaint would convince Mr. Kapoor not to provide further testimony. Because such tactics were designed to intimidate the witness and interfere with his testimony, defendants bring this motion with unclean hands.

## CONCLUSION

As a result of the foregoing, and for the reasons set forth in the accompanying Memorandum of Law and other declarations in opposition to defendants' motion, Samad respectfully requests that defendants' motion to preclude be denied in its entirety; that the Court award Samad the costs of defending against this motion, including reasonable attorneys' fees; and that the Court grant such other relief as it deems just and appropriate.

Dated: New York, New York
      March 25, 2011

KAUFMAN & KAHN, LLP

_____
Mark S. Kaufman
747 Third Avenue, 32nd Floor
New York, NY 10017
(212) 293-5556
Email: kaufman@kaufmankahn.com