UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMAD BROTHERS, INC.,

                Plaintiff,                  09 Civ. 5843 (JFK)

     -against-

BOKARA RUG CO. INC., JAN SOLEIMANI, and
GABRIEL VAKNIN,

                Defendants.
------------------------------------------------------------X

## DECLARATION OF VIKRAM KAPOOR

     VIKRAM KAPOOR declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury of the laws of the United States of America, that the following is true and correct:

     1.     I submit this declaration in connection with defendants' motion to preclude my deposition testimony in the above-captioned case. Although I am not a party to this action, I am a named defendant in a New York State court action entitled <u>Bokara Rug Co. Inc., Jan Soleimani and Gabriel Vaknin v. Vikram Kapoor and S.N. Kapoor Exports</u>, (Sup. Ct. New York Co., Index No. 652079/10) (the "Bokara Action").

     2.     My family and I live in Jaipur, India. I am a principal of S.N. Kapoor Exports ("Kapoor Exports"), which is also located in Jaipur, India. Kapoor Exports manufactures and exports rugs to wholesalers, including plaintiff Samad Brothers, Inc. ("Samad"), and defendant Bokara Rug Co. Inc. ("Bokara").

     3.     I am 46 years old. Over the course of my life, I have created original designs that Kapoor Exports used and continues to use in its manufacturing of rugs for sale to its wholesalers. Between 1998 and 2004, on behalf of Kapoor Exports, I orally assigned to Samad all of the

*/s/ Vikram Kapoor*

copyrights, including but not limited to the right to exclusively distribute, in rugs bearing approximately dozens if not hundreds of original designs that I created. In 2003, 2009 and 2010, I confirmed in writing such oral agreements to some of these designs. I understand that this lawsuit concerns Bokara's purchase and sale of rugs bearing 23 of these designs.

4. I was told by Malcolm Samad and by Samad's counsel, Mark S. Kaufman, Esq., that documents in Kapoor Export's possession and my testimony were necessary in this action. I understood that they asked for such documents and for me to testify because of my role in creating the rug designs and assigning the designs to Samad.

5. For these reasons, I told Mr. Kaufman that I would provide documents that Samad and Bokara were seeking from Kapoor Exports, and that I would come to New York to give testimony at a deposition.

6. I received from Mr. Kaufman a subpoena for documents dated April 5, 2010 (the "First Subpoena"), addressed from defendants to me and to Kapoor Exports. It consisted of approximately 40 questions, many of which I did not understand. The First Subpoena required us to provide documents that were voluminous, often more than 10 years old, and which contained information that I felt was confidential and proprietary.

7. After receiving the First Subpoena, I recognized that I had already provided to Samad or Mr. Kaufman many of the documents responsive to it in connection with Samad's preparing to file this lawsuit, and Samad's responding to defendants' discovery requests. I did not believe that either I or Kapoor Exports had any legal obligation to respond to the First Subpoena, and I would not have provided any additional documents in response to the First Subpoena but for the fact that Messrs. Samad and Kaufman requested that I do so.

-2-

8. Because I did not (before getting sued by defendants) have an attorney who practiced law in the United States, Mr. Kaufman helped me respond and object to the First Subpoena. I did not consider Mr. Kaufman to have provided me with legal advice, but rather he assisted me in answering the First Subpoena.

9. I told Mr. Kaufman that I would not or could not answer certain questions. He drafted a document that reflected my answers and objections to the First Subpoena. Mr. Kaufman also asked me to clarify certain responses. I reviewed the proposed responses and objections, suggested changes to make the responses accurate, and signed and returned them to him.

10. Thereafter, over time I provided additional documents consistent with the written responses and objections. If not for Mr. Kaufman's reminding and prodding me, I would not have provided the responsive documents.

11. In at least one instance, I provided more documents than Mr. Kaufman expected. I told Mr. Kaufman that it would be practically impossible for me to provide all my records regarding the manufacturing of the 23 designs by my job workers because many such documents were too old, they were not computerized and were just not otherwise saved. Mr. Kaufman wrote that I need only provide samples sufficient to identify such manufacturers. In response, I provided as many responsive documents that I could locate.

12. As I mention above, I knew that the parties wanted to take my deposition. After consulting with Mr. Kaufman about my availability, I was told that my deposition would take place on November 23, 2010.

13. Prior to my deposition, Mr. Kaufman sent me copies of the transcripts from the

-3-

depositions of Mahesh Chaudhary (a principal of Saraswati Global Ltd., which claims to have created some of Kapoor Exports' designs) and Malcolm Samad. This helped familiarize me with the deposition process and with the type of questions I might be asked.

