```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SAMAD BROTHERS, INC.,               :
                                    :
            Plaintiff,              :
                                    :      No. 09 Civ. 5843 (JFK)
     -against-                      :      **Opinion and Order**
                                    :
BOKARA RUG CO., INC., JAN           :
SOLEIMANI, and GABRIEL VAKNIN,      :
                                    :
            Defendants.             :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-19-11

APPEARANCES:

    For Plaintiff:
    Mark S. Kaufman, Esq.
    KAUFMAN & KAHN, LLP

    For Defendants:
    Jura C. Zibas, Esq.
    Scott M. Smedresman, Esq.
    WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Bokara Rug Co., Inc. ("Bokara"), Jan Soleimani, and Gabriel Vaknin's (collectively "Defendants") objection to Magistrate Judge Fox's order directing Defendants to produce 304 copyright registration photographs. In addition, Samad Brothers, Inc. ("Samad Brothers" or "Plaintiff") moves for sanctions and contempt against Defendants for failing to produce these photographs. For the reasons that follow, Defendants' objection is overruled and the Magistrate Judge's order is affirmed. Plaintiff's motion for sanctions and contempt is denied.

## I.     Background

Familiarity with the facts and procedural history of this case is presumed. Briefly, Samad Brothers is in the business of importing and selling rugs. (Third Am. Compl. ¶ 5). Samad Brothers alleges that Defendants have infringed twenty-five copyrighted rug designs which were created by S.N. Kapoor Exports and Jain Carpets and subsequently assigned to Samad Brothers. (Id. ¶¶ 16-18).

As this lawsuit involves copyrighted rug designs, documents alone may not establish whether Bokara has imported or sold infringing rugs. A visual inspection of Bokara's inventory proved necessary in order to determine whether rugs with different identifying names or numbers nonetheless bear the same design as Samad Brothers' rugs. Thus, Samad Brothers has repeatedly sought photographs of Bokara's rugs throughout discovery; of particular relevance to the instant dispute, Samad Brothers requested that Bokara produce copies of all 304 of its copyright registrations as each registration includes a deposit copy image of the copyrighted design. A subsequent request for documents specifically focused on copyright registrations for two Bokara rug designs designated "JB7" and "Magnolia P" that Samad Brothers independently identified as being substantially similar to its own copyrighted designs.

On November 15, 2010, Defendants objected to Plaintiff's requests for the JB7 and Magnolia P registrations as vague, overbroad, unduly burdensome, and irrelevant. (Declaration of Mark S. Kaufman ("Kaufman Decl."), Ex. D-8 at 8). Defendant simultaneously certified, in accordance with the Magistrate Judge's direction, that it had conducted a diligent and reasonable search for all documents in its custody or control responsive to Plaintiff's requests. (Kaufman Decl., Ex. F).

On November 16, 2010, the Magistrate Judge held a conference to address numerous discovery disputes between the parties, including the dispute regarding production of copyright registrations. Initially, the Magistrate Judge noted: "The request . . . as I read it, was for all copyright registrations. I see no reason for the defendant to provide all copyright registrations that they have. You [Plaintiff] have focused in the writing on, now two that you say are linked to designs involved in this action. That's very different from asking for all registrations." (Declaration of Jura Zibas ("Zibas Decl."), Ex. 3, Nov. 16, 2010 Tr. at 6). The Magistrate Judge then went on to referee the dispute with respect to those two specific copyright registrations. Caught in the middle of a he said-she said argument, the Magistrate Judge accepted Defendants' certification that they had provided all discovery. (Kaufman Decl., Ex. D-7, Nov. 16, 2010 Tr. at 21-22 ("I can't go to the

3

defendant's inventory and document and determine for myself that everything has been given over or has not.  I think we're at the point where the defendant's representation that it has given over everything stands.")).

On November 18, 2010, three days after certifying that their production was complete and two days after the conference with the Magistrate Judge, Defendants produced to Plaintiff the previously withheld copyright registration photograph for the JB7 design.  Suspecting that Defendants had not conducted as thorough a review of their documents as represented, Samad Brothers deposed Mr. Soleimani and Mr. Vaknin, the two individual defendants, and Mr. Lew, their assistant, about their efforts to search for photographs of Bokara's rugs.  Mr. Soleimani and Mr. Vaknin each testified that they did not look for photographs, but instructed Mr. Lew to do so.  (Kaufman Decl., Ex. D-4, Soleimani Depo. Tr. at 72-74; Kaufman Decl., Ex. G-B, Vaknin Depo. Tr. at 238-41).  However, when asked, "Did you look for photographs among the deposit copies of the copyright [registrations] filed by Bokara?"  Mr. Lew responded in the negative.  (Kaufman Decl., Ex. G-A, Lew Depo. Tr. at 261).

