UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
SAMAD BROTHERS, INC.,                         :
                                               :
                                    *Plaintiff*, :
                                               :      No. 09 Civ. 5843 (JFK) (KNF)
        –against–                              :
                                               :      **OPINION AND ORDER**
BOKARA RUG CO. INC., JAN                       :
SOLEIMANI, and GABRIEL VAKNIN,                 :
                                               :
                                   *Defendants*. :
------------------------------------------------------------ X

APPEARANCES:

        For Plaintiff Samad Brothers, Inc.:

                KAUFMAN & KAHN, LLP
                747 Third Avenue, 32nd Floor
                New York, NY 10017
                By:    Mark S. Kaufman, Esq.

        For Defendants Bokara Rug Co., Inc., Jan Soleimani, and Gabriel Vaknin:

                WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
                150 East 42nd Street
                New York, NY 10017
                By:    Jura C. Zibas, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    05/08/2012

**JOHN F. KEENAN, United States District Judge:**

        In this case, plaintiff Samad Brothers, Inc. ("Samad") brings claims for money damages and injunctive relief against defendants Bokara Rug Co. Inc. ("Bokara"), Jan Soleimani, and Gabriel Vaknin (collectively, "Defendants") resulting from Defendants' alleged infringement of Samad's copyrights in a number of rug designs.  Samad seeks an *in limine* determination of the admissibility of a document that Samad claims is an errata sheet submitted in connection with the November 2010 deposition of Vikram Kapoor ("Kapoor"), a non-party witness.  For the reasons

stated below, the Court holds that, if presented at trial, the contents of the declaration of Scott Korenbaum would constitute "evidence sufficient to support a finding" that the document is Kapoor's errata sheet. Fed. R. Evid. 901(a).  However, several issues that might affect the admissibility of the document have not been addressed by the parties, and the Court declines to determine its ultimate admissibility prior to the filing of motions *in limine* in advance of the trial scheduled for January 14, 2013.

## I. Background

The Court presumes familiarity with the facts and procedural history of this case.[1]  Briefly, Samad is in the business of importing and selling rugs. (Third Am. Compl. ¶ 5).  Samad alleges that Defendants have infringed twenty-five specified copyrighted rug designs created by S.N. Kapoor Exports and Jain Carpets and subsequently assigned to Samad. (*Id.* ¶¶ 16–18).

Vikram Kapoor is a principal of S.N. Kapoor Exports, and resides in Jaipur, India. (Decl. of Vikram Kapoor ¶ 2, Mar. 28, 2011, ECF No. 133; Decl. of Joanne J. Romero ¶ 4, Nov. 18, 2010, ECF No. 66.)  In the fall of 2010, Kapoor travelled to the United States for a deposition at his own expense.  Defendants deposed him on November 23, 2010.  During the deposition, Defendants' counsel Jura Zibas served Kapoor with a summons and complaint for an action Defendants had initiated in the Supreme Court of New York, New York County. *See Bokara Rug Co., Inc. v.*

---

[1] For additional background, see *Samad Brothers, Inc. v. Bokara Rug Co., Inc.*, No. 09 Civ. 5843 (JFK) (KNF), 2012 WL 43613, at *1–2 (S.D.N.Y. Jan. 9, 2012), and *Samad Brothers, Inc. v. Bokara Rug Co., Inc.*, No 09 Civ. 5843 (JFK), 2010 WL 5094634, at *1 (S.D.N.Y. Dec. 13, 2010).

*Kapoor*, Index No. 652079/2010 (N.Y. Sup. Ct. filed Nov. 22, 2010). During the deposition, Kapoor claimed he was unable to answer a number of questions, and would have to refer to his records to answer them. According to Plaintiff, after the deposition was completed, Kapoor submitted an errata sheet (the "Kapoor Errata Sheet"), purporting to contain additions and corrections to Kapoor's deposition testimony.

In anticipation of filing a motion for summary judgment, Defendants moved *in limine* to preclude the admission of Kapoor's deposition and the Kapoor Errata Sheet. The Court denied Defendants' motion with respect to Kapoor's deposition, holding that Defendants had not satisfied the high burden necessary for exclusion of evidence under the Court's inherent power to manage the integrity of the judicial process. *Samad Brothers, Inc. v. Bokara Rug Co., Inc.*, No. 09 Civ. 5843 (JFK) (KNF), 2012 WL 43613, *2–5 (S.D.N.Y. Jan. 9, 2012). The Court also denied Defendants' motion to exclude the Kapoor Errata Sheet. *Id.* at *6–8. Though Defendants had established that the Kapoor Errata Sheet was not self-authenticating under Federal Rule of Evidence 902(3), the Court declined to exclude the Kapoor Errata Sheet because Plaintiff could seek to authenticate the Kapoor Errata Sheet under Federal Rule of Evidence 901. *Id.* at *7 (quoting *United States v. Pluta*, 176 F.3d 43, 49–50 (2d Cir. 1999)).