14. Around the same time as the deposition was scheduled, I received from Mr. Kaufman another subpoena for documents, dated October 27, 2010 (the "Second Subpoena"), which consisted of 90 separate, detailed questions, and which sought many documents that I understood had already been produced by me and Kapoor Exports.

15. Before my deposition Mr. Kaufman told me that he had made a motion to quash the Second Subpoena. I was not asked by anyone to adjourn my trip so my deposition could be rescheduled for a date after this Court decided the motion to quash. If I had been asked, I would have used my best efforts to accommodate any such adjournment.

16. I rarely come to the United States. I made an exception to this rule because I understood that my testimony was important in this case. I set aside my personal and professional affairs to make a special trip to New York City, at great expense to me, to attend the deposition on November 23, 2010. I would not have come to the deposition but for the fact that Messrs. Samad and Kaufman requested that I do so.

17. The day before the deposition, I met with Mr. Kaufman at his offices. During that time, he showed me some of the thousands of documents that each party had produced in this case. Mr. Kaufman also discussed with me how the deposition would proceed, e.g., Bokara's attorneys would question me first and then he would have the opportunity to ask me questions, as well as the questions that I would likely be asked. He also emphasized that I must tell the truth, which I knew. Mr. Kaufman never suggested to me any substantive answers I should give to any

-4-

questions that I might be asked.

18. I understand that defendants, in their motion to preclude, allege that my purported "lack of preparation and prior production of requested materials" hampered my deposition. I do not believe this is correct. Any difficulties I had at my deposition were the result of events I was asked about having occurred many years ago, and without being shown particular documents I was unable to answer a number of questions posed to me. For these reasons, I often told Bokara's attorney that I would have to check my records to answer her questions.

19. My deposition began at about 10:15 a.m. Following lunch, during a break in questioning by defendants' counsel, I was handed copies of a Summons and Complaint while I sat in the conference room of defendants' attorneys. The Summons and Complaint that I was handed, a copy of which is annexed hereto as Exhibit A, is the Summons and Complaint in the Bokara Action. In the Bokara Action, Bokara and its principals have sued me and Kapoor Exports to recover damages for, among other things, contribution and indemnification.

20. To put it mildly, I was shocked when I learned that I had just been served with legal papers. If I knew that were to happen, I would have never come to New York City to give testimony in this case. Having been invited to the offices of defendants' counsel and then sued, I found the experience most distasteful.

21. After being served with the Summons and Complaint, I retained the services of Scott A. Korenbaum, Esq. to represent us in the Bokara Action. On January 19, 2011, I provided Mr. Korenbaum with my signed and notarized deposition transcript and detailed errata sheet in this case, which addressed errors in the transcript of my deposition and provided answers to any questions for which I could not respond during the deposition, as requested by Bokara's counsel.

-5-

22. I understand that defendants wish to preclude the use of my deposition testimony, including the corrections I made to my testimony as indicated on my errata sheet, because it allegedly was not executed properly.

23. As I said, my family and I reside in Jaipur, India. The nearest U.S. Consulate is approximately 260 kilometers (approximately 160 miles) away, in Delhi. Even if I were required to go such a distance merely to obtain proper notarization, I understand that it is extremely difficult and time consuming for someone who is not a United States citizen to get an appointment at a U.S. Consulate. Thus, I had the errata sheet notarized in the normal course in Jaipur by a qualified notary. I annex hereto as Exhibit B my signed and notarized deposition signature page and errata sheet.

24. In an abundance of caution, contemporaneous with this Declaration, I am providing another Declaration annexing my signature page and signed and notarized errata sheet, which I also declare to be true subject to the penalties of perjury under the laws of the United States of America.

25. Finally, I understand that defendants have also asked of this Court permission to question me again. Given what happened to me the last time I appeared in New York for my deposition, I do not intend to return to New York. Not only did my prior experience leave a very bad taste in my mouth for the reasons I mention above, but it is enormously expensive for me to return to New York.

26. If I must return to New York it will cost me approximately $7,000 round trip. In addition to this expense, Kapoor Exports will lose business because I am responsible for its day-to-day operations, and each day I am away from Jaipur represents lost business opportunities.

-6-

For these reasons, I beseech the Court not to allow the parties to question me again.

Dated: March 24, 2011
      Jaipur, India

                                                                  Vikram Kapoor