In a letter dated December 3, 2010, Plaintiff informed the Magistrate Judge of its belief that Defendants' response to discovery requests was incomplete because Bokara employees did not review the company's 304 copyright registrations – a "key

4

source" of potentially responsive photographs.  (Kaufman Decl., Ex. D).  On January 24, 2011, the Magistrate Judge held another conference to address the discovery disputes renewed by Plaintiff's letter.  He ruled:

> I want to turn first to . . . the plaintiff's December 3, 2010 letter.
>
> . . .
>
> Turning to the discovery matters that the plaintiff claims are really evidence of deficiencies in the responses made to the plaintiff discovery demands it does not appear to me that there was a search, certainly not an adequate search, for photographs generally.  And specifically, photographs that are part of the registrations for rug designs.  And I think that the defendants have to do such a search and produce whatever photographs they have generally, and specifically, the photographs that are attached to the registrations.
>
> The testimony by defendants' representatives really amounts to a finger-pointing exercise, each claiming either he doesn't have responsibility to look for any photographs, or any other documents, or believes somebody else was doing it on behalf of the defendants.
>
> Let me turn to one of the registrations that was disclosed, JB7, after there was a certification that the defendants had made a complete disclosure or production of materials to the plaintiff.  How is it that that registration came to be uncovered and surrendered in the face of a certification that that production was complete?

(Kaufman Decl., Ex. A, Jan. 24, 2011 Tr. at 3-5).

After the January 24, 2011 conference concluded, Plaintiff's counsel sent a letter to defense counsel summarizing his understanding of the Magistrate Judge's directives.  At the

5

top of the list, counsel wrote: "It does not appear that defendants searched for photos generally or for photos that were part of copyright registrations. Defendants must engage in a search for photographs, and, at a minimum, shall produce deposit copies of all of Bokara's copyright registrations." (Kaufman Decl., Ex. H). In a letter dated February 1, 2011, Defendants informed the Magistrate Judge again that they believed they had previously satisfied Plaintiff's request for photographs related to designs in the lawsuit. (Zibas Decl., Ex. 6). Then, on February 7, 2011, Defendants sent another letter to the Magistrate Judge requesting "clarification" of the Judge's January 24, 2011 ruling regarding production of copyright registration photographs – namely, Defendants requested that the Judge clarify whether he intended to require Bokara to produce all 304 copyright registrations or only the JB7 and Magnolia P registrations. (Zibas Decl., Ex. 7). On February 10, 2011, the Magistrate Judge endorsed Bokara's letter as follows:

> As directed on January 24, 2011, the defendants must produce to the plaintiff, expeditiously, the 300 photographs that are part of the defendants' rug design copyright registrations. The defendants shall also produce to the plaintiff, expeditiously, any other photographs in their possession, custody and control related to the rug designs pertinent to this action.

(Zibas Decl., Ex. 8). On February 23, 2011, Defendants filed objections to what they call the February 10, 2011 order.

6

## II. Discussion

### A. Objections to the Magistrate Judge's Order

This Court reviews a Magistrate Judge's non-dispositive, discovery ruling pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. Under Rule 72(a), a court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Nikkal Indus., Ltd. v. Salton, Inc., 689 F. Supp. 187, 189 (S.D.N.Y. 1988) (quotation omitted). This is a highly deferential standard, and "[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden." U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc., No. 04 Civ. 6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007).

Rule 72(a) provides an aggrieved party with fourteen days to object to a magistrate judge's non-dispositive order, and "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). An oral order can trigger the fourteen-day window for filing objections. See Scharff v. Claridge Gardens, Inc., No. Civ. 2047, 1990 WL 186879, at *7, (S.D.N.Y. Nov. 21, 1990).

### 1.   Timeliness of Objection

The parties dispute whether Defendants' time to object began to run on January 24, 2011 – the date of the Magistrate's oral order – or on February 10, 2011 – the date of the Magistrate's written clarification.  Defendants argue that the January 24, 2011 date should not govern because the Magistrate's oral order was unclear and it contradicted his November 16, 2010 statement that he saw "no reason for the defendant to provide all copyright registrations that they have."