The Court held a combined pre-motion and status conference on March 16, 2012. At the conference, Defendants indicated that they would not be moving for summary judgment, and the Court set a trial date of January 14, 2013. In response

to an inquiry from the Court, Samad represented that it would supply a letter and a declaration from Scott Korenbaum, an attorney who represents Kapoor in New York Supreme Court, regarding the authenticity of the Kapoor Errata Sheet.

On March 21, 2012, the Court received Plaintiff's letter, with a declaration attached (the "Korenbaum Declaration").  In his declaration, Korenbaum states that he met with Kapoor on November 24, 2010—the day after Kapoor's deposition in this case.  The meeting was to discuss retaining Korenbaum "to represent Kapoor Exports in the [New York Supreme Court action] as well as any ancillary matters that might arise in connection with this action." (Korenbaum Decl. ¶¶ 3, 6.)  Kapoor Exports retained Korenbaum on December 2, 2010, and Korenbaum has since represented both Kapoor Exports in the New York State Court litigation and Kapoor in this litigation. (*Id.* ¶ 4.)  In connection with his representation of Kapoor and Kapoor Exports, Korenbaum has communicated with Kapoor via mail, telephone, and e-mail. (*Id.* ¶ 5.)  According to his declaration, Korenbaum received a copy of the Kapoor Errata sheet as an e-mail attachment.  The e-mail had been sent from the address Kapoor used to correspond with Korenbaum, and Korenbaum forwarded the electronic version of the Kapoor Errata sheet to counsel for both parties.  The declaration also indicates that Korenbaum later received the original Kapoor Errata Sheet by mail, and that he then sent the original to Defendants' counsel. (*Id.* ¶¶ 7–8.)  In the penultimate paragraph of the declaration, Korenbaum opines that the signature on the Errata Sheet is Kapoor's, based on: (1) Korenbaum's comparison of the signature of the Errata Sheet to signatures on

other documents he has received from Kapoor while acting as his attorney; and (2) the circumstances under which he received the Kapoor Errata Sheet. (*Id.* ¶ 9.)

On March 28, the Court received a letter from Defendants concerning the admissibility and probative value of the Korenbaum Declaration.  On March 30, Plaintiff and Defendants each submitted an additional letter addressing evidentiary issues raised by Plaintiff's proffer of the Korenbaum Declaration.

## II.  Discussion

Defendants claim that Samad has failed to adduce evidence sufficient to authenticate the Kapoor Errata Sheet, as required by Rule 901 of the Federal Rules of Evidence.  In support of their claim, Defendants argue that:  (1) "foreign" documents that are not self-authenticating under Rule 902(3) are *per se* inadmissible; (2) the Korenbaum Declaration is inadmissible by virtue of the fact that its author represents Kapoor in an ongoing state-court proceeding in which Bokara and Kapoor are adversaries; and (3) the Korenbaum Declaration, even if admissible, provides insufficient evidence of authenticity.  For the reasons discussed below, all three of these arguments lack merit.  However, the Court declines to rule on the ultimate admissibility of the Kapoor Errata Sheet, because the resolution of the authentication question presented here does not resolve all potential objections Defendants might wish to raise prior to trial. *See, e.g.*, *Cornelius v. Hondo Inc.*, 843 F. Supp. 1243, 1247 (N.D. Ill. 1994) (citing Fed. R. Evid. 901 advisory committee's note) (district court's ruling on authentication question did not resolve a hearsay issue).

**A.     Admissibility   of   Foreign   Documents   That   Are   Not   Self-Authenticating Under Rule 902(3)**

Defendants seek the exclusion of the Errata Sheet on the theory that it is a "foreign document" that does not qualify as "self-authenticating" under Rule 902(3).