The January 24, 2011 oral order, particularly when considered in context, is clear.  The Magistrate specifically stated that he wanted to discuss Plaintiff's December 3, 2010 letter, and that letter requested that Defendants be "compelled to produce, at minimum, all registrations and deposit copies." (Kaufman Decl., Ex. D at 4).  With respect to that application, the Magistrate spoke broadly of the inadequacy of Defendants' search for photographs "generally" as well as for "photographs that are part of the registrations for rug designs."  Initially, the Court notes that nowhere in this colloquy is there reference to any subset of Bokara's copyright registrations. Additionally, Defendants produced copyright registrations for the JB7 and Magnolia P designs - the two designs Plaintiff had previously requested by name - prior to the January 24, 2011 conference.  It is unlikely that the Magistrate would criticize

Defendants' search with respect to documents that had been located or that he would direct production of documents that had already been produced.

Nor did the Magistrate Judge issue contradictory orders. The November 16, 2010 ruling was based on the Magistrate's acceptance of what appeared to be a good faith representation that all relevant evidence had been produced.  When new information came to light indicating that counsel's representation was less than accurate, the Magistrate revised his discovery ruling accordingly.  Moreover, even if Defendants were confused about the scope of the Magistrate's discovery order, they had sufficient time prior to the expiration of Rule 72(a)'s fourteen day window to request clarification from the Court.  The substantive ruling to which Defendants object was issued on January 24, 2011.  Defendants' objections, filed 30 days later, are therefore untimely under Rule 72(a).

### 2.   Clear Error

Even if the Court were to accept Defendants' objections out of time in the interest of justice, it would find no error in the Magistrate's January 24, 2011 order.  Defendants argue that the January 24, 2011 order is clearly erroneous because:  (1) Plaintiff can obtain the photographs from public records; and (2) the 304 copyright deposit images are not relevant and unduly burdensome to produce.

9

With respect to Defendants' first claim of error, there is nothing in the record to suggest that Defendants argued to the Magistrate Judge that all copyright deposit copies are publicly available.  As the Magistrate Judge could not consider an argument not presented to him, the public nature of copyright registrations does not provide a basis for overruling the January 24, 2011 order.  Cf. Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (when reviewing objections to a magistrate's report and recommendation "a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate"). Regardless, the fact that Plaintiff might be able obtain copyright registrations, for a fee, from the United States Copyright Office or the Library of Congress does not relieve Defendants of their discovery obligations.  Under Rule 34(a) of the Federal Rules of Civil Procedure, a party may request production of various items "in the responding party's possession, custody, or control."  Bokara has registered 304 copyrights for rug designs. (Declaration of David Lew ("Lew Decl.") ¶ 2).  One hundred ninety-eight of these copyrights cover rug designs from India, one hundred five copyrights cover rug designs from China, and the remaining copyright concerns one rug design from Pakistan.  (Id. ¶ 3).  Defendants now concede that they have photographs of 157 of the rugs designed in India.

10

(Id. ¶ 4). Defendants also state that they have negatives which may contain images of the remaining 41 Indian rug designs and the Pakistani rug design. (Id.). Although Defendants claim that they do not maintain copies of their own registrations for the 105 Chinese rug designs, Plaintiff agrees that those designs are not likely to be relevant to the Third Amended Complaint and no longer seeks their production. (Pl. Mem. at 14). As the 199 requested copyright registrations are in Defendants' custody and control, regardless of the fact that they may also be publicly available, the Magistrate did not clearly err in ordering their production.

Nor did the Magistrate err in directing production of all of Bokara's copyright deposit images over Defendants' cries of undue burden. Although the parties engage in an extensive debate about the relative costs of obtaining deposit copies from the Copyright Office, the plain fact is that the requested Indian rug photographs are in Bokara's New Jersey offices. According to Defendants, they would need "to utilize 5 to 7 hours of labor of gathering the [157 images of Indian rug designs] and then taking them to an outside vendor over 4 miles away from the office," with an estimated cost to Bokara of $1,489.00. (Lew Decl. ¶ 4). Production of the remaining photographs from negatives is estimated to cost $30 to $40 per image. (Id.). Defendants claim that this effort and expense is

11

unduly burdensome in light of the limited relevance of the majority of the photographs to those designs identified in the Third Amended Complaint.