Setting aside the issue of whether the Kapoor Errata Sheet (as opposed to the purported notary stamps found on the copy provided in the Korenbaum Declaration) is a "foreign public document," and as the Court explained in its Opinion and Order dated January 9, 2012, Rule 902(3) is not a pre-condition to the admission of evidence, but is one way a proponent may avoid the general authentication requirement of Rule 901(a).  A document is properly authenticated as required by Rule 901 where either a proponent has offered evidence "sufficient to support a finding that the matter in question is what the proponent claims," or the document qualifies as self-authenticating under Rule 902. *Samad Bros., Inc*, 2012 WL 43613, at *6 (quoting Fed. R. Evid. 901(a), 902).  Rule 902 provides no independent basis for the exclusion of evidence.  As the United States Court of Appeals for the Second Circuit has stated, "[a] document which is of a type that could be self-authenticating but which does not meet all the requirements of Rule 902 may nonetheless be authenticated by any means appropriate under Rule 901." *Pluta*, 176 F.3d at 49–50 (citing *United States v. Childs*, 5 F.3d 1328, 1336 (9th Cir. 1993)).

Indeed, nearly every federal court of appeals has recognized—expressly or implicitly—that a proponent's failure to satisfy the requirements for self-authentication under Rule 902(3) does not provide a basis for the exclusion of evidence. *See United States v. Pantic*, 308 F. App'x 731, 733 n.2 (4th Cir. 2009)

(declining to address defendant's argument that his foreign military records failed to qualify as self-authenticating under Rule 902(3) where the records had been authenticated by witness testimony under Rule 901); *Vatyan v. Mukasey*, 508 F.3d 1179, 1183 (9th Cir. 2007) (permitting the authentication of foreign public documents by "any recognized procedure for authentication of documents in general, including the procedures permitted under Federal Rule of Evidence 901"); *United States v. Demjanjuk*, 367 F.3d 623, 630–31 (6th Cir. 2004) (rejecting challenge to authentication of a foreign public document that the district court had held was properly authenticated under Rule 901(b)(4)); *Minh Tu v. Mutual Life Ins. Co. of N.Y.*, 136 F.3d 77, 81 (1st Cir. 1998) (considering "authentication" and "self-authentication" of documents as distinct issues); *United States v. Garate-Vergara*, 942 F.2d 1543, 1554 n.7 (11th Cir. 1991) ("Rule 902(3) allows admission without further authentication of . . . [f]oreign public documents."); *United States v. Jimenez Lopez*, 873 F.2d 769, 772–74 (5th Cir. 1989) (domestic public document authenticated under Rule 901(a) despite not being self-authenticating under Rule 902); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986) (foreign public record authenticated under Rule 901(b)(8) rather than Rule 902(3)); *United States v. M'Biye*, 655 F.2d 1240, 1242 (D.C. Cir. 1981) (analyzing two different provisions of Rule 902 as independent bases for self-authentication).  Defendants cite no contrary authority in support of their argument.

In their letter dated March 27, 2012, Defendants reiterate their objection to "the admissibility of foreign documents that are not self-authenticating pursuant to

Fed. R. Evid. 902(3)." In view of the text and structure of Rules of Evidence 901 and 902, as well as the above-cited caselaw, Defendants' position is without merit.

## B.   New York Rule of Professional Conduct 3.7(a) and Korenbaum's Competency to Testify

Defendants also challenge Samad's reliance on the Korenbaum Declaration in support of their position that Korenbaum's testimony will authenticate the Kapoor Errata Sheet under Rule 901(a), (b)(2). They argue that, as Kapoor's attorney in the New York state court proceeding, Korenbaum would be barred from testifying on his behalf, and his testimony would be insufficient to establish the authenticity of a document authored by his client.

First, Defendants contend that Rule 3.7(a) of the New York Rules of Professional Conduct ("RPC 3.7(a)"), which states that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact," bars Korenbaum from testifying in this litigation. This portion of the New York Rules of Professional Conduct, which replaced the New York Code of Professional Responsibility effective April 1, 2009, is substantially similar to former Disciplinary Rule 5–102(A) of the Code of Professional Responsibility. *Ramchair v. Conway*, 601 F.3d 66, 74 n.6 (2d Cir. 2010). Like its predecessor, RPC 3.7(a) implements New York's "advocate-witness rule." *Id.* at 74. The plain text of RPC 3.7(a) and the caselaw applying the advocate-witness rule require that a lawyer who has given testimony before a tribunal be disqualified as the trial attorney. *See United States v. Congi*, 420 F. Supp. 2d 124, 128 (W.D.N.Y. 2005) (citing *United States v. Kliti*, 156 F.3d 150, 156 n.8 (2d Cir.