The January 24, 2011 order may require a certain amount of over-production. However, Defendants' track record demonstrated to the Magistrate that they could not be relied upon to perform a diligent search for photographs on their own. Cf. Kaufman Decl., Ex. C, June 30, 2010 Tr. at 9 (granting Plaintiff's application under Rule 34(a)(2) to enter Bokara's warehouse and inspect rugs because defense counsel "indicated to me it's an onerous task your client doesn't want to undertake to look for these rugs. So the plaintiff has agreed, or has determined, it will look for the rugs itself"). Thus, the Magistrate Judge reasonably concluded that the best way to ensure that Plaintiff receives responsive photographs is to allow Plaintiff to review all copyright deposit images for itself to determine which, if any, are substantially similar to Samad Brothers' designs. Bokara could have reviewed its own copyright registration photographs but did not, and simultaneously asserted that its document production was complete; therefore, any burden occasioned by the Magistrate's order is self-inflicted.

For the same reason, Defendants' request that the Court order Plaintiff to pay copying costs for each of the 199 copyright registration photographs is denied. The Court does

not believe cost-shifting is appropriate where Defendants' own conduct compelled the Magistrate Judge to order a more extensive production of copyright registration images than what he previously thought necessary.  Cf. Quinby v. WestLB AG, 245 F.R.D. 94, 104-05 (S.D.N.Y. 2006) (holding that a party which creates its own discovery burden should not be allowed to shift the cost of undoing that burden to its adversary).  However, both sides acknowledge that not every photograph will depict a rug similar to Samad Brothers' copyrighted designs.  The Court sees no reason why the parties cannot work out an arrangement whereby Plaintiff could inspect the 199 original file photographs and negatives, and Defendants would only reproduce copies of those photographs identified as responsive.  The Court leaves those details to the parties, but strongly encourages Plaintiff to conduct this additional discovery in the most cost effective way possible.

    As noted above, Plaintiff no longer seeks production of the 105 copyright registration deposit copies concerning rug designs from China.  Thus, the Magistrate Judge's January 24, 2011 order is modified to require production of the 198 registrations for rug designs from India plus the registration for the rug design from Pakistan.  As there is no error in the Magistrate's discovery ruling, the Court notes that this modification is ordered pursuant to Plaintiff's consent, not Rule 72(a).  The

13

Court expects review and production of the 198 copyright registration photographs to be complete within one month of the date of this order.

### B. Plaintiff's Motion for Sanctions and Contempt

Plaintiff's response to Defendants' objection to the January 24, 2011 order was to file a motion for sanctions and contempt under Rules 37(b) and 70(e) of the Federal Rules of Civil Procedure. Specifically, Plaintiff argues that, as a result of Defendants' failure to produce the copyright registration images at issue, it is entitled to an adverse inference that the photographs include designs that are substantially similar to Samad Brothers' rug designs. Alternatively, Plaintiff seeks production of such photographs "expeditiously" and monetary sanctions in the amount of $2,000 for each day from January 28, 2011 until production is completed. Plaintiff also seeks its costs and attorney's fees for this motion. In their opposition, Defendants cross-move for sanctions against Plaintiff based on the filing of a frivolous motion for sanctions.

#### 1. Contempt

In its reply memorandum, Plaintiff requests leave to withdraw the contempt portion of its motion so that the issue of sanctions can be heard by the Magistrate Judge. That application is denied. If the motion is referred back to the

14

Magistrate, it is inevitable that someone will object to his ruling no matter what it is; there is no reason to further delay these tortured proceedings with two rounds of motion practice on a discovery dispute.

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989); see also Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 655 (2d Cir. 2004); Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir. 2003). Where a party is found to be in contempt of a court order, the court may impose coercive and/or compensatory sanctions against the contemnor in the form of a fine. See King v. Allied Vision, Ltd., 65 F.3d 1051, 1062 (2d Cir. 1995).

Although, as discussed above, the Court finds that the Magistrate's January 24, 2011 oral order was not ambiguous, Plaintiff has not submitted clear and convincing evidence of Defendants' noncompliance or demonstrated Defendants' lack of diligence. While Defendants' contention that they misunderstood the scope of the Magistrate's January 24, 2011 ruling does not carry the day, it is at least colorable. Moreover, Defendants

15

are entitled to object to a Magistrate Judge's discovery order and are generally not required to comply with that order while the objection is pending.  It is Defendants misfortune that the time for objecting expired on the same day as they sought clarification of the order; however, the fact that Defendants waited two weeks before sending the February 7, 2011 clarification letter does not demonstrate their unwillingness to comply with the Magistrate's order.  That being said, should Defendants fail to produce discovery in accordance with today's order, they are on notice that the Court will revisit the issue of sanctions and contempt.  As the Court is not inclined at this time to declare Defendants in contempt of the Magistrate's discovery order, Plaintiff's request for contempt sanctions of $2,000 per day is denied.