– 8 –

1998)).   The purposes of RPC 3.7(a) are to protect the integrity of the judicial process and avoid potential jury confusion by ensuring that an attorney is not put in the position of vouching for his or her own credibility or having his or her credibility impeached by opposing counsel. *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).   RPC 3.7(a) accomplishes these objectives by requiring an advocate-witness to withdraw from the representation in which he or she is acting as trial counsel; the advocate-witness rule does not provide a basis for the exclusion of otherwise admissible evidence. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) ("[T]he remedy where an attorney is called to testify may be to disqualify the attorney in his *representational* capacity, not necessarily his *testimonial* capacity.").

Here, Defendants cite RPC 3.7(a) not to disqualify Korenbaum from representing Vikram Kapoor, but in order to prevent Korenbaum from presenting evidence at trial.   Yet even if exclusion of evidence was an appropriate remedy for a violation of the advocate-witness rule, Defendants have failed to show that testimony from Korenbaum would violate the rule.   Korenbaum represents Kapoor in the New York Supreme Court proceedings initiated by Defendants and has represented Kapoor in connection with his role as a potential witness in this litigation, but has not appeared before this Court on behalf of any party for purposes of presenting argument.   Furthermore, Defendants have not suggested that Korenbaum will appear as trial counsel in this litigation.   Thus, there is no potential for Korenbaum to present argument to the jury about his own credibility

or to have his credibility impeached before a jury to whom he is presenting a case. In the case at bar, the advocate-witness rule is not implicated by Korenbaum's proffered testimony.

The Court notes that despite being given the opportunity to join additional parties at the pretrial conference held before this Court on January 26, 2011, Defendants themselves elected to pursue their claims against Kapoor in a separate forum. The fact that this case is proceeding in two separate forums is not attributable to any gamesmanship by Samad, the proponent of the evidence in question.

Second, Defendants contend that "an affidavit from counsel is generally not sufficient evidence of authenticity," and cite *Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*, 614 F. Supp. 2d 481 (S.D.N.Y. 2009), in support of their position. In *Carroll*, the ruling was that an attorney's affidavit failed to show that he was competent to testify about whether two documents were accurate copies of documents received by his client. *Id.* at 482. This holding was based on the contents of the proffered affidavit, which "[did] not even claim that counsel or his client ever [had] seen the originals." *Id.* The proffered affidavit contained only a conclusory assertion that the copies accurately reflected letters received by the attorney's client, and did not establish a basis for the affiant's personal knowledge of the fact asserted. *Id.* at 484. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). The Court rejects Defendants' attempt to characterize

*Carroll* as establishing a general rule of attorney incompetency to testify regarding the authenticity of documents.

As demonstrated from the above discussion, Korenbaum's status as counsel to Kapoor, who is not a party involved in this litigation, does not impact his ability to give testimony at trial.

## C.    Korenbaum's Proffered Handwriting Testimony

Defendants finally argue that the testimony proffered in the Korenbaum Declaration would not support the authentication of the Kapoor Errata Sheet because non-expert testimony concerning the authorship of handwritten text or a signature is "weak."

The proponent of evidence (here, Samad) has the burden of establishing its authenticity. Fed. R. Evid. 901(a) ("[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). However, a proponent is not required to prove an item's authenticity beyond a reasonable doubt or by a preponderance of the evidence; only a showing of "reasonable likelihood" is required. *Pluta*, 176 F.3d at 49 (quoting *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994).

Rule 901(b) consists of a non-exhaustive list of evidence satisfying the authentication requirement of Rule 901(a).  This list includes "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity that was not acquired for the current litigation." Fed. R. Evid. 901(b)(2). The Second Circuit has held that "lay witnesses who testify as to their opinion regarding someone's handwriting must not only meet the strictures of Rule 701, but must also satisfy Rule 901(b)(2) and

have a familiarity with the handwriting which has not been acquired solely for purposes of the litigation at hand." *United States v. Samet*, 466 F.3d 251, 254 (2d Cir. 2006). Federal Rule of Evidence 701 permits a non-expert witness to give opinion testimony only if that opinion is "rationally based on the witness's perception," "helpful to . . . determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of" Federal Rule of Evidence 702. Fed. R. Evid. 701(a)–(c).