### 2.   Discovery Sanctions

For many of the same reasons, discovery sanctions are unwarranted.  Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides that where a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders."  Available sanctions include directing that a disputed fact has been established, precluding evidence, and striking pleadings. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  "[D]istrict courts possess 'wide discretion' in imposing sanctions under Rule 37."

16

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007) (quoting Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991)).  The Court's discretion in selecting an appropriate sanction is guided by a number of factors, including:  "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance."  Handwerker v. AT & T Corp., 211 F.R.D. 203, 208 (S.D.N.Y. 2002); see Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302-03 (2d Cir. 2009).

Plaintiff suggests an adverse inference as an appropriate sanction for Defendants' failure to produce all of its copyright deposit copies.  The party seeking an adverse inference must show:  "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Scott v. City of N.Y., 591 F. Supp. 2d 554, 565 (S.D.N.Y. 2008) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).

17

Prior to the January 24, 2011 conference, Defendants were not required to turn over Bokara's entire inventory of copyright deposit photographs. Rather, the Magistrate Judge ordered that Defendants produce all copyright registration photographs only after he determined that Defendants had not properly conducted searches for relevant photographs. While they did not timely object to the January 24, 2011 oral order, neither did Defendants engage in willful conduct with the goal of delaying the litigation. Defendants have never received a warning from the Court that their failure to produce all copyright registrations would result in sanctions. Although Plaintiff's counsel argues that he personally warned Defendants of their contempt, these repeated threats via email are better characterized as evidence of the parties' enmity than the type of fair notice the law contemplates. Moreover, as summary judgment briefs have not yet been submitted, Plaintiff has suffered minimal, if any, prejudice as a result of the delay in document production. None of the factors listed above indicate an immediate need for an adverse inference or other discovery sanctions. It would seem that requiring Defendants to produce 199 copyright registration photographs is a sanction in and of itself.

The Court would take this opportunity to note that the parties' incessant bickering is unprofessional and has

exponentially prolonged these proceedings. It seems that every disagreement necessitates a letter application or motion. <u>See, e.g.</u>, <u>Samad Bros., Inc. v. Bokara Rug Co., Inc.</u>, No. 09 Civ. 5843, 2010 WL 5094634 (S.D.N.Y. Dec. 13, 2010) (overruling objection to denial of motion for leave to amend the Third Amended Complaint); <u>Samad Bros., Inc. v. Bokara Rug Co., Inc.</u>, No. 09 Civ. 5843, 2010 WL 5095356 (S.D.N.Y. Dec. 13, 2010) (overruling work product protection applied to third-party documents); <u>Samad Bros., Inc. v. Bokara Rug Co. Inc.</u>, No. 09 Civ. 5843, 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) (denying Plaintiff's motion to quash third-party subpoena); <u>Samad Bros., Inc. v. Bokara Rug Co., Inc.</u>, No. 09 Civ. 5843, 2010 WL 2835754 (S.D.N.Y. June 30, 2010) (granting Plaintiff's motion for leave to file a third amended complaint). In fact, between March 2 and March 18, 2011, the Court received no less than ten unsolicited letters from the parties, with as many as three letters in one day. Neither party is blameless in this conduct, and it will no longer be tolerated. The parties are hereby directed to confer and diligently work to resolve discovery or any other issues before threatening sanctions and running to the Court for judicial intervention.

In the end, the conduct that precipitated the sanctions motion is Defendants' untimely objection to the Magistrate's ruling. Given the behavior of both sides and the procedural

19

history of this case, the Court finds that sanctions are not appropriate at this juncture. Thus, both parties' requests for sanctions are denied. Plaintiff's request for fees and costs related to this motion is denied.

### III. Conclusion

Defendants' objection to the Magistrate Judge's January 24, 2011 order [Docket No. 105] is overruled. Defendants are directed to produce, in accordance therewith, the 199 copyright deposit photographs covering rug designs from India and Pakistan. Plaintiff's motion for sanctions and contempt [Docket No. 102] is denied.

**SO ORDERED.**

Dated:   New York, New York
         September 19, 2011

*/s/ John F. Keenan*
John F. Keenan
United States District Judge