The Second Circuit has narrowly interpreted the restriction on lay-witness testimony contained in Rule 901(b)(2), and has cited with approval decisions of other federal courts of appeals that narrowly construe this restriction. For example, in *Samet*, the Second Circuit held that a postal inspector who had acquired familiarity with the defendant's handwriting in the course of an investigation of the defendant had not acquired this familiarity "for purposes of the litigation at hand." *Samet*, 466 F.3d at 254. In so holding, the Second Circuit cited with approval *United States v. Scott*, a case in which the United States Court of Appeals for the First Circuit had held that an Internal Revenue Service agent's familiarity with the defendant's handwriting was not acquired for the "purposes of the litigation," though it had been acquired in the course of a criminal investigation of the defendant. 270 F.3d 30, 50 (1st Cir. 2001). The First Circuit based this holding on the fact that the IRS agent "became familiar with [the defendant's] handwriting over the course of several years, and he did so not for the purpose of testifying, but instead for the purpose of solving a crime." *Id.* Under the analysis employed in

*Samet* and *Scott*, whether a lay witness may testify about the authenticity of a document based on familiarity with handwriting depends on whether that lay witness' familiarity with handwriting was acquired specifically for the purpose of testifying.  Where a witness' familiarity with handwriting has been acquired for the purpose of providing testimony about that handwriting, that witness is actually providing expert testimony, and such testimony must comply with the requirements of Rule 702. *Samet*, 466 F.3d at 255 ("Incorporating Rule 901(b)(2)'s limits into Rule 701 . . . helps maintain a critical difference between lay and expert opinion testimony.").

Here, Korenbaum acquired familiarity with Kapoor's signature over the course of his representation of Kapoor in connection with both this litigation and the New York Supreme Court litigation.  Defendants have not alleged that Korenbaum's knowledge of Kapoor's handwriting was acquired for the purpose of providing testimony concerning the authenticity of the Kapoor Errata Sheet or any other document in this litigation.  Additionally, Korenbaum has not relied on any special skill or training in forming his opinion about the signature contained on the Kapoor Errata Sheet, but may provide helpful lay-opinion testimony concerning the authenticity of the Kapoor Errata Sheet because he has a familiarity with Kapoor's handwriting that any non-expert might acquire as a result of sustained correspondence with another.  This evidence is "helpful" as required by Rule 701 because the jury is not likely to have the same opportunity to compare the signature contained on the Errata Sheet with other unchallenged examples of Kapoor's

signature.  In consideration of all these factors, Korenbaum's proffered testimony would be sufficient to authenticate the Kapoor Errata Sheet under Rule 901(b)(2) as interpreted in *Samet*.

Furthermore, even if Korenbaum's proffered testimony were deemed insufficient to satisfy the requirements of Rules 701 and 902(b)(3), the Korenbaum Declaration contains references to facts personally known by Korenbaum that suggest Kapoor was the author of the Kapoor Errata Sheet.  As illustrated by *United States v. Bagaric*, a proponent can rely on circumstantial evidence of authenticity to satisfy the requirement of Rule 901(a). 706 F.2d 42 (2d Cir. 1983), *abrogated on other grounds, National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 260–61 (1994).  In *Bagaric*, the Second Circuit held that a letter linking the defendant to a co-conspirator was properly authenticated by the Government's presentation of circumstantial evidence, including the letter's seizure from the defendant's home, the postmark from a town in which the co-conspirator was known to have lived, and references to aliases that would have been known only to those involved in the conspiracy. 706 F.2d at 67.  Particularly in view of Korenbaum's assertion that Kapoor was the only person with whom he discussed his legal work on behalf of Kapoor and Kapoor Exports, Korenbaum's receipt of copies and an original of the Kapoor Errata Sheet through the channels he regularly uses to communicate with Kapoor strongly suggests that Kapoor signed the Kapoor Errata Sheet.  If asserted at trial, these statements would be sufficient circumstantial evidence of authenticity under *Bagaric*.

### III.  Conclusion

If presented at trial, Korenbaum's testimony would satisfy Plaintiff's burden to show that there is a reasonable likelihood that Kapoor authored and signed the Kapoor Errata Sheet.  Defendants may present any other arguments with respect to the admissibility of the Kapoor Errata Sheet when the parties file motions *in limine* in advance of trial, which is set for January 14, 2013.

**SO ORDERED.**

Dated:   New York, New York
         May 8, 2012

                                          *John F. Keenan*
                                          _____
                                          JOHN F. KEENAN
                                          United States District Judge